**MARCH 2022**
**Volume 44, Number 3**



**NOSSCR™** | NATIONAL ORGANIZATION OF SOCIAL SECURITY CLAIMANTS' REPRESENTATIVES

ESTABLISHED 1979    ®

## In This Issue

NOSSCR PAC Contributors | **5**

Congress Provides Small Increase to SSA's Funding | **6**

President Biden's 2023 Budget | **6**

NOSSCR Advocates on Telephone Issues | **7**

Revisions to Fee Agreement POMS | **7**

"NSD Falls Church" Code on Hearing Office Status Reports | **7**

Recent EMs and Chief Judge's Bulletin | **8**

Letter to the Editor | **8**

OIG Report Details Pandemic-Related Service Changes | **9**

Legal Services Groups Report on Consultative Examinations | **9**

SSA Offers New Identity Verification Options | **10**

Dear Colleague Letter: New Identity Verification Options | **11**

2021 Waterfall Chart | **14**

DDS Caseload Changes | **15**

CRCC Board Application | **16**

Caseload Analysis Report | **17**

2022 Conference | **24**

NOSSCR News | **2**
New Members | **4**
Available Materials | **18**
Selected Cases | **19**
Listings Grids Order Form | **21**
Case Summaries Order Form | **22**

## Electronic Protected Filing Date Tool Released

SSA now offers a new electronic protective filing date tool for individuals and third parties, including representatives, to express an intent to file for SSI and other benefits.

Individuals seeking benefits are asked to provide basic information including their name, date of birth, Social Security number, address, phone number, and (optionally) an email address. Third parties are also asked for their name, contact details, and relationship to the person seeking benefits.

Completion of the form does *not* constitute an application; however, it does protect the filing date. Successful completion of the form yields a submission screen that includes the date the tool was used, which can be saved or printed. People who provide an email address will also receive automated confirmation emails. SSA will still need to contact the person interested in applying for benefits to schedule a time for taking the claim. If the application is never actually made, SSA could close out the protected filing. When SSA cannot match the data provided (for example, if a person's name and Social Security number do not match) the tool provides a message stating that the request cannot be processed.

SSA issued Emergency Message (EM) 22015 on March 18 to provide agency staff with more information about the tool. The EM states that people who indicate a "priority life circumstance" on the tool (military casualty/wounded warrior, 100% VA disability, homeless, TERI/terminal, recently released from a correctional facility, sign language interpreter needed, and visual accommodation needed) should have their cases worked within three business days and others should have their cases worked in five business days. However, this goal is merely aspirational and people using the tool may not be contacted that quickly, as the EM also says that notification of appointments will usually be sent within seven to 14 business days.  .

## New Attorney Referral Service FAQ

NOSSCR is excited to announce a new and improved, automated lawyer referral service that will provide our members with an option for many more potential clients. Our new service allows for potential clients to be connected to your number directly, simply by calling NOSSCR's referral service number.

**Who is eligible to participate in NOSSCR's referral service?**
To participate in NOSSCR's lawyer referral service, you must be a NOSSCR member who is an attorney in private practice, in good standing with your state bar, and not disqualified from representing Social Security claimants. You must have professional malpractice insurance, with a liability coverage of a minimum of $100,000 per occurrence. Eligible NOSSCR members will complete a registration form and attest that they have the required malpractice insurance.

**How does NOSSCR's referral service work?**
Participants pick which area codes they would like to receive calls from. Potential clients will be connected to your number directly, simply by calling NOSSCR's referral service number. Referrals will be made on a rotating basis to participants

*continued on page 12*

3:21-cv-01019-SI
Exhibit B / 001

*Social Security Forum®*　　　　　　　　　　　　　　　　Volume 44, No. 3 - March 2022

## NOSSCR News

### NEW REFERRAL SERVICE LAUNCHED

In March, NOSSCR opened registration for a new referral service that is launching in early April. Like the old referral service, participants must be NOSSCR members who are attorneys in private practice with professional malpractice insurance. Unlike the old referral service, this one automatically routes callers to the member's intake number and runs 24/7. Eligible members must register for their area codes, both free and paid; regular members receive one free and sustianing members receive three free.

Register or add area codes in your member dashboard or under "Rep Resources" on our website. More information is available on the webpage and page 1 of this *Forum*. Update your membership to the sustaining level to receive more free area codes and a reduced rate on additional purchases. Contact nosscr@nosscr.org to upgrade today.

### Listings/Grids Subscriber Update

There have been no updates to the listings/grids since the last issue of the *Forum*. Visit nosscr.org/listinggrids to subscribe today!

### Contacting NOSSCR

Have questions? The best way to reach us is by email at nosscr@nosscr.org. We are able to respond most quickly to emails. Phone calls or requests sent by fax or mail will be delayed. Please use a descriptive subject line so we can best be of service to you.

### Mission Statement

The mission of NOSSCR is to advocate for improvements in Social Security disability programs and to ensure that individuals with disabilities applying for Social Security Disability and SSI benefits have access to quality representation and receive fair decisions.

### CHANGES IN NOSSCR'S GOVERNMENT AFFAIRS OFFICE IN DC

Michael Linskey, NOSSCR's Director of Political and Legislative Strategy, will be leaving NOSSCR on April 15. Michael joined NOSSCR at the beginning of the pandemic and, with Stacy Cloyd, has led the Office of Government Affairs through some uncertain times. Michael's focus on the PAC has helped it to become an important part of NOSSCR's legislative toolbox. His work on the Social Security 2100 Act, Stop the Wait Act, and Work without Worry Act, as well as his strategic plan for increasing the fee cap have helped to place all of NOSSCR's top priorities on the legislative and administrative table. We wish Michael well in his new position as Director of Congressional Affairs at the National Alliance for Mental Illness (NAMI), and we look forward to continued collaboration with him on issues of mutual importance.

Stacy Cloyd will continue at NOSSCR as our Director of Policy and Administrative Advocacy. To reach her, and the Office of Government Affairs, you can email Stacy.Cloyd@nosscr.org or nosscr@nosscr.org or call 202-457-7775.

### SUCCCESSFUL NEXTGEN RETREAT

Thirty NextGen participants gathered in Boulder, Colorado for a weekend of socializing, networking, relaxing, and learning. The weekend included a yoga class, an oxygen bar, a hike, restaurants, and three hours of CLE sessions. Thank you to the NextGen committee who planned this retreat: Laura Beth Waller, Michael Liner, Maren Miller Bam, and Ashley Hartman Sappenfield. Thanks as well to our generous sponsors who allowed us to keep the registration fee low: Trajector Disability, Citizens Disability, Heard & Smith, and Prevail.

An expanded NextGen Committee is planning a special event during NOSSCR's upcoming annual conference and another retreat next year. If you are under 40 years old or have less than 10 years'

***continued on page 3***

The **Social Security *Forum*®** is a monthly publication of the **National Organization of Social Security Claimants' Representatives**. Copyright © 2022, NOSSCR. All rights reserved. ISSN 0735-3812. The articles appearing in the *Forum* do not necessarily reflect the opinions of NOSSCR. Their accuracy and content are the responsibility of the individual writer.

**National Organization of Social Security Claimants' Representatives**, 161 Airport Executive Park, Nanuet, NY 10954

Telephone: 845-682-1880, email: nosscr@nosscr.org, website: www.NOSSCR.org;

Facebook: www.facebook.com/nosscr.org; Twitter: @NOSSCRNews

David Camp Esq., President, dcamp@accessdisabilitylaw.com; Barbara Silverstone, Executive Director, nosscr@nosscr.org

**NOSSCR Government Affairs Office**, PO Box 70451, Washington, DC 20024

Telephone: 202-457-7775; FAX: 202-457-7773, Michael Linskey, Director of Political & Legislative Strategy; Stacy Braverman Cloyd, Director of Policy and Administrative Advocacy

NOSSCR

3:21-cv-01019-SI
Exhibit B / 002

*Social Security Forum®*                                          **Volume 44, No. 3 - March 2022**

## NOSSCR News
### continued from page 2

experience in this field, contact Faigy Gilder to join the NextGen listserv.

### NOSSCR'S 2022 CONFERENCE

After a two-year hiatus, we're excited to see you in-person at our annual conference on May 11-14 in Austin, Texas! We are honored to welcome Acting Commissioner Kilolo Kijakazi, Congressman Lloyd Doggett, and other SSA officials at our sessions. Session topics include representing claimants in mental health claims, overpayments, transferability of skills, representing veterans, cross examining experts, and more. Visit www.nosscr.org/2022 for more information. All attendees must be fully vaccinated. **Registration is now open.** You must registered to participate in any conference events. Space is limited and the deadline to register is April 29. There is no onsite registration.

### SUPREME COURT ADMISSION

NOSSCR is pleased to offer a group admission to the US Supreme Court on May 1, 2023 *(please note, a prior announcement incorrectly listed the date as May 3)*. The last group admission was very popular, and we encourage all eligible members to consider joining us in 2023. To participate, you must be a current member admitted to a state bar for at least three years in good standing. This date coincides with our 2023 conference, May 3-6 in Washington, DC.

NOSSCR's group admission will include admission to the US Supreme Court, breakfast for the applicant and a guest, a group photo, a court lecture, a tour of the Court (subject to availability) and a visit with a Supreme Court Justice (subject to availability). During NOSSCR's last group admission ceremony, we had the great honor of visiting with Chief Justice Roberts! Each applicant may bring one guest to the ceremony and other activities. This program will cost $350, and will be available as an add-on to our spring 2023 conference. We will begin accepting applications in January 2023. If you have questions before then, email Lea.Robbins@ nosscr.org.

