Russell S. Buhite, OSB #142529
OGLETREE, DEAKINS, NASH, SMOAK
   & STEWART, P.C.
1201 Third Avenue, Suite 5150
Seattle, WA  98101
Telephone:   (206) 693-7052
Facsimile:   (206) 693-7058
Email:  russell.buhite@ogletree.com

Scott K. Pomeroy, MA Bar #665110
(admitted *pro hac vice*)
OGLETREE, DEAKINS, NASH, SMOAK
   & STEWART. P.C.
One Boston Place, Suite 3500
Boston, MA  02108
Telephone:   (207) 387-2961
Facsimile:   (207) 387-2986
Email:  scott.pomeroy@ogletree.com

Attorneys for Defendant THE LINCOLN NATIONAL
LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| TRACEY K. TURKOLY,<br><br>    Plaintiff,<br><br>  v.<br><br>THE LINCOLN NATIONAL LIFE<br>INSURANCE COMPANY,<br><br>    Defendant. | Case No. 3:21-cv-01019-SI<br><br>**DEFENDANT'S REPLY IN SUPPORT<br>OF ITS RULE 52 CROSS-MOTION<br>FOR JUDGMENT** |

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

## TABLE OF CONTENTS

**Page**

LOCAL RULE 7-1(a) CERTIFICATION .................................................................. 1

I.    INTRODUCTION ......................................................................................... 1

II.    LEGAL ARGUMENT.................................................................................... 2

    A.    Plaintiff's "Theory of the Case" is Contrary to the Evidence Actually in the Record, and Plaintiff Repeatedly Misstates the Basis of Lincoln's Determination. ................................................................. 2

        1.    Plaintiff initially claimed disability based on psychological symptoms, not physical symptoms of fatigue and cognitive impairment. ................................................................. 3

        2.    Lincoln did not take Plaintiff's statement about the pending elimination of her job out of context. ................................... 4

        3.    Plaintiff shifted the basis of her disability claim to subjective physical complaints only after learning that the Group Policy limits benefits for psychological conditions. ....................... 5

        4.    Dr. Coffin changed his opinion of Plaintiff's capacity for work; Lincoln did not attempt to "pass off a false summary." ...................... 6

        5.    Evidence of Plaintiff's superior work performance throughout 2018 conflicts with her current "theory of the case." .......................... 6

        6.    Plaintiff's passage of her real estate brokers exam and her pursuit of alternative careers conflict with her current "theory of the case." ....................................................... 7

        7.    Plaintiff's extensive post-disability travel conflicts with her self-reported symptoms and the representations she made to Lincoln. ......................................................... 8

    B.    The Medical Evidence Simply Does Not Support Functional Impairment Beyond March 24, 2020. ................................................. 9

        1.    Plaintiff's own "brief summary" of the evidence confirms that her claim is based on little more than her own subjective self-assessment. ......................................................... 10

DEFENDANT'S REPLY IN SUPPORT OF    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ITS RULE 52 CROSS-MOTION FOR    1201 Third Avenue, Suite 5150 | Seattle, WA 98101
JUDGMENT - i    Phone: (206) 693-7052 | Fax: (206) 693-7058
Case No. 3:21-cv-01019-SI

2.      Even if Plaintiff's alleged CFS diagnosis is accepted, she has not met her burden to prove that any functional limitations (whether from that condition or some other) actually preclude her from work. ................................................................. 12

3.      Without validity measures to assure Plaintiff's best efforts, Dr. Ludolph's neuropsychological evaluation is not reliable medical evidence of cognitive impairment. ........................................ 17

C.      Plaintiff had Access to Everything She Submitted to the Social Security Administration, and She Could Have Also Submitted such Information to Lincoln at the Same Time. .......................................................... 20

D.      Plaintiff's Criticisms of Lincoln's Medical Consultants Ignore the Actual Content of their Reports and Falsely Allege Errors they Did Not Make. ....... 22

III.    CONCLUSION ...................................................................................... 24

CERTIFICATE OF LOCAL RULE COMPLIANCE ............................................... 26

CERTIFICATE OF SERVICE ..................................................................... 27

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - ii
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).  ...................................... 1

*Anderson v. Life Ins. Co. of N. America*, No. 16-15522, 2017 WL 4326384
    (9th Cir. Sept. 18, 2017).  ................................................................... 9

*Boardman v. Prudential Ins. Co.*, 337 F.3d 9 (1st Cir. 2003).  ............................................. 15

*Bratton v. Metropolitan Life Ins. Co.*, 439 F. Supp. 2d 1039 (C.D. Cal. 2006).  .................... 10

*Dimery v. Reliance Standard Life Ins. Co.,* No. C 10-00481 JSW, 2012 WL
    1067409 (N.D. Cal. March 28, 2012), *aff'd*, 597 Fed. App'x 408 (9th Cir. 2015).  ......... 20

*Gorbacheva v. Abbott Labs. Ext. Disability Plan*, 309 F. Supp. 3d 756 (N.D. Cal.
    2018), *aff'd*, 794 F. App'x 590 (9th Cir. 2019).  ............................................... 18

*Gray v. UNUM Life Ins. Co.*, No. 2:21-cv-04198-RGK-KS, 2022 U.S. Dist.
    LEXIS 129121 (C.D. Cal. July 11, 2022).  ........................................................ 10

*Howard v. Hartford Life & Accident Ins. Co.*, 929 F. Supp. 2d 1264 (M.D. Fla.
    2013), *aff'd*, 563 Fed. App'x 658 (11th Cir. 2014).  ............................................. 1

*Hulbert v. Hartford Life & Accident Ins. Co.*, No. 20-cv-03687-BLF, 2021 WL
    3291888 (N.D. Cal. August 2, 2021).  ................................................................. 18

*Jordan v. Northrup Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869
    (9th Cir. 2004).  ......................................................................................... 1, 9

*Kludka v. Qwest Disability Plan*, No. CV-08-01806-PHX-DGC, 2012 WL
    1681983 (D. Ariz. May 14, 2012), *aff'd*, 581 Fed. App'x 633 (9th Cir. 2014).  ............... 20

*Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182 (C.D. Cal. 2008).  ............................. 10

*Muniz v. Amec Constr. Mgt., Inc.*, 623 F.3d 1290 (9th Cir. 2010).  ....................................... 1

*Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833 (8th Cir. 2006).  ................................. 15

*Ross v. Prudential Ins. Co.*, 304 Fed. App'x 502 (9th Cir. 2008).  .......................................... 2

*Salomaa v. Honda LTD Plan*, 642 F.3d 666 (9th Cir. 2011).  ...................................... *passim*

*Seleine v. Flour LTD Plan*, 598 F. Supp. 2d 1090 (C.D. Cal. 2009), *aff'd*,
409 Fed. App'x 99 (2010). ................................................................................ 9

*Takata v. Hartford Compr. Employee Benefit Serv. Co.*, No. CV-11-5068-RMP,
2012 WL 4903587 (E.D. Wash. Oct. 16, 2012), *aff'd*, 572 Fed. App'x 497
(9th Cir. 2014). ............................................................................................ 15

*Wilkins v. Unum Life Ins. Co.,* No. C 10-02940 JSW, 2013 WL 5340512
(N.D. Cal. Sept. 24, 2013). ............................................................................ 9

## Statutes, Rules, and Other Authorities

**Page**

Employee Retirement Income Security Act of 1974 ("ERISA"),
29 U.S.C. § 1001, *et seq.*............................................................................... *passim*

Local Rule 7-1. ............................................................................................... 1

Local Rules 7-2, 26-3, 54-1, and 54-3. ................................................................. 26

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - iv
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

**LOCAL RULE 7-1(a) CERTIFICATION**

Undersigned counsel for Defendant The Lincoln National Life Insurance Company ("Lincoln") hereby certifies pursuant to Local Rule 7-1(a) that the parties have made a good faith effort through telephone conferences to resolve their dispute without motion practice, and have been unable to do so.