### PRE-CONFERENCE SPONSOR WEBINARS

Our conference sponsors are offering all members a chance to learn more about their products and services in a low-pressure environment by joining their webinars the week of April 25. If you are going to the conference, these webinars will guide you towards the sponsors you should seek out. See the "Mark Your Calendars" section for the schedule.

### WASHINGTON UPDATE WEBINARS

Upcoming Washington Update Webinars will be held June 21, September 20, and December 20 at 1 pm eastern time. Hundreds of NOSSCR members tune in to these quarterly webinars to learn what is happening in Congress and the Social Security Administration and how NOSSCR is working on your behalf. This series is free for sustaining members and just $25 per webinar for regular members.

### NEXT VOCATIONAL ISSUES WEBINAR

The next vocational webinar in our series of free member webinars with President David Camp, titled "How to Use Vocational Evidence Presented to the ALJ in Court," is on April 21 with Larry Rohlfing. NOSSCR is not submitting for CLE and will not have codes, but you can submit for your own self-study.

### MEMBER WEBINARS ON DEMAND

Did you know that, in addition to the CLE webinars available for purchase, NOSSCR members have access to a range of free webinars, included in your membership. Click here to view these webinars.

### MARK YOUR CALENDAR

April 21: "How to Use Vocational Evidence Presented to the ALJ in Court." Register here.
April 25: Sponsor Webinar with American Retrieval
April 25: Sponsor Webinar, Sarah Bohr Publications
April 26: Sponsor Webinar, Firmidable
April 26: Sponsor Webinar, Golden Senior Advisors
April 27: Sponsor Webinar, SkillTRAN
April 28: Sponsor Webinar, Claimant Medical Data Solutions (CMDS)
April 28: Sponsor Webinar, PR Legal Marketing
April 29: Conference Registration Deadline
May 11-14: 2022 NOSSCR Conference
June 21: Washington Update, Register here.
September 20: Washington Update, Register here.
December 20: Washington Update, Register here.

NOSSCR
3:21-cv-01019-SI
Exhibit B / 003

*Social Security Forum®*                                    **Volume 44, No. 3 - March 2022**

# Welcome New Members!

*Welcome to our members who joined in February 2022:*

**SUSTAINING MEMBER**
Diana T. Chea, Esq.
Lowell, MA

**REGULAR MEMBERS**
Sarah R. Aitchison, Esq.
Los Angeles, CA

Sarah H. Ashmore, Esq.
Seattle, WA

Lynn A. Barnhill, Esq.
Santa Fe, NM

Andrew A Barone, Esq.
North Riverside, IL

Debra H. Buchanan, Esq.
Dothan, AL

Amy B. Byrd
Hamburg, AR

Shandanette Jane Chase, Esq.
Bronx, NY

Jason Cinq-Mars, Esq.
San Francisco, CA

Brian J. Cohen, Esq.
Buffalo, NY

Joe A. Denton, Esq.
Little Rock, AR

Benjamin Gloger, Esq.
Los Angeles, CA

Janet Huffman Stine, Esq.
Philadelphia, PA

Ron Kurlaender, Esq.
San Francisco, CA

Lawrence M. Malman, Esq.
Coral Gables, FL

Alicia C. Merrill, Esq.
Lebanon, PA

JoyAnna M. Mickels, Esq.
Moorhead, MN

Suzette Tagesen Murphy, Esq.
Metairie, LA

Megan Neal, Esq.
Brooklyn, NY

Shaunta Patton
Jackson, MI

Karen C. Queensborough-Evans, Esq.
Jamaica, NY

James T. Reilly, Esq.
Streator, IL

Jacklyn A. Steinberg, Esq.
Tampa, FL

Jessica N. Super, Esq.
Detroit, MI

Elizabeth M. Thomas
Draper, UT

Kaitlin Wildoner, Esq.
Ponte Vedra Beach, FL

Edlyn L. Willer, Esq.
New York, NY

Kelsey Worline, Esq.
Boston, MA

**LAW STUDENT**
Lillian Hall
Cleveland, OH

NOSSCR
3:21-cv-01019-SI
Exhibit B / 004

*Social Security Forum®*                                                      **Volume 44, No. 3 - March 2022**



## Thank You to Our 2022 Contributors

*as of March 27, 2022*

**FIRST CIRCUIT**
David Spunzo (CC)

**THIRD CIRCUIT**
Alan Polonsky (CAP)

**FOURTH CIRCUIT**
Julie Burkett (CC)
Rick Fleming (CC)
George Piemonte (CC)
Robertson Wendt (DC)

**FIFTH CIRCUIT**
Paul Burkhalter (CC)
Angela Davis Morris (CC)

**SIXTH CIRCUIT**
Mary (Beth) Bates (CC)
Clifford Farrell (DC)
Debra Shifrin (CAP)

**EIGHTH CIRCUIT**
David Camp (CAP)
Timothy Cuddigan (DC)

**NINTH CIRCUIT**
Mark Caldwell (CC)
Brian Clymer (CC)
Marc Kalagian (DC)

**TENTH CIRCUIT**
Thomas Feldman (CC)
Erin Stackwenwalt (CC)

**ELEVENTH CIRCUIT**
Sarah White Park (CC)

## to learn more, visit nosscr.org/pac

Key: CAP= Capitol Club, PC= Platinum Club, DC=Diamond Club Member CC= Century Club, C=Contributor

*Social Security Forum®*                                               **Volume 44, No. 3 - March 2022**

## Congress Provides Small Increase to SSA's Administrative Funding

President Biden signed <u>H.R. 2471</u>, a spending bill that provides funding for the entire federal government for the rest of Fiscal Year 2022, on March 15. Fiscal Year 2022 started on October 1, 2021. To avoid government shutdowns during the nearly six months until a spending bill was completed, Congress passed a series of "continuing resolutions" that allowed government agencies to keep spending at the Fiscal Year 2021 rate.

SSA is in the "<u>Labor, Health and Human Services, Education, and Related Agencies</u>" (Labor-H) cluster of agencies. That cluster received an increase of 7.7% over Fiscal Year 2021 levels. SSA received $13.3 billion for operating expenses, an increase of $411 million above the FY 2021 enacted level. However, although the total Limitation on Administrative Expenditures (LAE) for SSA did increase by 3.3%, $133 million of the $411 million increase was designated for "program integrity" activities such as Continuing Disability Reviews and Age-18 SSI redeterminations. The $278 million remaining increase is below what SSA has said their costs increase by every year. Therefore, this funding may allow for some additional hiring, overtime, IT modernization, and other important activities, but it is not sufficient to expect significant improvements to customer service for the rest of the fiscal year.

Now that the Fiscal Year 2022 appropriations process is over, Congress is beginning its work on Fiscal Year 2023. The President announced his budget proposal on March 28. The Democrat and Republican in charge of the Senate Appropriations Committee (Sen. Leahy of Vermont and Sen. Shelby of Alabama, respectively) are starting to negotiate the amounts Congress will spend on defense and non-defense spending. Once they agree on that, appropriators will then need to agree on how much each non-defense cluster, like Labor-H, will receive, and then start creating bills for each cluster.

## President Biden's FY23 Budget Request is Released

On March 28, 2022 President Biden released his $5.8 trillion fiscal year (FY) 2023 budget proposal. The release of the President's Budget marks the start of the Congressional budget process. **It is important to note,** that the budget is determined by Congress and not the President. While the President releases a budget proposal, this is best viewed as the administration's "wish list." The final enacted budget rarely looks like the President's proposed budget.

President Biden's proposed FY 2023 budget requests $14.8 billion for SSA's administrative expenses. This is an increase of $1.5 billion compared to the enacted FY 2022 budget. In a statement from Acting Commissioner Kijakazi, released with the President's proposed budget, the Commissioner laid out the following goals for SSA **if the President's budget request is enacted:**

- Add 4,000 new hires in frontline operations and at the DDS offices and provide increased overtime;
- Over $1.5 billion for IT services, an increase of over $431 million from FY 2022 CR levels;
- $100 million for outreach to ensure SSI benefits reach eligible individuals, including the homeless, children with disabilities, and individuals with mental and intellectual disabilities;
- A goal of increasing all SSI applications by 15%, and increasing the number of SSI applications from underserved communities by 25%, relative to a 2021 baseline;
- Compared to FY 2022, complete nearly 365,000 more initial disability claims in FY 2023;
- By the end of 2023 achieve an average processing time for initial disability claims of 164 days;
- Hire additional Administrative Law Judges and support staff;
- Reduce the average wait time for in-person hearing from 375 days in FY 2022 to 335 days in FY 2023;
- Improve National 800 number service and reduce wait times to less than 12 minutes and the average busy rate to 1%; and
- Implement electronic calendaring for all hearing participants.

NOSSCR

*Social Security Forum®*                                    **Volume 44, No. 3 - March 2022**

## NOSSCR Advocates on Telephone Issues

SSA's telephone systems have struggled for years to manage the flow of callers to the agency, but the problems increased dramatically in February 2022 as a new telephone vendor and system updates took place. NOSSCR members across the country reported frequent busy signals and disconnections.

SSA has stated that they are aware of the issue and working to fix it. NOSSCR has participated in meetings with several SSA components on this topic and has also communicated about it with Congressional committee staff, the Office of Management and Budget, and the Social Security Advisory Board. In all meetings, NOSSCR describes the importance of SSA having functioning telephone systems with sufficient and well-trained staff to answer calls. This is especially critical while field offices remain largely closed to the public and SSA encourages people to schedule appointments when the offices do reopen.