## I.      INTRODUCTION

Plaintiff has framed her Opposition around two alternative "theories of the case"—one advanced by the Plaintiff and the other purportedly advanced by Lincoln. However, Plaintiff's "theory of the case" wholly ignores her burden of proof and the central dispositive question in this case. Here, it is not sufficient for the Plaintiff to merely show that she self-reported various symptoms to her treating practitioners or even that she has legitimately received some medical diagnosis. *See*, *e.g.*, *Jordan v. Northrup Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), *overruled on other grounds*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969–70 (9th Cir. 2006) ("That a person has a true medical diagnosis does not by itself establish disability."); *see also*, *e.g.*, *Howard v. Hartford Life & Accident Ins. Co.*, 929 F. Supp. 2d 1264, 1294–95 (M.D. Fla. 2013), *aff'd*, 563 Fed. App'x 658 (11th Cir. 2014) (explaining that "doctors' diagnoses do not, in and of themselves, establish a disability and inability to work" and that "a claimant's subjective complaints do not become objective simply because a doctor wrote them down") (internal quotations omitted).

Rather, Plaintiff's burden is to prove, by a preponderance of the evidence in the Administrative Record, that her medical condition functionally precluded her from being able to perform the main duties of her own occupation as sales account manager. *See*, *e.g.*, *Muniz v. Amec Constr. Mgt., Inc.*, 623 F.3d 1290, 1295–96 (9th Cir. 2010) (holding that "the burden of proof

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 1
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

continues to lie with the plaintiff when disability benefits are terminated after an initial grant");
*Ross v. Prudential Ins. Co.*, 304 Fed. App'x 502, 503 (9th Cir. 2008) (holding that "plan administrators are entitled to seek information on how the alleged impairment actually limited the claimant's functional capacity").

Apart from side-stepping the case's central issue, Plaintiff's Opposition also grossly mischaracterizes the contents of the record to spin a counter-factual narrative that bears no resemblance to actual events. Along the way, Plaintiff also grossly misstates Lincoln's "theory of the case," falsely accusing Lincoln of errors it did not make and positions that it did not, and does not, take. Plaintiff then emphatically argues that these strawmen of her own making (rather than Lincoln's actual arguments) are contrary to binding Ninth Circuit precedent. The Court should not be misled by such rhetoric.

The overwhelming weight of the medical evidence here simply does not support—let alone prove—that Plaintiff's medical condition functionally precluded her from working as of March 24, 2020, the date Lincoln terminated LTD benefits. Lincoln's determination was correct, and this Court should uphold that determination.

## II.    LEGAL ARGUMENT

**A.    Plaintiff's "Theory of the Case" is Contrary to the Evidence Actually in the Record, and Plaintiff Repeatedly Misstates the Basis of Lincoln's Determination.**

Plaintiff now contends that she stopped work in February 2019 due to a "significant flu-like infection" and being "infected with" the Epstein Barr virus ("EBV"). *See Pl.'s Opp.* at 2. She contends that those conditions, in short order, caused debilitating "symptoms of extreme fatigue," rendering her unable to work, and that her medical providers initially mistook her illness for depression. *Id.* at 3. Only later, she contends, did Drs. Parsons, Coffin, Walker, and Rogoff each independently diagnose her with chronic fatigue syndrome ("CFS"). *See id.* at 3. Finally, Plaintiff

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 2
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

contends that her CFS diagnosis, and her alleged functional inability to work, was subsequently confirmed by the neuropsychological testing performed by Dr. Ludolph. *See id.* at 3–4. All of these contentions, as well as Plaintiff's arguments about Lincoln's rationale for its determination, are simply at odds with the actual contents of the record.

### 1.   Plaintiff initially claimed disability based on psychological symptoms, not physical symptoms of fatigue and cognitive impairment.

The record clearly shows that Plaintiff initially claimed disability based on psychological symptoms (not symptoms of fatigue or cognitive impairment) and that her work and family situations were significant factors in her own decision to go on disability leave. When Plaintiff visited her psychiatrist, Dr. Parsons, on February 13, 2019, to get a work-excusal note, *see* LIN0395; LIN2038, she told the doctor that she was unable to work due to "panic attacks," not symptoms of body pain, extreme fatigue, or brain fog. LIN0395. On Plaintiff's last day of work, she visited her naturopath, Dr. Walker, and reported being "super stressed," LIN1124, but reported no other physical or cognitive symptoms. On exam, Dr. Walker recorded that Plaintiff's range of motion was "intact" and that her memory, attention, and concentration were all "within normal limits." LIN1125.

On May 2, 2019, as Plaintiff's 13-week short-term disability benefit came to an end, she telephoned Lincoln to apply for LTD benefits. *See* LIN0036–37. On that call, Plaintiff told Lincoln that her "employer went public last year and things got increasingly crazier and more stressful." LIN0036. The company "is doing a massive re-org in sales and everyone is trying to establish where they're going to be." LIN0036. As a result, Plaintiff continued, "[a]ll accounts had to be renegotiated," and "[e]veryone is trying to do things differently." LIN0037. Plaintiff said that despite living on the West Coast, she was responsible for East Coast accounts, and thus had to work regular 15-hour days. LIN0037. Plaintiff said she "told her boss that she felt burned

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 3
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

out." LIN0036. Contributing to her work-place stress, Plaintiff said there was also "family stuff." LIN0037. Plaintiff's father "had severe health issues," and her son had just started kindergarten. LIN0037.

On the same call, Plaintiff told Lincoln that "[p]hysically she was fine," and rather than blaming her inability to work on symptoms of fatigue or any cognitive impairments, Plaintiff instead said she needed to stop working due to what she characterized as a "[p]erfect storm of stress." LIN0037.