We will continue to encourage the legislative and executive branches to work together to resolve this issue.

## "NSD Falls Church" Code on Hearing Office Status Reports

You may start seeing "NSD Falls Church" on your Hearing Office Status Report (HOSR) and wonder what that is. NSD stands for National Service Delivery and all National Hearing Centers (NHCs) fall under the NSD. Previously, on your HOSR, cases were just transferred straight to a NHC; however, OHO recently changed this process to ensure cases are being reviewed and transferred to the right NHC. No changes have been made to the types of cases that are transferred to NHCs; the only change is that OHO will now "transfer" cases to a central location, the NSD Falls Church, before assigning and transferring the case to the NHC. OHO explained to NOSSCR staff that this is really just a holding spot and cases should be permanently transferred from "NSD Falls Church" to the applicable NHC within three days or less.

## Revisions to Fee Agreement POMS Proposed

On March 17, SSA issued a POMS transmittal stating that the Office of Disability Policy revising POMS GN 03940.000: Implementation of Increased Maximum Dollar Limit on Fee Agreements. While SSA has not announced an increase to the fee agreement fee cap, we feel that this is a positive step forward, consistent with what we've been told – that the process is moving along towards the Commissioner authorizing an increase.

These POMS sections, which were last revised in 2009 when the fee cap was last increased, provide instructions for processing fee agreements when the fee cap changes after the fee agreement was submitted. POMS GN 03943.005 and 03943.010 are archived, and POMS GN 03942.015 is replaced by new POMS GN 03920.006. Although we have received positive indications that the fee cap will be increased, we have not received word of when this will be done. In the meantime, the POMS transmittal serves as a good reminder that your fee agreements should have language that permit a fee cap adjustable to the maximum fee allowable under the Act. SSA uses the following example of language that will permit the higher fee to be paid if the fee agreement is submitted before, but the fee is authorized after, an increase in the cap:

> *"If SSA favorably decides my claim(s) and the decision results in past-due (retroactive benefits), I agree to pay my representative(s) a fee that does not exceed the lesser of 25 percent of my past-due benefits or the maximum dollar amount allowed under the Social Security Act Section 206(a)(2), or such higher amount set by the Commissioner of Social Security...."*

We will keep you informed of any further developments as we become aware of them.

NOSSCR

3:21-cv-01019-SI
Exhibit B / 007

## Recent Emergency Messages and Chief Judge's Bulletin

SSA has issued several subregulatory guidance documents that may be of note to claimants' representatives:

Emergency Message (EM) 22017, issued March 23: this EM explains a policy change from May 2021 that allows SSA to collect overpayments that occurred more than ten years ago.

Chief Judge Bulletin (CJB) 22-02, issued March 21: During the pandemic, OHO added additional requirements that ALJs needed to follow before a request for hearing could be dismissed. This CJB extends those requirements to all types of hearings (including in-person hearings) through the end of 2022. Additionally, the CJB reminds OHO staff about agency policy requiring 75 days' notice of hearings and 20 days' notice of rescheduled hearings in most situations (both can be waived), including that the claimant and any representative must both be sent the Notice of Hearing. The CJB also discusses that claimants must agree to telephone or video hearings, and how SSA should document this consent.

EM-21007 REV 2 and EM-20046 REV 5, issued February 24: these EMs instruct SSA staff about processing cases that result from the *Ely* and *Thornton* class actions, with regard to survivors of same-sex relationships who either were unable to marry the number holder (NH) prior to the NH's death, or who were unable to meet the 9-month duration of marriage requirement, due to state laws prohibiting same-sex marriage.

CJB 21-01 REV3, issued February 24: the CJB adds a section noting that when claimants make an untimely request for hearing in a Title II-only non-medical case (for example, an overpayment or a case about eligibility for retirement or survivors' benefits), "the Special Review Cadre (SRC) will send the case to the local hearing office (HO) for an administrative law judge (ALJ) to assess whether the claimant had good cause. If the ALJ finds good cause, the HO will prepare and adjudicate the case per the Electronic Non Medical (ENM) Application Business Process. If the ALJ does not find good cause, then the ALJ will dismiss the request for hearing. The HO retains jurisdiction and processes dismissal per HALLEX I-2-4-15 C."

EM-22008, issued February 11: this EM applies to people affected by the *Maxwell* case. Claimants who lived in Alaska, Arizona, California, Guam, Hawaii, Idaho, Montana, Nevada, the Northern Mariana Islands, Oregon, or Washington when they received a determination from SSA may be *Maxwell* claimants if they have skilled or semi-skilled past relevant work and skills that transfer to other occupations within the claimant's RFC, and applying the grids results in a finding of non-disability. See page 7 of the February 2022 NOSSCR *Forum* fr more detailed information on EM-22008.

## Letter to the Editor

I am working with Elizabeth Ricks at Chicago House, Aaron Tax at SAGE, and others, to address what to do about consultative examiners and reports that demonstrate bias against trans or gender nonconforming people.

If you have clients who have experienced this and have CE reports that mis-gender claimants and or otherwise show bias, please share the redacted reports with us. We are collecting them to provide as examples that this is not just a one-off issue. We hope to share them with people SAGE identified who may be able to exert some oversight on this concern. Feel free to email redacted reports to me directly at amarinacci@legalcouncil.org or Elizabeth at ericks@chicagohouse.org.

Also, if you have any thoughts or experience with making complaints of bias of any kind against consultative examiners and what came of it to your DDS, I'd be interested in hearing more about that. We realized that we don't know how or where to direct such complaints, only that each DDS is required to investigate them when made, per POMS DI 39545.375. If no one knows how or where or to whom to report this, it is likely few reports are made.

Thanks for any info you can share.

Best,
Amy Marinacci
Legal Council for Health Justice, Chicago

NOSSCR

3:21-cv-01019-SI
Exhibit B / 008

*Social Security Forum®*                                                    **Volume 44, No. 3 - March 2022**

# OIG Report Details Pandemic-Related Service Changes

SSA's Office of the Inspector General (OIG) issued an audit report on February 24 entitled "Safety of Employees and Visitors Since March 2020." OIG investigated this topic in response to a request by Representatives John Larson (D-CT) and Tom Reed (R-NY), the chair and ranking member, respectively, of the Social Security Subcommittee of the House Ways and Means Committee.

The report describes "how many employees and visitors had entered Social Security Administration offices since the Agency closed its offices; what work was being performed in the offices; and how the Agency was ensuring the safety of employees and visitors in its offices."

Incongruities in SSA's data hampered OIG's ability to analyze employees' and visitors' presence in field offices: sometimes SSA leadership said an office closed due to covid exposure but field office staff said it had consistently remained open; some offices tracked everyone who entered and some did not count those (like representatives, translators, or family members) who came along with the person who had made an appointment. Despite the inaccurate data, it is clear that the number of visitors to field offices plummeted, with a total of 483,584 visits reported from March 17, 2020 to April 17, 2021. SSA's data show that that in the last pre-pandemic fiscal year, there were over 174,000 in-person visits to field offices each day. The highest number of visits on a single day during the period studied during the pandemic was 5,050.

The report explained that the number of appointments available in each office varied tremendously, from two a day in one field office to 140 a day in a card center. Several managers who were surveyed said they had difficulty processing all the mail that was coming into field offices, but they expressed that when more staff came to work in person, mail processing capacity increased. The report added "Management noted it was a challenge to juggle their normal managerial duties and the non-portable workload."

Most surveyed SSA staff expressed satisfaction with their office's covid-mitigation strategies, from mask requirements to providing hand sanitizer, symptom-screening tools, and increased ventilation. However, OIG noticed several instances in which employees did not wear their masks as required.

The report concludes with several caveats: "We did not randomly select all the offices we visited or the employees we surveyed or interviewed. Consequently, we do not assert—and the reader should not infer—that our observations represented the conditions in all of SSA's offices. In addition, circumstances may have changed since we conducted our interviews, surveys, and office visits between May and July 2021."

# Legal Services Groups Report on Consultative Examinations

New York Legal Assistance Group (NYLAG), the Urban Justice Center (UJC), and Community Legal Services of Philadelphia (CLS) released a position paper on March 2 about consultative examinations (CEs). The report focuses on New York and Pennsylvania, but it makes recommendations for SSA and DDSs nationwide:

- Eliminate the need for CEs in many cases by giving state agencies sufficient time to get medical records and medical opinions from a claimant's own doctors;
- Reform SSA policy to require that SSA decision-makers assign greater weight to records and opinions from a claimant's personal doctors than those provided by one-time CEs;
- Change the rule that allows incomplete CEs to determine the outcome of cases, especially when the claimant has a treating physician;
- Increase and tighten SSA's supervision of CE providers through regular quality reviews and by implementing an accessible, accountable complaint procedure for claimants;
- Recruit and hire qualified and diverse providers to perform CEs; and
- Address the impact of structural inequality in SSA's policies regarding when and how CEs are used.

The percentage of cases sent for CEs varies widely across states: a 2009 study found that 48% percent of initial claims had CEs (approximately one million CEs) but states ranged from 25% to 70% of claims being sent for a CE.

NOSSCR

3:21-cv-01019-SI
Exhibit B / 009

*Social Security Forum®*                                    **Volume 44, No. 3 - March 2022**

# SSA Offers New Identity Verification Options for Replacement Cards

One of the SSA's major workloads is the issuance of new and replacement Social Security cards. The agency allows most people to request replacement cards through the mySSA system and in Fiscal Year 2019, SSA issued 1.3 million replacement cards in this way. However, this mySSA function is not available to people living in four states, any territories, or outside of the United States, and in some situations the person must have a driver's license in order to use mySSA to get a replacement Social Security card.