### 2. Lincoln did not take Plaintiff's statement about the pending elimination of her job out of context.

Contrary to Plaintiff's false accusation, Lincoln's Opening Brief did not take the statements Plaintiff made to Dr. Parsons out of context. *See Pl.'s Opp.* at 12. On page 8 of its Brief, Lincoln quoted the full sentence from Dr. Parsons's notes that Plaintiff claims Lincoln partially omitted. *See Def.'s Br.* at 8 (ECF Doc. #35). Plaintiff made her initial visit to Dr. Parsons after learning that "[h]er job is being eliminated and she can stay with the same company by taking a non-challenging job or work under a manager in a challenging job." LIN0395; LIN1179. At that time, Plaintiff did not report symptoms of fatigue or cognitive impairment to Dr. Parsons. Rather, she complained about her "long hours," her need to commute between her family in Portland and her job in Seattle, and about being "stressed at work" and having "frequent panic attacks." LIN0395; LIN1179. Plaintiff echoed these same concerns in her initial application to Lincoln for LTD benefits on May 2, 2019. *See*, *e.g.*, LIN1767 ("My family lives 100 miles away. . . . I have not had a totally unplugged vacation in many years. . . . I am unable to handle the stress without having anxiety and panic attacks.").

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 4
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

**3.    Plaintiff shifted the basis of her disability claim to subjective physical complaints only after learning that the Group Policy limits benefits for psychological conditions.**

As self-reported to Dr. Parsons, Plaintiff's chief complaints remained anxiety and depression until June 5, 2019, when her symptoms abruptly changed to "severe fatigue" the same day that Lincoln advised her that her anxiety-based disability claim would be limited to 24 months by the Group Policy's Mental Illness limitation. LIN0397; *compare*, *e.g*., LIN1634; LIN0031. By July 9, 2019, Plaintiff's self-report of symptoms to Dr. Parsons expanded to include "chronic fatigue and painful joints." LIN397.

The same shift can be seen in the records of Plaintiff's other treating physicians. For example, when she saw Dr. Walker on May 16, 2019, Plaintiff's chief complaint was "anxiety" that "comes and goes." LIN1143. Later that same month, Plaintiff told Dr. Walker that she had been "studying 4–5 hours per day" for her real estate license exam, apparently unhindered by anxiety. LIN1147. But then, at her June 28, 2019 appointment with Dr. Walker, Plaintiff's chief complaint was no longer anxiety, but fatigue and low energy levels. LIN1156. And by August 16, 2019, Plaintiff also started telling Dr. Walker that her muscle pain was "just intense—all the time." LIN1111.

Similarly, on April 3, 2019, Plaintiff told Dr. Agosta that she had been "working on a laptop computer over the past couple weeks," resulting in a strained neck. LIN1135. Three days later, on April 6, 2019, Plaintiff told Dr. Agosta that her neck pain had "greatly diminished," and that overall "she has been feeling much better." LIN1137. But then on June 7, 2019, Plaintiff told Dr. Agosta, apparently for the first time, that she "[has] been experiencing increased fatigue . . . over the past couple of months." LIN1149.

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 5
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

4.      **Dr. Coffin changed his opinion of Plaintiff's capacity for work; Lincoln did not attempt to "pass off a false summary."**

The record is clear that Dr. Coffin initially opined that Plaintiff would be capable of returning to "light duty" work before he retroactively changed his statement, likely due to pressure from Plaintiff. *See*, *e.g.*, LIN0797. On page 18 of Plaintiff's Opposition, she contends that Lincoln attempted to "pass off a false summary." *Pl.'s Opp.* at 18. But the accusation makes no sense. Dr. Rosen sent his summary of the January 20, 2020 conversation to none other than Dr. Coffin. It is absurd to suggest that Dr. Rosen would send a "false summary" to the very person he was allegedly falsely summarizing. Plaintiff highlights her own complaint to regulators that Lincoln allegedly bullied her doctors and her emphatic demand Lincoln must "understand that I am disabled until I say I am not." LIN0809. But the regulators ultimately found no merit to such accusations, and Plaintiff's understanding of the applicable standard and burden of proof is clearly upside-down.

5.      **Evidence of Plaintiff's superior work performance throughout 2018 conflicts with her current "theory of the case."**

Plaintiff erroneously attacks Lincoln for pointing out that the record does not show any symptoms of deteriorating work performance leading up to her decision to leave work. *See*, *e.g.*, *Pl.'s Opp.* at 13. Plaintiff argues that the Court should ignore evidence of Plaintiff's superior work performance while on the job because such evidence substantially pre-dates her disability. However, by her own "theory of the case," the actual onset of Plaintiff's disabling symptoms—now alleged to be extreme fatigue and cognitive impairment—came on the heels of her January 2018 "flu-like" infection, purportedly related to an EBV exposure. *See*, *e.g.*, *Pl.'s Opp.* at 2. If that timeline is accepted, then Mr. Jotwani's and Ms. Simonini's praise of Plaintiff's hard work and intellect, in March and August of 2018, came well after the purported onset of the physical

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 6
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

and cognitive symptoms that Plaintiff now retroactively alleges. *See* LIN0464. Indeed, according to Plaintiff, "[e]ven though I was sick, I ended 2018 number one in enterprise." LIN0653; *see also*, *e.g.*, LIN1767 ("I was number 1 on my team in 2018."). If Plaintiff's alleged symptoms of debilitating fatigue and cognitive dysfunction were truly occupationally-impairing, then one would expect to see evidence of deteriorating work performance throughout 2018 and leading up to Plaintiff's last day of work. Plaintiff's own past statements about working 15-hour days and being a top performer are contrary to her current narrative of chronic fatigue and cognitive impairment.

> **6.    Plaintiff's passage of her real estate brokers exam and her pursuit of alternative careers conflict with her current "theory of the case."**

Plaintiff asks the Court to overlook ample record evidence that, while purportedly disabled, she embarked on a new career as a real estate broker. *See Pl.'s Opp.* at 15. But such evidence conclusively shows that Plaintiff was capable of exactly the kind of cognitively-demanding work that she now claims she was then unable to perform. While Plaintiff was receiving LTD benefits, Dr. Walker's notes show that she was "studying 4–5 hours per day" for her real estate licensing exam. LIN1147. Dr. Agosta's notes similarly show Plaintiff was consistently able to work on a laptop computer from week to week. *See* LIN1135. Plaintiff ultimately passed her real estate licensing exam and became "affiliated with" Tiffany Real Property. *See* LIN2103; LIN2154. Thus, the record confirms that Plaintiff was functionally capable of far more than she now claims. *Compare*, *e.g.*, LIN0654 ("Currently, I cannot even do more than an hour of computer work."). Proof that Plaintiff was studying up to five hours a day shows that she was capable of at least that much, but it does not, contrary to her argument, prove that she was limited by any medical condition from doing more. In addition, the real estate broker affiliation, along with other evidence, such as Plaintiff's involvement in 360 Tour Designs and Venus Rising Insights, *see*, *e.g.*, LIN0440, strongly indicates that Plaintiff's real motivation for going on disability was

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 7
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

dissatisfaction with her prior job, the stress of its long hours, and the amount of time she had to spend away from her family.