SSA requires people who are unable to make or use a mySSA account, or for whom the mySSA system will not allow them to request a replacement card online, to submit an application for a replacement card and supply original proof documents for hands-on verification. Before the pandemic, this often happened by people visiting their local Social Security office. However, during the pandemic field offices were closed for most of the public: SSA will not accept walk-ins from the public, and will only schedule in-person appointments for people who meet SSA's definition of "dire need," people whose green cards need to be reviewed (because Homeland Security rules prohibit people from mailing their green cards or otherwise being separated from them), people over age 12 who are receiving their first Social Security cards, and those who need to update or correct personal information with Social Security in order "to obtain income, resources, or medical care or coverage, or other services or benefits (for example filing a tax return, applying for housing, or seeking an Economic Impact Payment)."

Everyone else—which includes most people who are seeking replacement of their Social Security cards—must mail their application for a replacement card and original proof documents to their local Social Security field office during the pandemic. However, SSA has temporarily expanded the list of documents that can be submitted to prove identity, because they realized how challenging it is for people to be without their drivers licenses, passports or other identification for the weeks or months it takes SSA to process replacement cards and mail the identity proofs back, especially with the recent decreases in performance at the US Postal Service. SSA issued a Dear Colleague letter (see page 11) and Emergency Message 21018 to explain what documents are now allowed. SSA's coronavirus website has a question

about newly acceptable proof documents, and it lists

- U.S. diplomatic passport
- Military identification card
- Certificate of Naturalization
- Certificate of Citizenship
- U.S. Indian Tribal ID card
- Final adoption decree
- Certified copy of medical record
- Health Insurance or U.S. Medicaid card with biographical information such as DOB, age, etc.
- School identity card or certified copy of school record with biographical information such as DOB, age, etc.
- Life insurance policy with biographical information
- Marriage document

That Q&A also notes that any other primary or secondary document listed in POMS RM 10210.420 is acceptable.

NOSSCR

3:21-cv-01019-SI
Exhibit B / 010

*Social Security Forum®*                                     **Volume 44, No. 3 - March 2022**



**Securing today and tomorrow**

Dear Colleague,

We are now temporarily allowing U.S. citizens to mail in an original or certified secondary identity document with their paper Social Security number (SSN) application (SS-5) if they cannot request a replacement SSN card online.  Usually, we require an applicant to submit a State issued driver's license (DL) or identity card or U.S. passport with their replacement card request.  We refer to these documents as primary identity documents because they are the highest quality for providing identity.

Now, applicants can send documents we consider secondary, but still meet our authenticity requirements.  Examples of acceptable secondary identity documents include:

- U.S. diplomatic passport;
- Military identification card;
- Certificate of Naturalization;
- Certificate of Citizenship;
- U.S. Indian Tribal ID card;
- Final adoption decree;
- Certified copy of medical record;
- Health Insurance or U.S. Medicaid card;
- School identity card or certified copy of school record;
- Life insurance policy with biographical information; and
- Marriage document.

You can read a full list of additional acceptable secondary level identity documents is available at RM 10210.420.

Only U.S. citizens who must request replacement cards by mail while our offices remain closed to walk-in traffic can use secondary identity evidence.  While we offer alternative methods to apply for a replacement SSN card, some U.S. citizens' only available option is to apply by mail, including those who are:

- Not eligible to use our online no-change replacement SSN card application;
- Unable to access the appropriate technology; or
- Not eligible for a prioritized SSN replacement card appointment because they do not require a change or correction (e.g., name, date of birth or citizenship) because of an income, resource, medical care or coverage, or other service or benefit need (e.g., filing a tax return, applying for housing, or seeking an Economic Impact Payment).

We are only accepting secondary evidence for limited situations enabling us to help meet high demand for replacement cards without requiring U.S. citizens to mail important documentation.

Thank you for your continued support as we work together to serve those in need during these unprecedented times.  I encourage you to share this information with your members, colleagues, affiliates, and other interested parties.

Sincerely,

Jeffrey Buckner
Associate Commissioner
Office of Strategic and Digital Communications
(T) 410-965-1804
@SSAOutreach

NOSSCR
3:21-cv-01019-SI
Exhibit B / 011

*Social Security Forum®*                                                    **Volume 44, No. 3 - March 2022**

## NOSSCR's New Lawyer Referral Service
### continued from page 1

in each area code. Regular members are entitled to one free area code; sustaining members may receive 3 free area codes. All participants must register for the referral service.

**What is NOSSCR's referral service number?**
NOSSCR's referral service number is 845-682-1881. There is also a toll free number available (1-800-431-2804), but it is not the preferred number. NOSSCR's main office number is 845-682-1880.

**Do I have to register if I only want the free area code(s)?**
Yes. You must register to participate in the referral service even if you do not want to purchase additional area codes. You must complete the registration form to show that you are an eligible member and that you have malpractice insurance.

**Am I guaranteed a minimum number of referrals?**
NOSSCR makes no guarantee about how many referrals you will receive. The number of calls will depend on how many other members are in your area code, and how many people call from that area code. Once available, NOSSCR will provide historical information about the number of calls made from each area code, to allow you to make an educated decision about purchasing additional areas. In 2021, over 7,000 callers called NOSSCR's referral service.

**Will NOSSCR screen the calls?**
No. The calls will be sent directly to your number. NOSSCR will not be screening out the type of call. Once a call is sent to your office, you will be rotated to the end of the list.

**What happens when the call is transferred to my number?**
Claimants will call NOSSCR's referral service number and be automatically transferred to an attorney's firm. The person who answers the call should explain that the call was transferred and get the basic information to determine if the attorney can represent the caller. During this time, you will have 15 minutes to talk with the potential client, which should be enough time to get basic information about the case and contact information. After 15 minutes you will receive a warning and the

call will be disconnected so others can use the phone line. If you need to continue the conversation, you can call the claimant back.

**Will this service work 24/7?**
Yes, calls to NOSSCR's referral service number will be automatically routed to an attorney's office 24/7. If no one answers the call, the caller can leave a message on voicemail. If neither a person nor voicemail pick up, the call wll roll over to the next participant's number.

**What happens if I do not answer the call and it goes to voicemail?**
The caller will have the ability to leave a message for you. The caller will not get transferred to another attorney. We ask that you return the claimant's call so he or she will know whether or not you have accepted representation.

**What do I tell a caller who wants a local attorney but is calling from a different area code?**
Please tell that caller to contact NOSSCR directly by calling 845-682-1880 so we can personally provide a referral. Anticipating that there are many parts of the country where just one area code doesn't fully describe a specific geographic area, we are allowing sustaining members to register for 3 free area codes.

**What should I do if I don't want to represent the caller? What happens if a clamant calls from an area code that is not his/her location?**
We are aware that for various reasons some callers may be better served by another member—or even a legal services or other type of program. If you receive a call from someone you cannot represent, you can ask the caller to call the referral service again. However, if the caller wants an attorney in a different area code, or a legal services attorney, please ask the caller to call our regular number (845) 682-1880 for personal assistance.

**What happens if I accepted a case from another part of the country and then my client is assigned an in-person hearing?**
You should only register for area codes where you, or someone in your office, are able to attend a hearing in person. The decision to have an in-person hearing

*continued on page 13*

**NOSSCR**
3:21-cv-01019-SI
Exhibit B / 012

*Social Security Forum®*                                    **Volume 44, No. 3 - March 2022**

## NOSSCR's New Lawyer Referral Service
### continued from page 12

should remain with the claimant.

**What is the cost to participate**?
All eligible regular members receive their local area code for free. Eligible sustaining members receive their local area code and two additional area codes of their choice for free.

Additional area codes may be purchased:
- First 10 area codes purchased (not counting free area codes): $40 each ($32 each for sustaining members)
- Additional area codes purchased after the first 10 (not counting the free area codes): $35 each ($28 each for sustaining members)
- All area codes for all 50 US states, plus DC, Puerto Rico, plus new area codes as they are added during your enrollment period: $9000 total, $28 per area code ($7200 for sustaining members)
- You may pay by check or credit card. If you select the entire country and pay by credit card, you will have the option of authorizing 12 monthly charges to your credit card (with a 12-month commitment)

**Can my firm participate, or can all attorneys in my firm participate?**
Only NOSSCR members who are attorneys in private practice with malpractice insurance can participate. Each attorney signs up individually. There are no firm memberships or participants. If you have many eligible NOSSCR members in your firm, each one can sign up.

**Can I purchase the same area code more than once?**
No, each individual may have only one copy of each distinct area code. If you have more than one eligible member in your firm, each one may purchase the same area codes so, as a firm, you will have more than one copy of those area codes. An individual may purchase several different area codes.

**What happens if my membership or insurance lapses during the 12-month period?**
Should your membership or malpractice insurance lapse, you will be removed from the referral service until you renew your membership or send your current insurance information. You will receive reminders, but ultimately you are responsible to ensure that NOSSCR has your current malpractice insurance information and that your NOSSCR membership is active. No credit will be provided for periods of lapsed insurance or membership.

If your NOSSCR membership, malpractice insurance, or other eligibility lapses during the 12-month period, we will not be able to provide a refund—the registration fee is an up-front payment, even if broken into monthly installments.