> **7.    Plaintiff's extensive post-disability travel conflicts with her self-reported symptoms and the representations she made to Lincoln.**

Plaintiff falsely asserts, without citation, that she did not travel after the start of her alleged disability. *See Pl.'s Opp.* at 14.  The record is clear that Plaintiff was regularly traveling from her home in Portland to destinations as far away as New Zealand and New York throughout 2018— well after the January 2018 onset of the "flu-like" illness that she now alleges triggered her disability. *See*, *e.g*., LIN0546 (describing Plaintiff's "excessive travel" to New Zealand, New York, and San Francisco during the month of December 2018).  But more to the point, even if the onset of Plaintiff's disability is assumed not to have been until February 2019, when she stopped work, or even May 2019, when she first submitted her written application for LTD benefits to Lincoln, it is clear that Plaintiff thereafter continued traveling extensively.  On November 1, 2019, for example, Plaintiff told Dr. Coffin that she had just returned from Ohio, where she attended a wedding.  LIN0719.  Then, two weeks later, on November 16, 2019, Dr. Agosta wrote in his progress notes:

> [Plaintiff] reports that she has been traveling all over the country recently and has been feeling "extremely stiff."  [Plaintiff] reports that she will be leaving for New Zealand for Thanksgiving and then New York for the next 3 weeks . . .

LIN1117.  On December 2, 2019, likely between those New Zealand and New York trips, Plaintiff certified in writing to Lincoln that her extreme fatigue requires her to spend "15–17" hours a day in bed, LIN0881, and that she "cannot shower" because she lacks the necessary stamina to stand. LIN0882.  Five days after that, investigators observed Plaintiff attending her son's basketball game, eating out with a group of friends, and shopping.  *See*, *e.g*., LIN0859–60.  The next day, she

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 8
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

got a manicure and pedicure. *See*, *e.g*., LIN0860. Then, sometime in the spring of 2020, following her holiday trip to New York, Plaintiff moved with her family to Hawaii.[1]

**B.    The Medical Evidence Simply Does Not Support Functional Impairment Beyond March 24, 2020.**

It bears repeating that Plaintiff's burden here is to prove by a preponderance of the evidence in the record that her medical condition precluded her, as of March 24, 2020, and beyond, from performing the duties of her own occupation, as it exists in the national economy. *See*, *e.g*., LIN2291; LIN2295; *see also*, *e.g*., *Anderson v. Life Ins. Co. of N. America*, No. 16-15522, 2017 WL 4326384 at *1 (9th Cir. Sept. 18, 2017); *Wilkins v. Unum Life Ins. Co.*, No. C 10-02940 JSW, 2013 WL 5340512 at *5 (N.D. Cal. Sept. 24, 2013). Plaintiff's mere self-assessment of her own limitations—even if then written down by one of her doctors—is not sufficient to establish such proof. *Jordan*, 370 F.3d at 878 ("With a condition such as fibromyalgia, where the applicant's physicians depend entirely on the patient's pain reports for their diagnoses, their *ipse dixit* cannot be unchallengeable."); *Seleine v. Flour LTD Plan*, 598 F. Supp. 2d 1090, 1101–02 (C.D. Cal. 2009), *aff'd*, 409 Fed. App'x 99 (2010) ("The records of Seleine's attending physicians primarily document her subjective complaints. Seleine's attempts to elevate these notes of a patient's self-report to the status of 'findings' is inappropriate."). Here, the overwhelming weight of repeatedly normal and unremarkable physical and mental status examinations, normal blood and laboratory

---

[1] At no point did Lincoln assert that Plaintiff was "at Carmel Beach on March 25, 2019." *See Pl.'s Opp.* at 14; *compare Def.'s Br.* at 9. Rather, Lincoln asserted, truthfully, that Plaintiff posted a smiling picture of herself there on the same day that she visited Ms. Paris complaining of work-related anxiety (again, not chronic fatigue or cognitive dysfunction). *See*, *e.g*., LIN0453; LIN0975. It should go without saying that such behavior is at least inconsistent with the degree of profound functional impairment that Plaintiff now asserts.

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 9
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

tests, and even surveillance video, show that Plaintiff had no significant functional impairments leading up to March 24, 2020, assuming she ever did.[2]

**1.    Plaintiff's own "brief summary" of the evidence confirms that her claim is based on little more than her own subjective self-assessment.**

On pages 4–6 of Plaintiff's Reply, she provides a "brief summary" of her self-reported symptoms, as "documented" by her treating practitioners. *See Pl.'s Opp.* at 4–6. What she has listed are not medical observations or other real evidence of functional limitation, but merely a collection of statements that Plaintiff made to her own doctors. As is well established, a claimant's subjective self-reports are insufficient to establish disability, particularly where, as here, such reports conflict with substantial objective evidence in the record. *See*, *e.g.*, *Gray v. UNUM Life Ins. Co.*, No. 2:21-cv-04198-RGK-KS, 2022 U.S. Dist. LEXIS 129121 at *13 (C.D. Cal. July 11, 2022) ("But a [claimant's] subjective interpretation of [her] symptoms cannot, standing alone, establish disability."); *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1191 (C.D. Cal. 2008) ("Plaintiff claims that his subjective complaints should be accepted at face value. The rule is to the contrary."); *Bratton v. Metropolitan Life Ins. Co.*, 439 F. Supp. 2d 1039, 1052 (C.D. Cal. 2006) ("A finding of disability based on mere subjective complaints would open the Plan up to malingering and would greatly hamper [the administrator] from exercising its fiduciary role of scrutinizing requests for benefits.").

---

[2] For the Court's convenience, Lincoln has attached as *Exhibit A* to its Opening Brief a summary the medical evidence in the file that pertains to the period leading up to and shortly after the March 24, 2020 termination of benefits. *See Def.'s Br.* at Exh. A (ECF Doc. #35-1). Please note that two of the post-termination entries on Page 6 of the summary—one concerning certain blood testing and the other a telemedicine appointment with Dr. Michael Feldman—were inadvertently misdated "2019" on the summary, when both events actually occurred in June 2020. *See Exhibit A* at 6; LIN0516; LIN0498.

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 10
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Here, even the select medical records that Plaintiff cites in her summary contain information contrary to the chronic fatigue and cognitive dysfunction symptoms that became the focus of her claim after she learned that the Group Policy limited benefits for psychological conditions to 24-months. For instance, according to Dr. Parsons's February 6, 2019 progress notes, Plaintiff was working "often 12 hours" a day because it was necessary to service her East Coast clients. LIN0395. Between the pending elimination of her current position, other changes at work, and only being able to see her family on weekends, Plaintiff reported that she was "considering taking time off work." LIN0395. Similarly, Plaintiff's summary wholly ignores other contemporaneous medical records—including objective examination and test results—which are inconsistent with her claimed limitations. From March 2019 onward, for example, Dr. Walker consistently recorded that Plaintiff appeared "[h]ealthy and cooperative," that she had "full range of motion for all extremities," and that her attention, concentration, and thought content all remained "within normal limits." *See*, *e.g.*, LIN1131 (March 14, 2019); LIN1140 (April 18, 2019); LIN1144–45 (May 16, 2019); LIN1147 (May 23, 2019).