**How do potential clients hear about NOSSCR's referral service?**
Our referral service number appears on notices sent out by SSA to unrepresented claimants. Many organizations also share NOSSCR's referral service number with their members, as do state, local and federal politicians who receive calls from their constituents looking for representation. Claimants also receive the lawyer referral service number from our webpage and from other referring sources. In 2021 over 7,000 potential clients called our referral service.

**How do I register?**
Go to nosscr.org/referral-service-signup.

**What else should I know?**
The only fees are the up front registration fee. There is no fee after a case is completed.

NOSSCR asks that each participant respond to the email about the call, letting us know whether or not you have accepted the case.

Any other questions, please contact nosscr@nosscr.org.

**Thank you for participating in NOSSCR's lawyer referral service!**

**NOSSCR**

3:21-cv-01019-SI
Exhibit B / 013

*Social Security Forum*®                                                    **Volume 44, No. 3 - March 2022**

### FISCAL YEAR 2021 DISABILITY DECISION DATA

**Table 3.23 – Fiscal Year 2021 Disability Decision Data**[*]



[1/] Federal Court data includes appeals of Continuing Disability Reviews.

Data Sources:
1. Initial and Reconsideration Data: SSA State Agency Operations Report
2. Administrative Law Judge and Appeals Council data: SSA Office Hearing Operations and SSA Office of Analytics, Review and Oversight (OARO)
3. Federal Court data: SSA Office of General Counsel

[*] Workload volumes for initial claims, reconsiderations, and hearings do not align with performance reported in our key performance measures table because the data definition captures broader activity.

Includes Title II, Title XVI, and concurrent initial disability determinations and appeals decisions issued in FY 2021, regardless of the year in which the initial claim was filed, and regardless of whether the claimant ever received benefits (in a small number of cases with favorable disability decision benefits are subsequently denied because the claimant does not meet other eligibility requirements.) Does not include claims where an eligibility determination was reached without a determination of disability. If a determination or appeals decision was made on Title II and Title XVI claims for the same person, the results are treated as one concurrent decision.

NOTE: Due to rounding, data may not always total 100%.
Prepared by: SSA, ODSSI (Office of Decision Support and Strategic Information)
Date Prepared: January 31, 2022

NOSSCR
3:21-cv-01019-SI
Exhibit B / 014

*Social Security Forum®*                                   **Volume 44, No. 3 - March 2022**

## How Have DDS Caseloads Changed During the Pandemic?

source: https://www.ssa.gov/disability/data/ssa-sa-mowl.htm

| State | January 2022 Pending | | | January 2020 Pending | | | % Change from 1/20-1/22 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Initial | Recon | Total | Initial | Recon | Total | Initial | Recon | Total |
| AK | 652 | 61 | 713 | 1332 | 6 | 1338 | -51.1 | 916.7 | -46.7 |
| AL | 25,401 | 10,220 | 35,621 | 17791 | 9529 | 27320 | 42.8 | 7.3 | 30.4 |
| AR | 14,370 | 3,288 | 17,658 | 9144 | 2449 | 11593 | 57.2 | 34.3 | 52.3 |
| AZ | 21,037 | 4,401 | 25,438 | 7279 | 2070 | 9349 | 189.0 | 112.6 | 172.1 |
| CA | 52,732 | 11,733 | 64,465 | 52230 | 14098 | 66328 | 1.0 | -16.8 | -2.8 |
| CO | 8,514 | 914 | 9,428 | 10083 | 2480 | 12563 | -15.6 | -63.1 | -25.0 |
| CT | 5,825 | 1,283 | 7,108 | 6869 | 1795 | 8664 | -15.2 | -28.5 | -18.0 |
| DC | 2,568 | 321 | 2,889 | 2124 | 393 | 2517 | 20.9 | -18.3 | 14.8 |
| DE | 3,662 | 690 | 4,352 | 2572 | 472 | 3044 | 42.4 | 46.2 | 43.0 |
| EA | 2,697 | 765 | 3,462 | 72 | 1027 | 1099 | 3645.8 | -25.5 | 215.0 |
| EO | 420 | 0 | 420 | 2251 | 93 | 2344 | -81.3 | -100.0 | -82.1 |
| EV | 476 | 1 | 477 | 2618 | 1466 | 4084 | -81.8 | -99.9 | -88.3 |
| FL | 72,418 | 20,107 | 92,525 | 40689 | 11120 | 51809 | 78.0 | 80.8 | 78.6 |
| GA | 34,811 | 6,624 | 41,435 | 22015 | 4126 | 26141 | 58.1 | 60.5 | 58.5 |
| HI | 1,492 | 398 | 1,890 | 1342 | 259 | 1601 | 11.2 | 53.7 | 18.1 |
| IA | 4,726 | 958 | 5,684 | 4603 | 1495 | 6098 | 2.7 | -35.9 | -6.8 |
| ID | 2,381 | 958 | 3,339 | 2479 | 468 | 2947 | -4.0 | 104.7 | 13.3 |
| IL | 29,090 | 6,065 | 35,155 | 24449 | 8088 | 32537 | 19.0 | -25.0 | 8.0 |
| IN | 11,746 | 3,757 | 15,503 | 10584 | 3074 | 13658 | 11.0 | 22.2 | 13.5 |
| KS | 2,463 | 279 | 2,742 | 1871 | 219 | 2090 | 31.6 | 27.4 | 31.2 |
| KY | 16,491 | 4,302 | 20,793 | 13403 | 3285 | 16688 | 23.0 | 31.0 | 24.6 |
| LA | 17,021 | 4,905 | 21,926 | 12878 | 3203 | 16081 | 32.2 | 53.1 | 36.3 |
| MA | 15,812 | 2,804 | 18,616 | 10724 | 2729 | 13453 | 47.4 | 2.7 | 38.4 |
| MD | 18,455 | 7,647 | 26,102 | 12595 | 3164 | 15759 | 46.5 | 141.7 | 65.6 |
| ME | 3,977 | 1,333 | 5,310 | 2651 | 991 | 3642 | 50.0 | 34.5 | 45.8 |
| MI | 29,208 | 8,764 | 37,972 | 24142 | 3924 | 28066 | 21.0 | 123.3 | 35.3 |
| MN | 5,736 | 1,395 | 7,131 | 7145 | 1723 | 8868 | -19.7 | -19.0 | -19.6 |
| MO | 15,295 | 4,003 | 19,298 | 16397 | 2910 | 19307 | -6.7 | 37.6 | 0.0 |
| MS | 15,153 | 2,998 | 18,151 | 9412 | 1602 | 11014 | 61.0 | 87.1 | 64.8 |
| MT | 1,896 | 180 | 2,076 | 2588 | 362 | 2950 | -26.7 | -50.3 | -29.6 |
| NC | 28,321 | 9,276 | 37,597 | 29317 | 5622 | 34939 | -3.4 | 65.0 | 7.6 |
| ND | 1,020 | 180 | 1,200 | 540 | 111 | 651 | 88.9 | 62.2 | 84.3 |
| NE | 3,771 | 855 | 4,626 | 3181 | 690 | 3871 | 18.5 | 23.9 | 19.5 |
| NH | 2,827 | 380 | 3,207 | 1726 | 292 | 2018 | 63.8 | 30.1 | 58.9 |
| NJ | 10,052 | 3,198 | 13,250 | 11050 | 2321 | 13371 | -9.0 | 37.8 | -0.9 |
| NM | 7,224 | 2,343 | 9,567 | 4443 | 1609 | 6052 | 62.6 | 45.6 | 58.1 |
| NV | 4,563 | 1,602 | 6,165 | 5942 | 430 | 6372 | -23.2 | 272.6 | -3.2 |
| NY | 33,052 | 8,622 | 41,674 | 27373 | 7048 | 34421 | 20.7 | 22.3 | 21.1 |
| OH | 20,634 | 5,295 | 25,929 | 20191 | 5508 | 25699 | 2.2 | -3.9 | 0.9 |
| OK | 8,708 | 2,283 | 10,991 | 10343 | 2244 | 12587 | -15.8 | 1.7 | -12.7 |
| OR | 6,414 | 2,045 | 8,459 | 9509 | 2846 | 12355 | -32.5 | -28.1 | -31.5 |
| PA | 28,653 | 7,585 | 36,238 | 29847 | 8237 | 38084 | -4.0 | -7.9 | -4.8 |
| PR | 3,913 | 690 | 4,603 | 3234 | 2589 | 5823 | 21.0 | -73.3 | -21.0 |
| RI | 1,765 | 334 | 2,099 | 2305 | 502 | 2807 | -23.4 | -33.5 | -25.2 |
| SC | 24,875 | 7,527 | 32,402 | 12981 | 1805 | 14786 | 91.6 | 317.0 | 119.1 |
| SD | 1,730 | 232 | 1,962 | 1165 | 563 | 1728 | 48.5 | -58.8 | 13.5 |
| TN | 21,104 | 10,038 | 31,142 | 18615 | 3607 | 22222 | 13.4 | 178.3 | 40.1 |
| TX | 63,947 | 14,177 | 78,124 | 39376 | 13774 | 53150 | 62.4 | 2.9 | 47.0 |
| UT | 4,531 | 674 | 5,205 | 2986 | 734 | 3720 | 51.7 | -8.2 | 39.9 |
| VA | 19,912 | 4,603 | 24,515 | 13619 | 3409 | 17028 | 46.2 | 35.0 | 44.0 |
| VT | 778 | 170 | 948 | 890 | 169 | 1059 | -12.6 | 0.6 | -10.5 |
| WA | 11,680 | 2,628 | 14,308 | 10864 | 3454 | 14318 | 7.5 | -23.9 | -0.1 |
| WI | 16,446 | 5,045 | 21,491 | 8916 | 2602 | 11518 | 84.5 | 93.9 | 86.6 |
| WV | 6,669 | 3,591 | 10,260 | 5245 | 1272 | 6517 | 27.1 | 182.3 | 57.4 |
| WY | 811 | 130 | 941 | 1176 | 128 | 1304 | -31.0 | 1.6 | -27.8 |
| TOTAL | 769925 | 204657 | 974582 | 609166 | 160186 | 769352 | 26.4 | 27.8 | 26.7 |

NOSSCR

3:21-cv-01019-SI
Exhibit B / 015

*Social Security Forum®*                                                   **Volume 44, No. 3 - March 2022**



# *APPLICATIONS WELCOME!*
# *PUBLIC MEMBER DIRECTOR POSITION*
# *ON CRCC BOARD OF DIRECTORS*

The Governance Committee of the Commission on Rehabilitation Counselor Certification (CRCC) is pleased to announce it is currently accepting applications for one (1) Public Member Director position on the CRCC Board of Directors.