In April 2019, Plaintiff told Dr. Agosta that she had been "working on a laptop computer over the past couple of weeks," and he observed that Plaintiff's speech and mentation appeared "clear and coherent." LIN1135. In May 2019, Plaintiff told Dr. Walker that she was studying for and took her real estate licensing exam. LIN1147.

In a medical assessment that Dr. Bzowy submitted to Lincoln that same month, Plaintiff's primary care physician certified that Plaintiff was capable of "light" work, meaning Plaintiff had the physical capacity "on a full-time basis" to occasionally carry up to 20 pounds and frequently stand and walk during a typical work day. LIN1733. At the time, Dr. Bzowy opined that Plaintiff

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 11
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

should only avoid "high stress" work on account of anxiety, not that she was incapable of working full time due to any alleged fatigue or cognitive impairment.

Even at that, nearly all of the collected statements in Plaintiff's "brief summary" also substantially predate Lincoln's termination of benefits on March 24, 2020, and relate instead to the period when Lincoln was paying benefits. *See Pl.'s Opp.* at 4–6. Thus, such statements cannot satisfy Plaintiff's burden here to prove an ongoing disability through and beyond March 24, 2020.

Plaintiff attributes the three month gap in her medical records after March 2020 to Covid, rather than to her decision to move to Hawaii and change doctors. *See Pl. Opp.* at 6. Dr. Rogoff's (barely legible) July 21, 2020 opinion, expressed on the employer's medical accommodation request form, is not supported by clinical observations or test results in his own clinical notes, but solely by Plaintiff's own self-report. *Compare* LIN0648 *with*, *e.g.*, LIN0511; LIN0507. The physical examinations Dr. Rogoff, recorded at Plaintiff's first visits with him on June 2 and July 7, 2020, show Plaintiff was not in acute distress, walked with a normal gait, was alert and oriented, and retained "5/5" muscle strength. *See* LIN0511; LIN0507. Such findings are contrary to the debilitating levels of fatigue that Plaintiff now claims to be the basis for her alleged disability. None of Dr. Rogoff's subsequent office notes appear to record any physical examination, or other diagnostic impressions, beyond the Plaintiff's own self-report of her purported medical history. *See*, *e.g.*, LIN0505; LIN0504.

      2.      **Even if Plaintiff's alleged CFS diagnosis is accepted, she has not met her burden to prove that any functional limitations (whether from that condition or some other) actually preclude her from work.**

Plaintiff contends that her self-reported symptoms "align precisely" with those generally seen in CFS cases, as described by the United States Centers for Disease Control ("CDC") on its website. *See Pl.'s Opp.* at 7, 32. But contrary to Plaintiff's argument that the record contains

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 12
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

"exactly the evidence required to diagnosis CFS," *Pl.'s Opp.* at 22, the medical records submitted by Plaintiff's treating physicians actually ***do not show*** the clinical observations and test results that would be necessary to ***exclude*** other potential etiologies in order to make a proper CFS diagnosis. According to the same CDC website that Plaintiff relies upon, symptoms of CFS "may appear similar to many other illnesses" and there is "no test to confirm" such a diagnosis.[3]    Therefore, "Doctors might refer patients to see a specialist, like a neurologist, rheumatologist, or a sleep specialist, to check for other conditions that can cause similar symptoms."[4]

As the Ninth Circuit has also recognized, based on such guidelines, a diagnosis of CFS must be made by the exclusion of other conditions.  *See*, *e.g.*, *Salomaa v. Honda LTD Plan*, 642 F.3d 666, 677–78 (9th Cir. 2011).  Here, as noted by Dr. Rosen, following his thorough review of the medical evidence in the file, Plaintiff "has not had adequate evaluation to rule out rheumatologic causes for her symptoms with no standard laboratory testing or radiography for those diseases and no referral to a rheumatologist."  LIN0703.  "In addition," as Dr. Rosen explained, a CFS diagnosis "is difficult to invoke in the face of depression and anxiety disorder."  LIN0703.

Rather than reflecting formal diagnoses of CFS, many of the treating practitioners' records in the file indicate that Plaintiff self-diagnosed by telling her doctors what she felt she had—rather than them diagnosing her.  *Compare*, *e.g.*, LIN0397 (Plaintiff told Dr. Parsons that "[s]he feels her disability is as much physical as psychiatric" and that "[s]he has been diagnosed with chronic lyme disease"); LIN1163 ("[Plaintiff] attributes these flare-ups to [her] recent diagnosis with lyme.").

---

[3] https://www.cdc.gov/me-cfs/symptoms-diagnosis/index.html (last visited November 30, 2022).

[4] https://www.cdc.gov/me-cfs/symptoms-diagnosis/diagnosis.html (last visited November 30, 2022).

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 13
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Building on the medically-unsupported belief that she actually has CFS, Plaintiff next falsely accuses Lincoln of contradicting Ninth Circuit case law and medical consensus by requiring her to prove her CFS diagnosis by "objective medical signs." *Pl.'s Opp.* at 11; *see also*, *e.g.*, *id.* at 20–22. Lincoln did nothing of the sort. Indeed, Dr. Rosen, Lincoln's medical consultant, despite noting the absence of clinical evidence which might allow a proper CFS diagnosis of exclusion, nevertheless assumed that Plaintiff, in fact, has the condition. What Dr. Rosen ultimately concluded was that even if CFS was "assumed present," the medical evidence in the file simply did not support "any associated impairment, need for job accommodation, or inability to work." LIN0313.

> As noted above, repeated examinations conducted by multiple physicians have failed to reveal any significant abnormal findings to support the presence of physical functional impairment. As also noted above, the [Plaintiff's] reported increase in symptoms did not correlate with a measurable difference in her subjective findings (*e.g.*, tenderness to palpation) or the development of new abnormal findings on exam.

LIN317–18. Similarly, Lincoln's final denial letter did not condition benefits on proof of some hypothetical (but non-existent) objective indicator for CFS. As the portion of the denial letter quoted by Plaintiff makes clear, Lincoln determined that, regardless of her many purported diagnoses, Plaintiff's evidence failed to prove that any of the claimed "***restrictions and limitations***" were actually supported by "corroborating medical evidence such as physical examinations, mental status examinations, valid neurocognitive testing, diagnostic test results, etc." *See Pl.'s Opp.* at 22 (quoting LIN0098) (emphasis added).