*As defined by our accrediting agency and adopted by CRCC, a Public Member Director is a person who represents the direct or indirect users of the skills/services of CRCs (e.g. clients with disabilities, their family members, client advocates, employers of clients receiving services). The Public Member Director should not have similar credentials to CRCs. CRCC recommends, but does not require, the Public Member Director to have been a consumer of a CRC's skills/services or someone who has a background in public advocacy.*

This is an exciting time to be involved with CRCC. As the world's largest rehabilitation counseling organization dedicated to improving the lives of individuals with disabilities, CRCC is a vital, vibrant, and influential organization that not only supports CRC certification, but also provides leadership in advocating for the rehabilitation counseling profession. As such, CRCC is looking for those individuals who truly want to make a difference.

The elected Public Member Director will serve a three-year term from January 1, 2023 to December 31, 2025. While the positions are unpaid, voluntary service positions, CRCC does pay travel and related expenses in accordance with its reimbursement policy.

Completed application materials, including a two-page (maximum) vitae/resume and two letters of recommendation, must be submitted electronically no later than May 31, 2022 by 5:00 pm CT. The Governance Committee will only accept applications submitted by this deadline when developing a slate of candidates to present to the Board of Directors.

Position requirements and related information are located in the Candidate Interest Packets available at the following link: **Candidate Interest Packet**

Final candidates will be required to participate in a phone interview with a member of the CRCC Governance Committee, which will be scheduled in July 2022. CRCC's Board of Directors will consider a slate of candidates in late September 2022, with notifications sent to all final candidates by October 15, 2022.

Thank you for considering applying for a CRCC Public Member Director position. We look forward to receiving your application.

Pam Shlemon
Governance Committee Chair

*Social Security Forum®*                                    **Volume 44, No. 3 - March 2022**

# Caseload Analysis Report February 2022

PAGE    1

**CASELOAD ANALYSIS REPORT**
NATIONAL
Month Ending: 02/25/2022 Run Date: 03/08/2022
ODAR WORKLOAD AND PERFORMANCE SUMMARY

| | FY21 | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Work Days | 248 | 24 | 18 | 19 | 23 | 19 | | | | | | | |
| ALJs Duty | 1325.00 | 1270.00 | 1266.00 | 1261.00 | 1229.00 | 1222.00 | | | | | | | |
| ALJs Avail | 1234.76 | 1178.30 | 1174.20 | 1172.60 | 1145.50 | 1130.60 | | | | | | | |
| Adjusted Receipts | 382870 | 35970 | 26390 | 26875 | 32855 | 26573 | | | | | | | |
| Receipts Total | 383650 | 36034 | 26443 | 26907 | 32902 | 26614 | | | | | | | |
| VH Opt Out | 80860 | 6422 | 4726 | 4782 | 4829 | 4314 | | | | | | | |
| Receipts Daily | 1546.98 | 1501.42 | 1469.06 | 1416.16 | 1430.52 | 1400.74 | | | | | | | |
| Receipts Daily Per Available ALJ | 1.25 | 1.27 | 1.25 | 1.21 | 1.25 | 1.24 | | | | | | | |
| Transfers In | 91081 | 5211 | 6858 | 7021 | 6525 | 8155 | | | | | | | |
| Transfers Out | 91079 | 5211 | 6858 | 7019 | 6525 | 8155 | | | | | | | |
| Dispos Total | 451046 | 35243 | 25857 | 28150 | 35911 | 29562 | | | | | | | |
| Dispos Daily | 1818.73 | 1468.46 | 1436.50 | 1481.58 | 1561.35 | 1555.89 | | | | | | | |
| ALJ Dispos Total | 449584 | 35221 | 25791 | 28061 | 35788 | 29460 | | | | | | | |
| ALJ Dispos Daily | 1812.84 | 1467.54 | 1432.83 | 1476.89 | 1556.00 | 1550.53 | | | | | | | |
| ALJ Dispos Daily Per Avail ALJ | 1.47 | 1.25 | 1.22 | 1.26 | 1.36 | 1.37 | | | | | | | |
| Attorney Adj Dispos Total | 1462 | 22 | 66 | 89 | 123 | 102 | | | | | | | |
| Attorney Adj Dispos Daily | 5.90 | .92 | 3.67 | 4.68 | 5.35 | 5.37 | | | | | | | |
| DISP/REC Ratio | 118 | 98 | 98 | 105 | 109 | 111 | | | | | | | |
| DISP/ADJ Receipts | 118 | 98 | 98 | 105 | 109 | 111 | | | | | | | |
| Prod Index | 69.95 | 59.06 | 62.77 | 64.21 | 65.90 | 61.12 | | | | | | | |
| Total O/T Hours | 205205.86 | 16069.75 | 20858.00 | 15460.00 | 27781.25 | 23142.75 | | | | | | | |
| Average Proc Time | 326 | 308 | 306 | 305 | 315 | 313 | | | | | | | |
| Opening Pending | 418313 | 350137 | 350864 | 351397 | 350122 | 347066 | | | | | | | |
| Closing Pending Total | 350137 | 350864 | 351397 | 350122 | 347066 | 344077 | | | | | | | |
| Closing Pending Per Duty ALJ | 273.33 | 276.27 | 277.56 | 277.65 | 282.40 | 281.57 | | | | | | | |
| Pending Over 120 Days | 235326 | 238484 | 241763 | 242094 | 240650 | 240082 | | | | | | | |
| % Pending Over 120 Days | 67 | 68 | 69 | 69 | 69 | 70 | | | | | | | |
| Pending Over 180 Days | 180398 | 183718 | 188827 | 190879 | 191412 | 190360 | | | | | | | |
| % Pending Over 180 Days | 52 | 52 | 54 | 55 | 55 | 55 | | | | | | | |
| Pending Over 270 Days | 130130 | 130113 | 132132 | 134876 | 136621 | 138363 | | | | | | | |
| % Pending Over 270 Days | 37 | 37 | 38 | 39 | 39 | 40 | | | | | | | |
| Pending Over 365 Days | 103108 | 102737 | 103855 | 104321 | 103853 | 104284 | | | | | | | |
| % Pending Over 365 Days | 29 | 29 | 30 | 30 | 30 | 30 | | | | | | | |
| Pending > 365 Per Duty ALJ | 80.49 | 80.90 | 82.03 | 82.73 | 84.50 | 85.34 | | | | | | | |
| Pending 750 and Over Days | 32816 | 37062 | 40097 | 42694 | 45341 | 48045 | | | | | | | |
| % Pending 750 and Over Days | 9 | 11 | 11 | 12 | 13 | 14 | | | | | | | |
| Pending 800 and Over Days | 25742 | 29059 | 31885 | 35085 | 38584 | 41037 | | | | | | | |
| % Pending 800 and Over Days | 7 | 8 | 9 | 10 | 11 | 12 | | | | | | | |
| Pending 850 and Over Days | 19832 | 22778 | 25052 | 27749 | 31154 | 33989 | | | | | | | |
| % Pending 850 and Over Days | 6 | 6 | 7 | 8 | 9 | 10 | | | | | | | |
| Pending 900 and Over Days | 15182 | 17501 | 19421 | 21635 | 24561 | 26888 | | | | | | | |
| % Pending 900 and Over Days | 4 | 5 | 6 | 6 | 7 | 8 | | | | | | | |
| Pending 1000 and Over Days | 8829 | 10067 | 11348 | 12834 | 14881 | 16551 | | | | | | | |
| % Pending 1000 and Over Days | 3 | 3 | 3 | 4 | 4 | 5 | | | | | | | |

Per-ALJ calculations exclude 402 dispositions for Attorney Adjudicator Cases; there are 9 cases pending for Attorney Adjudicators. To date, 239 cases have been deleted.

NOSSCR
3:21-cv-01019-SI
Exhibit B / 017

## Available Materials

### No. 2279, Mental Impairments, Weight of Medical Evidence

The Court found that the ALJ erred in making findings on the B criteria in the mental health listings when the ALJ noted that the claimant declined to go to behavioral health treatment and underwent the "conservative" treatment of medication and occasional counseling. The ALJ did not take testimony about the claimant's reasons for not undergoing additional treatment (such as a lack of insurance and transportation) and did not follow SSR 16-3p. The ALJ did not define what she meant by "conservative treatment" and used "her own subjective notions" to reach her decision.

The ALJ also did not fully consider the claimant's neuropathy, intellectual disability (including a full scale IQ of 62), hearing impairment, and panic attacks and did not provide a "logical bridge" between her recitation of the claimant's medical records and her decision to discount them. Therefore, remand for additional proceedings is necessary.