In the *Salomaa* case, the court recited substantial record evidence of functional limitation. For example, one of the claimant's treating physicians in that case was "shocked" by the claimant's dramatic weight loss (from being too fatigued to eat) and noted that the claimant was "unable to

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 14
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

sit up on the examining table without assistance" and appeared "cachectic and weak." *Id.,* 642 F.3d at 670. As the court explained, "cachectic" refers to a condition of severe malnutrition and emaciation. *Id.* at 670. When the claimant could no longer afford his house, and had to move from California to Arkansas, the record showed that he "could not help with the move because he was too exhausted" and because he was not "strong enough to manage flying," he had to "lay in the backseat of a car while his brother-in-law drove." *Id.* at 671. One of the claimant's treating doctors described him as "one of the most disabled individuals I have seen in over 15 years of practice." *Id.* at 672.[5]

By contrast, Plaintiff's medical records here, throughout the period for which she claims benefits, show no dramatic weight loss, full range of motion, retention of full muscle strength, normal gait, and normal speech, attention, and concentration. *See, e.g.*, LIN0692; LIN0720; LIN1117; LIN0557; LIN0560; LIN0565; LIN0573; *see also, e.g.*, *Def.'s Br.* at *Exhibit A* (ECF Doc. #35-1). Indeed, Dr. Walker repeated noted Plaintiff's "healthy" appearance. *See, e.g.*, LIN1112; LIN0557

Moreover, the record here is replete with other, non-medical, evidence that also conflicts with Plaintiff's self-reported assessment of her alleged functional limitations. After claiming

---

[5] In light of such record evidence, *Salomaa* implicitly supports the same distinction that the First Circuit expressly adopted in *Boardman v. Prudential Ins. Co.*, 337 F.3d 9 (1st Cir. 2003), and has followed since: "While the diagnosis of [CFS] and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis." <u>Id.</u> at 16–17 & n.5; *see also, e.g.*, *Takata v. Hartford Compr. Employee Benefit Serv. Co.,* No. CV-11-5068-RMP, 2012 WL 4903587 at *11 (E.D. Wash. Oct. 16, 2012), *aff'd*, 572 Fed. App'x 497 (9th Cir. 2014) ("Thus, Hartford did not base its decision on the lack of objective evidence supporting the claimed diagnoses of fibromyalgia and chronic fatigue syndrome, as prohibited by *Salomaa*, but rather on the lack of objective evidence supporting the claimed extent of impairment, as approved of in *Boardman*, 337 F.3d [at] 9, and *Pralutsky* [*v. Metropolitan Life Ins. Co.*], 435 F.3d 833 [(8th Cir. 2006)].").

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 15
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

disability, Plaintiff was nevertheless able to spend weeks working on her laptop computer (and continued posting to social media). *See*, *e.g*., LIN1135; LIN0435. She studied for, took, and passed a real estate brokerage licensing exam and then became "affiliated" with a real estate brokerage firm. *See*, *e.g*., LIN1147; LIN2103; LIN2154. She regularly exercised, went for long walks, and practiced yoga. *See*, *e.g*., LIN0554 ("[Plaintiff] reports [her] energy return and has been able to do longer walks, as well as continuing [her] yoga in the morning."); LIN1124 ("Exercise: increased, walking/yoga"). Plaintiff traveled nationally and internationally for weddings, for holidays, and to visit friends. *See*, *e.g*., LIN1117. Plaintiff attended public events, like her son's basketball game, and she went out to restaurants, went shopping, and went to the salon for manicures and pedicures. *See*, *e.g*., LIN0859–LIN0860; LIN0863–LIN0872. Plaintiff moved to Hawaii, not to seek less-expensive lodging, but to purse a new career and a less-stressful lifestyle.

Plaintiff contends that Lincoln's surveillance shows that Plaintiff was "home bound" and "only minimally functional." *Pl.'s Opp.* at 8; *see also*, *e.g*., *id.* at 16–17 and 29–32. She also argues that such evidence "precisely aligns" with the symptoms she self-reported to her physicians. *Id.* at 32. It does not. In making such arguments, it is the Plaintiff who ignores what the investigators actually observed. Plaintiff's activities on the days that she was video recorded show conclusively that she had far greater functionality than she then claimed. *Compare*, *e.g*., LIN0859–60; LIN0863–72 (especially video surveillance live link found on LIN0872), *with* LIN0881–82 (Plaintiff's representations to Lincoln about needing to spend "15-17" hours a day in bed and being unable to stand long enough to take a shower).

Plaintiff instead wants the Court to consider only the particular days that Lincoln's investigators did not observe her. However, the investigators' mere failure to observe Plaintiff on

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 16
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

certain days does not establish—as is Plaintiff's burden—that she was truly bed-ridden or otherwise functionally unable to leave home. In her Opposition, for example, Plaintiff simply asserts that she "did not leave her home" on July 11, 12, and 13, 2019. *Pl.'s Opp.* at 29–30. But the record actually shows that Plaintiff did leave her home on July 12, 2019, for an appointment with Dr. Walker. *See* LIN1159. On that day, and probably others, Lincoln's investigators just missed her. At that visit with Dr. Walker, Plaintiff reported eating out "in restaurants" while on some other recent "trip." LIN1159. Dr. Walker described Plaintiff's appearance at the time as "[h]ealthy," and, on physical examination, Dr. Walker found that Plaintiff's range of motion was "intact" and that her memory, mood, affect, posture, attention, and concentration were all "within normal limits." LIN1159. Dr. Walker's clinical observations do not align with Plaintiff's claimed functional impairments.

**3.      Without validity measures to assure Plaintiff's best efforts, Dr. Ludolph's neuropsychological evaluation is not reliable medical evidence of cognitive impairment.**

On pages 24–29 of her Opposition, Plaintiff argues that Dr. Ludolph's neuropsychological evaluation contains objective evidence of cognitive limitations, and Plaintiff dismisses Lincoln's test-validity concerns as if they were merely questions of practitioner preference. *See*, *e.g.*, *Pl.'s Opp.* at 25 (characterizing Lincoln as rejecting Dr. Ludolph's report because it did not contain "Dr. Hertza's preferred markers of validity"). The standalone and embedded validity tests mentioned in Dr. Hertza's April 5, 2021 addendum report are not merely *his* preferred tests. *See* LIN0202. Rather, Lincoln specifically asked Dr. Hertza to identify what tests "would be commonly considered reasonable validity measures" to be used in such testing. He responded that there are a "variety" of such tests, listed three that are widely-accepted, and observed that "typically at least

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 17
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

2 should be used." LIN0202. Lincoln's concern was not that Dr. Ludolph used validity tests that Dr. Hertza personally disfavored; rather Lincoln's concern was that Dr. Ludolph used none at all.

As the Courts have consistently recognized, objective validity measures are essential in the context of functional testing because without such measures, there can be no assurance that a disability claimant has put forth his or her best effort. *See*, *e.g*., *Gorbacheva v. Abbott Labs. Ext. Disability Plan,* 309 F. Supp. 3d 756, 771 (N.D. Cal. 2018), *aff'd*, 794 F. App'x 590 (9th Cir. 2019). Plaintiff repeatedly likens her case to that of the claimant in *Salomaa*, 642 F.3d at 666, but in *Salomaa*, the court specifically noted that a neuropsychological evaluation performed of the claimant in that case "included a standard test for malingering, which showed 'a valid profile and that he was putting forth adequate effort.'" *Id.* at 672. Accordingly, the court found that assessment's conclusion to be reliable evidence that the claimant "performed in the impaired range," confirming one of the "hallmark cognitive symptoms" of CFS. *Id.*

Dr. Ludolph's evaluation, by contrast, contains no objective validity measures, and instead, Dr. Ludolph inexplicably relied solely on her own subjective assessment of Plaintiff's motivation during the examination. *See*, *e.g*., LIN0218 (asserting "the way [Plaintiff] presented during the evaluation and the way she completed the tasks demonstrate that she understood the tasks and completed them to the best of her ability").