The plaintiff was represented by John Horn of Tinley Park, Illinois.

### No. 2280, Residual Functional Capacity

The claimant appealed her denial to federal court and shortly thereafter, filed a new claim. The medical consultant at the initial level adopted the ALJ's RFC from the first claim, applying Acquiescence Ruling (AR) 98-4(6) (*Drummond).* However, the medical consultant at the reconsideration level determined that the ALJ's RFC should not be adopted because that claim was still pending in federal district court. She instead issued RFC findings including that the claimant was able to lift 10 pounds occasionally and frequently, could stand and/or walk for two hours of a work day, and could sit for six hours of a work day. The claimant was 60 at her ALJ hearing on the new claim.

The ALJ adopted the prior ALJ's RFC and denied the claim. The ALJ said she was applying *Drummond.* However, *Drummond* had already been clarified by *Earley,* which requires a "fresh look" at the evidence, when the ALJ issued her decision. The Commissioner argued that the ALJ did provide the "fresh look" even though she cited *Drummond* and not *Earley* and there was at most harmless error.

However, the ALJ used the identical RFC of the first ALJ and stated that she was "bound" by *Drummond* to follow the first ALJ's decision. The Court did not find this error harmless, and remanded the case for additional proceedings.

The claimant was represented by Margolius, Margolius & Associates of Cleveland and Columbus, Ohio.

No. 2279, *Grubich v. Kijakazi*, No. 2:20-CV-375 JEM (N.D. Ind., Hammond Div.).

No. 2280, *Barnard v. Commissioner of Social Security,* Case No. 1:20-CV-01711-JDG (N.D. Ohio, E.Div., September 2, 2021).

*To order available materials, visit www.nosscr.org/available-materials.*

*Do you have a successful case you would like to share with readers of the NOSSCR Forum? Available Materials includes ALJ, Appeals Council, and federal court decisions. Representatives can also submit their briefs along with the favorable decisions if they choose. Inclusion in Available Materials helps members who may have similar cases and is an excellent way to publicize your victories!*

*Please send submissions to Stacy.Cloyd@nosscr.org, making sure to redact the claimant's personally identifiable information from all materials (the claimant's name can remain in the case caption of federal court cases if you like).*

*Social Security Forum®*                    **Volume 44, No. 3 - March 2022**

## Selected Cases

### APPEALS COUNCIL: NEW EVIDENCE
*Barbara W. v. Com'r of Social Sec.*, 541 F.Supp.3d 296 (W.D.N.Y. 2021)

The Appeals Council failed to properly address the new evidence generated after the ALJ hearing, which identified the cause of Plaintiff's symptoms that existed during the relevant period. The ALJ's decision indicates that the lack of etiology for Plaintiff's symptoms, "several of which, if substantiated, would seem to preclude Plaintiff from performing the activities required by the RFC," was a central consideration for finding Plaintiff's complaints unsupported by the record. As such, the relevance of the new evidence is not that it "establishes" Plaintiff's disability but instead provides a basis for Plaintiff's symptoms and testimony, which the ALJ rejected due to a lack of unifying diagnosis.

"In sum, the new evidence presented by Plaintiff at the very least 'suggests that, during the relevant time period, her condition was more serious than previously thought…' The explanation given by the Appeals Council—which consisted of a cursory statement that the evidence was outside the period of disability—does not address this issue. Given the information contained in the new records, whether limitations caused by Plaintiff's kidney disease prevented her from engaging in competitive employment prior to the date last insured is a question to be addressed by the Commissioner… Accordingly, the case is remanded for further administrative proceedings."

### ALJ'S DUTIES
*Maldonado v. Com'r of Social Sec.*, 524 F.Supp.3d 183 (S.D.N.Y. 2021)

The ALJ had a "doubly heightened" duty to develop the record in this case because the claimant was pro se and alleged numerous mental impairments. At the hearing, "[t]he ALJ asked essentially no specific questions about the numerous mental conditions that Maldonado alleged she had or that were reflected in records already before the ALJ… The ALJ asked no questions about the intensity of Maldonado's mental impairments, about whether they had gotten worse over time, or about the effectiveness of Maldonado's medications in keeping her symptoms under control. She asked no questions about the 'three different medications' that Maldonado said she was on." The ALJ's questioning regarding physical symptoms was also not as detailed as it could have been. The ALJ's efforts to obtain the claimant's medical records is not sufficient to show that the ALJ fully developed the record or provided the claimant with a full and fair hearing. "The duty to develop the record goes beyond getting medical records, it also includes 'the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity…' The ALJ's omission of questions specifically directed towards Maldonado's alleged mental impairments failed to satisfy this requirement." Therefore, this matter is remanded for further administrative proceedings.

### WEIGHT OF MEDICAL EVIDENCE
*Dany Z. v. Saul*, 531 F.Supp.3d 871 (D.Vt. 2021)

In a claim filed **after** March 17, 2017, the court held that the required analysis of a treating physician opinion under the new evaluation of medical evidence regulations is very similar to what was required under the treating physician rule. "The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner. On the contrary, many district courts in the Second Circuit, when presented with these regulations, have concluded that the factors are very similar to the analysis under the old rule." Therefore, ALJs must still provide valid reasons that are supported by substantial evidence for dismissing a treating physician opinion, even in the absence of the treating physician rule. In this case, the ALJ failed to fully explain his consideration of all the medical opinion evidence and substantial evidence does not support the ALJ's dismissal of the claimant's treating physician's opinion. If the ALJ had properly considered the treating physician's opinion under the new regulations, "it is clear that he would have found, based on the VE's testimony and other substantial evidence in the record, that Dany Z. would not have been able to perform any work." Therefore, this case is reversed and remanded

*continued on page 20*

**NOSSCR**

3:21-cv-01019-SI
Exhibit B / 019

## Selected Cases

**continued from page 19**

solely for a calculation of disability benefits.

**LAY WITNESS TESTIMONY**
*Tanya L. L. v. Com'r of Social Sec.*, 526 F.Supp.3d 858 (D.Or. 2021)

The ALJ failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony and the lay witness testimony of Plaintiff's sister and daughter. While there are limited medical records, "the treatment notes and examination findings reflect Plaintiff frequently complains about worsening low-back pain and continues to suffer from psoriatic arthritis." The record also reflects Plaintiff's attempts to seek mental health treatment in 2018 and 2019 and Plaintiff's providers documented her symptoms from various traumatic events. The ALJ also concluded that the lay witness statements were "neither inherently valuable or persuasive when compared to the objective medical evidence," but did not provide any assessment of the lay witness statements. "[A]lthough the ALJ is not required to use the same factors as required for medical sources, he is still required to articulate his analysis and his reasons for discounting such statements." Therefore, the Court remands this matter for the immediate calculation and payment of benefits.

**SIGNIFICANT NUMBER OF JOBS**
*Kiiroja v. Com'r of Social Sec.*, 525 F.Supp.3d 412 (E.D.N.Y. 2021)

Substantial evidence does not support the ALJ's denial of benefits when "the ALJ relies on the existence of 'document preparer' jobs in the national economy — specifically, in this case, the vocational expert dubiously opined that 35,000 such positions await those who care to plunge into production of microfilmed records. This Court has addressed this question in two written opinions, and courts across the country have reviewed testimony of the number of these analog positions in the modern, digital economy, with estimates ranging from 10,000 to 2.8 million. See *Zacharopoulos [v. Saul]*, 516 F.Supp.3d [211 (E.D.N.Y. 2021)] at 222-23 (collecting decisions); *Feuer v. Saul*, No. CV 16-5732 (ADS) (GRB), 2019 WL 9042872, at *1 (E.D.N.Y.

Aug. 30, 2019), *adopted by*, 2020 WL 1316528 (E.D.N.Y. Mar. 20, 2020). Once again, the Court finds that the position relied upon is obsolete, and again rejects the ALJ's 'unblinking acceptance of conclusory opinions by the vocational expert.' *Zacharopoulos*, 516 F.Supp.3d at 225."

"Because, once again, the Commissioner inappropriately considered vocational evidence that is fundamentally unreliable, and the ALJ misapplied the standards relating to such evidence, Defendant's motion is denied, while Plaintiff's motion is granted, and the matter is remanded for further proceedings."

**WEIGHT OF MEDICAL EVIDENCE**
*Menard v. Com'r of Social Sec.*, 520 F.Supp.3d 294 (E.D.N.Y. 2021)

The ALJ erred in applying the treating physician rule. "Four treating physicians provided opinions suggesting that plaintiff suffered from limitations that would preclude gainful employment. All four opinions were rejected by the ALJ, being accorded little or no weight, while the ALJ accorded 'great weight' solely to the opinion of a consultative physician who saw plaintiff once and failed to review MRI findings in conjunction with his review… While the law provides for instances in which a treating physician's opinion may be rejected by an ALJ, the ALJ's reliance upon the consultative opinion was misplaced based upon the failure to consider the MRI results, which revealed findings of significant spinal abnormalities. The failure of the consulting physician to examine such evidence, standing alone, undermines the ALJ's determination concerning the weight to be accorded that opinion." Therefore, plaintiff's motion to remand this matter for further administrative proceedings is granted.