Thus, Plaintiff's case is actually more akin to that of the claimant in *Hulbert v. Hartford Life & Accident Ins. Co.*, No. 20-cv-03687-BLF, 2021 WL 3291888 at *10 (N.D. Cal. August 2, 2021), where the treating neuropsychologist, in evaluating the claimant's cognitive function, neglected to include any objective validity tests and opted to rely instead on his "professional judgment" to assess the claimant's effort. *Id.* at *10. The *Hulbert* court found that choice to be "especially problematic" and properly discounted the test results as unreliable. *Id.*

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 18
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Similarly, Dr. Ludolph's choice to omit objective validity measures is "especially problematic" here in light of the overwhelming clinical evidence of normal cognitive function found throughout Plaintiff's other medical records. According to MSEs conducted by Plaintiff's psychotherapist in September and October of 2019, for example, Plaintiff's "thought process" and "thought content" were consistently observed to be within normal limits. LIN0964; LIN0962. Dr. Walker, Plaintiff's long-standing naturopath, also repeatedly found, on examination, that Plaintiff's "memory," "mood and affect," "attention," "concentration," and "thought content" were all within normal limits. LIN0557; LIN0560. Examinations by Drs. Agosta and Means likewise show that Plaintiff consistently presented at her chiropractor appointments as "[a]lert" and "cooperative" and that her "[s]peech and mentation [were] clear and coherent." *See*, *e.g*., LIN0550; LIN0552; LIN1117; LIN0554; LIN0565; LIN0573.

Plaintiff falsely accuses Lincoln of asking the Court to view the chiropractors' clinical observations in isolation and give them greater weight than all of the other medical evidence in the record. *See Pl.'s Opp.* at 34. As should be clear, the chiropractors' treatment notes simply confirm the clinical observations of Plaintiff's many other treating practitioners—across many different specialties—none of whom noted any indicia of cognitive dysfunction, apart from Plaintiff's own self-report. There is no indication in Dr. Ludolph's evaluation that she took any of this contrary medical evidence into account, relying instead solely on Plaintiff's self-report to understand her medical history. *See* LIN0400–LIN0401.

Plaintiff attacks Lincoln for not conducting its own independent neuropsychological examination. *See Pl.'s Opp.* at 28, n.17. Apart from the fact that it is the Plaintiff's burden to prove her claim and not Lincoln's burden to disprove it, the Court cannot draw the suggested inference that Lincoln "feared" what such an examination might show because Lincoln did, in fact,

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 19
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

try to schedule an independent examination.  Lincoln was simply thwarted in its effort by the lack of willing physicians on the island of Kauai, where Plaintiff was then living, and Hawaii's Covid-era inter-island travel restrictions.  *See*, *e.g*., LIN0133.

## C.     Plaintiff Had Access to Everything She Submitted to the Social Security Administration, and Could Have Also Submitted Such Information to Lincoln at the Same Time.

Plaintiff contends that the Social Security Administration's decision to award benefits confirms the strength of her separate claim for LTD benefits under the Group Policy.  *See Pl.'s Opp.* at 9, 33.  To avoid responsibility for her own failure to timely furnish evidence that supports her claim, Plaintiff contends that she was barred from providing Lincoln with any Social Security claim materials because she had no access to them while her Social Security claim was pending.  *See Pl.'s Opp*. at 19.  Plaintiff is wrong on both counts.

As is well recognized, Social Security determinations are made on the basis of criteria that differ substantially from those that govern group disability policies and on the basis of information the claimant provides directly to the Social Security Administration ("SSA").  Particularly where the medical evidence a claimant submits to an ERISA administrator and the SSA differ, "Social Security disability awards do not bind plan administrators."  *Salomaa*, 642 F.3d at 679; *see also*, *e.g*., *Kludka v. Qwest Disability Plan*, No. CV-08-01806-PHX-DGC, 2012 WL 1681983 at *9–10 (D. Ariz. May 14, 2012), *aff'd*, 581 Fed. App'x 633 (9th Cir. 2014) (affirming an administrator's determination that relied, in part, on substantial medical evidence that the SSA did not consider); *Dimery v. Reliance Standard Life Ins. Co*., No. C 10-00481 JSW, 2012 WL 1067409 at * 15 (N.D. Cal. March 28, 2012), *aff'd*, 597 Fed. App'x 408 (9th Cir. 2015) (affirming administrator's determination where the SSA did not have access to certain medical consultant reports and surveillance video that were in the administrator's possession).

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 20
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Here, at the time Lincoln terminated LTD benefits, Mr. Youngblood specifically asked Plaintiff to include, with any appeal, copies of all office treatment notes, diagnostic and laboratory testing results, and "any additional information that you feel will support your claim." LIN0687. Following Plaintiff's appeal, Plaintiff's counsel repeatedly asked for more time to submit additional materials, and Lincoln granted multiple extensions. *See*, *e.g.*, LIN0486; LIN0413. While Plaintiff thereafter submitted Dr. Ludolph's report and some additional records from Dr. Parsons, *see* LIN0393, Plaintiff never submitted to Lincoln copies of the claim materials or medical evidence that she submitted to the SSA in connection with her Social Security claim. Such SSA claim materials, originating with Plaintiff and her treating practitioners, were at all times within Plaintiff's control, and she could have also submitted them concurrently to Lincoln.

The regulatory changes that Plaintiff discusses in her Opposition do not have anything to do with her ability to provide Lincoln with copies of her Social Security submissions. *See Pl.'s Opp.* at 19–20. Rather, the website posts that Plaintiff relies upon only concern the expansion of a program that allows a claimant's "appointed representatives" to "access their client's electronic folders" on the government's system.[6] While such folders may contain some information generated by the SSA, the bulk of any applicant's claim materials originally come from the claimant him- or herself.

Even if Dr. Parsons' February 13, 2020 progress note actually refers to something prepared by the "SSA's independent expert," as Plaintiff now alleges, that progress note confirms that Plaintiff's own doctors were involved in Plaintiff's application for Social Security benefits months before Plaintiff commenced her LTD appeal, yet Plaintiff refused to submit relevant Social

---

[6] https://secure.ssa.gov/apps10/reference.nsf/links/02192021111417AM (last visited November 30, 2022).

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 21
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Security materials to Lincoln. Other correspondence in the file indicates that prior to the SSA's ultimate approval of benefits, SSA initially denied Plaintiff's claim. *See*, *e.g*., LIN496; LIN0628. It is likely for this reason, that despite coordination with her own doctors regarding Social Security, Plaintiff chose to keep Lincoln in the dark about the status of her application prior to the SSA's favorable reversal of its prior decision. Alternatively, perhaps Plaintiff ultimately obtained Social Security benefits only on the basis of psychological conditions, such as those which Plaintiff abandoned here because the Group Policy limits benefits for such conditions.