*To purchase more case summaries by topic or circuit, use the form on page 22 or visit www.nosscr.org/case-law-summaries.*

NOSSCR

3:21-cv-01019-SI
Exhibit B / 020

*Social Security Forum®*                                           **Volume 44, No. 3 - March 2022**



## LISTING OF IMPAIRMENTS/GRIDS SUBSCRIPTION

**NEW ORDER FORM ONLY**

*DON'T BE LEFT IN THE DARK!  RECEIVE NEW LISTINGS AS SOON AS THEY'RE PUBLISHED.*

How can you be sure you have the most recent listing, Social Security Rulings (SSR), or compassionate allowance when representing your clients? To keep you current with these revisions, NOSSCR offers members the option to subscribe to the Listing of Impairments for Adults, Listing of Impairments for Children, the Medical-Vocational Guidelines (Grids), selected SSRs, and the list of Compassionate Allowances.

All subscribers have access to a private webpage containing the most recent version of this important material. Subscribers receive an email whenever there has been a change to this webpage due to a new or revised listing, relevant SSR, or compassionate allowance.

**The purchase price for a new subscription in 2022 is $225 for regular members, $180 for sustaining members, and $350 for non-members.**

This price includes:
- Timely notification and access to an updated publication of the Listings of Impairments for Adults, the Listings of Impairments for Children, and the Medical-Vocational Guidelines (Grids).
- Updates of new SSRs issued on specific impairments.
- Updated lists of Compassionate Allowances when published.
- No updating needed! The webpage will be timely updated.
- All subscriptions run until December 31, 2022 regardless of when ordered, so order yours now and get access immediately.

_____

*Please send payment and this form to:*

*NOSSCR, Attn: Listings/Grids, 161 Airport Executive Park, Nanuet, NY 10954*

Listings/Grids NEW order through December 31, 2022

Name of New Subscriber: _____

Firm: _____

Address: _____

City, State, Zip: _____     Phone: _____

Email:_____ all notices are sent by email

Number of new subscriptions:_____

**Amount Enclosed: _____ @ $225 for regular members, $180 for sustaining members, and $350 for non-members**

**TO PAY BY CREDIT CARD, visit NOSSCR's** ONLINE STORE

NOSSCR
3:21-cv-01019-SI
Exhibit B / 021

*Social Security Forum®*                                        **Volume 44, No. 3 - March 2022**

# NOSSCR — CASE SUMMARIES: 2022 ORDER FORM

We have summarized all reported Social Security and SSI cases decided by the Federal District Courts, the Circuit Courts of Appeal, and the U.S. Supreme Court since 1990.

**You can purchase all of the topics within one (or more) circuit. (Our most popular option.)** This will show you how the courts in your circuit have been deciding Social Security disability cases. You can see which arguments have been most successful before your judges, and how the courts view certain types of claims. You will know which cases have been issued as Acquiescence Rulings for your circuit. Decisions from the U.S. Supreme Court will be included with each circuit order.

**You can purchase all of the circuits' decisions on one (or more) topic.** This will show you how courts across the country are deciding particular issues. If no court in your area has ruled on your issue, you can see what has been successful in other areas. You can also see if your circuit is in agreement with others.

**You can purchase all of the summaries from all circuits.** This will show you everything!

Name: _____

NOSSCR Case Summaries are available on CD or via email:
☐ On CD: Address: _____ City/State: _____
☐ Via email: Email address: _____

Three ways to order:
1. **Purchase all topics within one or more circuits (also includes U.S. Supreme Court summaries)**
   Please indicate which circuit(s) you want. _____Circuit(s)
   Regular member - $65 per circuit. Amount enclosed_____
   Sustaining member - $52 per circuit. Amount enclosed_____
   Non-member - $92 per circuit. Amount enclosed_____
2. **Purchase all summaries by topic. The list of topics is on the reverse. Circle the topic(s) you want.**
   Regular member - $25 per topic. Amount enclosed_____
   Sustaining member - $20 per topic. Amount enclosed_____
   Non-member - $37 per topic. Amount enclosed_____
3. **Purchase all summaries.**
   Regular member - $520 (CD only). Amount enclosed_____
   Sustaining member - $416 (CD only). Amount enclosed_____
   Non-member - $780 (CD only). Amount enclosed_____

IF PAYING BY CREDIT CARD YOU MUST INCLUDE THE FOLLOWING:
   Name on credit card: _____
   Credit card type: (Visa or MasterCard only) _____
   Credit card number: _____
   Expiration date: _____          Security code (3 or 4 digits): _____
   I authorize NOSSCR to charge $_____ on my credit card number indicated above.

   Signature: _____

161 Airport Executive Park, Nanuet, NY 10954  |  845.682.1880  |  www.NOSSCR.org

*Social Security Forum*®                                                Volume 44, No. 3 - March 2022

## LIST OF CATEGORIES

**A**
ABSENTEEISM
ACTIVITIES OF DAILY LIVING
AGE
AIDS/HIV INFECTION
ALCOHOLISM/SUBSTANCE ABUSE
ALIENS
ALJ'S DUTIES
AMERICANS WITH DISABILITIES ACT
APPEALS COUNCIL
APPEALS COUNCIL: NEW EVIDENCE
ARTHRITIS
ATTORNEYS' FEES
ATTORNEYS' FEES - EAJA
AUXILIARY BENEFITS

**B**
BACK IMPAIRMENTS

**C**
CANCER
CARPAL TUNNEL SYNDROME
CHRONIC FATIGUE SYNDROME
COMBINATION OF IMPAIRMENTS

**D**
DIABETES
DIGESTIVE DISORDERS
DISABLED ADULT CHILDREN
DISABLED WIDOWS

**E**
EPILEPSY/SEIZURES

**F**
FIBROMYALGIA
FRAUD

**G**
GARNISHMENT
GOVERNMENT PENSION OFFSET
GRIDS: Non-Exertional Impairments
GROWTH IMPAIRMENTS

**H**
HEADACHES
HEARING LOSS
HEART CONDITIONS

**I**
ILLEGITIMATE CHILDREN
ILLITERACY
INSURED STATUS
INTELLECTUAL DISABILITY

INTERIM BENEFITS
ISSUE EXHAUSTION

**J**
JUDICIAL REVIEW

**K**
KERNER DOCTRINE
KNEE IMPAIRMENTS

**L**
LACK OF COUNSEL
LATE FILING IN FEDERAL COURT
LATE REQUEST FOR HEARING
LATE REQUEST FOR
RECONSIDERATION
LATE REQUEST FOR REVIEW
LAY WITNESS TESTIMONY
LITIGATION DELAY
LUPUS

**M**
MANUAL DEXTERITY
MEDICAL ADVISOR
MEDICATIONS
MENTAL IMPAIRMENTS
MISINFORMATION
MULTIPLE SCLEROSIS

**N**
NEUROLOGICAL IMPAIRMENT
NON-ACQUIESCENCE
NON-ENGLISH SPEAKING

**O**
OBESITY
ONSET DATE
OVERPAYMENTS
OWN-MOTION REVIEW

**P**
PAIN
PAST RELEVANT WORK
PRESUMPTION OF DEATH
PRISONERS' BENEFITS
PRIVACY

**R**
RAILROAD RETIREMENT BENEFITS
REMAND v. REVERSAL
REMAND: LOST TAPE
REMAND: "GOOD CAUSE"
REMEDIABILITY
REOPENING

REPRESENTATIVE PAYEE
RES JUDICATA
RESIDUAL FUNCTIONAL CAPACITY
RESPIRATORY IMPAIRMENTS
RETIREMENT TEST
RETROACTIVE APPLICATION

**S**
SCHOOL ATTENDANCE
SEVERITY
SIGNIFICANT NUMBER OF JOBS
SIT & SQUIRM
SKIN CONDITIONS
SSI: DISABLED CHILDREN
SSI: NON-DISABILITY ISSUES
SUBJECTIVE SYMPTOM EVALUATION
SUBSEQUENT APPLICATION
SUBSTANTIAL GAINFUL ACTIVITY

**T**
TERMINATIONS
TRANSFERABLE SKILLS
TRIAL WORK PERIOD

**U**
UNEMPLOYMENT COMPENSATION

**V**
VETERANS' DISABILITY BENEFITS
VISUAL IMPAIRMENTS
VOCATIONAL EXPERT TESTIMONY
VOCATIONAL REHABILITATION

**W**
WAIVER OF ISSUES
WEIGHT OF MEDICAL EVIDENCE
WINDFALL ELIMINATION PROVISION
WORKERS' COMPENSATION OFFSET
WORKING WHILE DISABLED

PURCHASES CAN ALSO BE MADE THROUGH OUR ONLINE STORE!
www.NOSSCR.org/store

**NOSSCR**

3:21-cv-01019-SI
Exhibit B / 023





# ANNUAL CONFERENCE

**11–14 MAY**
**IN AUSTIN, TEXAS**

**NOSSCR.ORG/2022**

Come to our country's premier **Social Security disability law conference**! We're excited to see you at our first in-person event in two years. Space is limited & vaccines required - register today!



**DR. KILOLO KIJAKAZI**

Acting Commissioner of the Social Security Admistration



**REP. LLOYD DOGGETT**

House Representative D-TX 35th District



**ALJ MELISSA SANTIAGO**

Administrative Law Judge (ALJ) at OHO

## SESSIONS INCLUDE:

- The Demise of the Treating Physician Rule
- Centralized Scheduling & the Representative Availability Process
- Returning to Work Before an Award of Benefits
- Preparing Your Case for a Difficult Hearing
- Addressing Common Problems in Mental Health Claims
- Reverse Engineering Vocational Expert Testimony
- Overpayments, Avoiding Them, and Best Kept Secrets

3:21-cv-01019-SI
Exhibit B / 024