**D.     Plaintiff's Criticisms of Lincoln's Medical Consultants Ignore the Actual Content of their Reports and Falsely Allege Errors that They Did Not Make.**

In contradictory fashion, Plaintiff erroneously asserts that Lincoln's medical consultants support Plaintiff's claim, and then falsely accuses Lincoln of relying on "flawed opinions" from those same consultants. *See* Pl.'s Opp. at 35–39. Neither contention is true.

With respect to Dr. Rosen, Plaintiff simply repeats the falsehood that he failed to use the "CDC-endorsed consensus criteria" for diagnosing CFS. *Pl.'s Opp.* at 37. As discussed above, Dr. Rosen assumed for purposes of his analysis that Plaintiff had CFS—regardless of the failure of Plaintiff's own doctors to properly exclude other potential conditions that might account for Plaintiff's self-reported symptoms—but he nevertheless found insufficient evidence to support any restriction from light duty work. *See*, *e.g*., LIN0702–03. Contrary to Plaintiff's assertion, Dr. Rosen did not opine that Plaintiff "cannot engage in frequent air travel." *Compare Pl.'s Opp.* at 37 *with* LIN0702–07. Rather, Dr. Rosen noted only that Dr. Coffin, one of Plaintiff's treating naturopaths, felt that Plaintiff became more symptomatic when traveling. *See* LIN0704. Despite Dr. Coffin's advocacy, there is ample evidence of Plaintiff's capacity for national and international air travel in the record, *see*, *e.g*., LIN1117, and as determined by Ms. Hall's vocational review, the

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 22
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Plaintiff's "occupation is typically performed as Sedentary in the National Economy" per the Dictionary of Occupational Titles ("DOT").  LIN0709.

Plaintiff's criticisms of Dr. Cumberbatch are likewise confused and contradictory.  On the one hand, Plaintiff says Dr. Cumberbatch acknowledged Plaintiff's impaired attention and diminished concentration, *see Pl.'s Opp.* at 36, when in reality, Dr. Cumberbatch simply acknowledged that Dr. Parsons, Plaintiff's psychologist, made such assertions in a written response he sent to her.  *See* LIN0823.  Two pages later, Plaintiff contends that Dr. Cumberbatch ignored such evidence as that offered by Dr. Parsons.  *See Pl.'s Opp.* at 38.  But as Dr. Cumberbatch explained in her nuanced report, such evidence, when viewed in light of the whole record, shows that Plaintiff "may not be as impaired by depression and/or anxiety as she is claiming, and [Dr. Parsons] considers her to be."  LIN0822.  Dr. Cumberbatch did not say that Dr. Parsons should have recommended "electroconvulsive shock therapy," rather, Dr. Cumberbatch explained that Plaintiff's level of care indicated a far lower level of psychological impairment, if any, than what Plaintiff was self-reporting.  At the time, Plaintiff was only attending psychotherapy sessions monthly, *see*, *e.g*., LIN0822, and Dr. Parsons had not recommended any increased medical interventions, not even "an intensive outpatient or partial hospitalization program."  LIN0823.

In his initial peer review report, dated December 30, 2020, and his two addendum reports, dated February 21 and April 5, 2021, Dr. Hertza evaluated Plaintiff's medical evidence from a neuropsychology perspective, confirmed that Dr. Ludolph failed to employ any recognized measures of validity during her evaluations, and repeatedly found that the record "does not support any diagnoses causing functional impairment" for the period under review.  *See*, *e.g*., LIN0226; LIN0268; and LIN0202.  Plaintiff argues that Dr. Hertza admitted that MSEs "capture only a moment in the office," *see Pl.'s Opp.* at 36 (quoting LIN0180), but Plaintiff does not acknowledge

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 23
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

that the many MSEs found in the record, performed by many different doctors, captured Plaintiff's mental status on many different dates, providing a balanced and more complete picture than any single exam on a single date. Plaintiff also failed to include the balance of Dr. Hertza's statement that a patient's presentation at the time of an MSE "should match the [patient's] complaints." LIN0180. Here, as Dr. Hertza pointed out, Plaintiff's presentation, time and again, simply did not match her self-reported symptoms and impairments. LIN0180.

Finally, Plaintiff mischaracterizes the substance of Dr. Trangle's exhaustive report with respect to EBV. *See Pl.'s Opp.* at 39. Dr. Trangle did not say that EBV infections have no medical significance or somehow contradict prevailing medical consensus. *See* LIN0313 (discussing a theorized relationship between EBV and CFS). Rather, he said that Plaintiff's possible EBV exposure does not establish functional limitations in her case, given the great number of normal test results and unremarkable physical examinations in the record: "An increased IgG VCA EBV titer indicates past exposure to EBV but does not indicate acute disease or explain [Plaintiff's self-reported] chronic fatigue state." LIN0314.

## III.    CONCLUSION

For the foregoing reasons, and those contained in Lincoln's Opening Brief, the Court should affirm Lincoln's determination, grant judgment in favor of Lincoln in this case, and dismiss Plaintiff's claims.

///

///

///

///

///

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 24
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Respectfully submitted this 6th day of December, 2022.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

By: */s/ Russell S. Buhite*
    Russell S. Buhite, OSB #142529
    1201 Third Avenue, Suite 5150
    Seattle, WA  98101
    Telephone:  (206) 693-7052
    Facsimile:  (206) 693-7058
    Email:  russell.buhite@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

By: */s/ Scott K. Pomeroy*
    Scott K. Pomeroy, MA Bar #665110
    (admitted *pro hac vice*)
    One Boston Place, Suite 3500
    Boston, MA 02108
    Telephone:  (207) 387-2961
    Facsimile:  (207) 387-2986
    Email:  scott.pomeroy@ogletree.com

*Attorneys for Defendant The Lincoln National
Life Insurance Company*

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 25
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

## CERTIFICATE OF LOCAL RULE COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 7,124 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

By: */s/ Russell S. Buhite*
    Russell S. Buhite, OSB #142529

By: */s/ Scott K. Pomeroy*
    Scott K. Pomeroy, MA Bar #665110
    (admitted *pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2022, I filed the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT with the Clerk of the Court via CM/ECF, who sent notification to the following:

Scott A. Sell, OSB #144297
THOMAS, COON, NEWTON & FROST
The Thomas Mann Building
820 SW 2nd Avenue, Suite 200
Portland, OR  97204
Telephone:  (503) 228-5222
Facsimile:  (503) 273-9175
Email:  ssell@tcnf.legal

*Attorneys for Plaintiff Tracey K. Turkoly*

SIGNED THIS 6th day of December, 2022 at Seattle, Washington.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

By: */s/ Cheryl L. Kelley*

Cheryl L. Kelley, Practice Assistant
cheryl.kelley@ogletree.com

DEFENDANT'S REPLY IN SUPPORT OF
ITS RULE 52 CROSS-MOTION FOR
JUDGMENT - 27
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058