Russell S. Buhite, OSB #142529
OGLETREE, DEAKINS, NASH, SMOAK
    & STEWART, P.C.
1201 Third Avenue, Suite 5150
Seattle, WA  98101
Telephone:   (206) 693-7052
Facsimile:    (206) 693-7058
Email:  russell.buhite@ogletree.com

Scott K. Pomeroy, MA Bar #665110
(admitted *pro hac vice*)
OGLETREE, DEAKINS, NASH, SMOAK
    & STEWART. P.C.
One Boston Place, Suite 3500
Boston, MA  02108
Telephone:   (207) 387-2961
Facsimile:    (207) 387-2986
Email:  scott.pomeroy@ogletree.com

Attorneys for Defendant THE LINCOLN NATIONAL
LIFE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| TRACEY K. TURKOLY,<br><br>             Plaintiff,<br><br>      v.<br><br>THE LINCOLN NATIONAL LIFE<br>INSURANCE COMPANY,<br><br>             Defendant. | Case No. 3:21-cv-01019-SI<br><br>**DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT** |

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

**TABLE OF CONTENTS**

**Page**

LOCAL RULE 7-1(a) CERTIFICATION.................................................................................. 1

I.    INTRODUCTION ......................................................................................................... 1

    A.    Relevant Policy Provision.................................................................................... 3

    B.    Standard of Review and Burden of Proof  ........................................................... 4

II.    LEGAL ARGUMENT.................................................................................................... 7

    A.    Lincoln Correctly Determined that Plaintiff Failed to Meet Her Burden to
        Prove an Ongoing Disability Beyond March 24, 2020........................................ 7

        1.    After learning that her job was being eliminated, Plaintiff stopped
            work and applied for disability claiming that she was unable to
            work due to anxiety and "panic attacks.".............................................. 7

        2.    Lincoln requested medical evidence from Plaintiff's treating
            physicians and initially approved LTD benefits on the basis of
            Plaintiff's claimed mental health condition and her expressed
            intention to return to work. .................................................................. 11

        3.    Following surveillance showing that Plaintiff was not as impaired
            as she claimed, and a review of updated medical evidence by two
            independent board-certified physicians, Lincoln determined that
            Plaintiff failed to meet her burden to prove entitlement to benefits
            beyond March 24, 2020. ....................................................................... 12

        4.    Plaintiff moved to Hawaii, apparently started a new career, and then
            appealed Lincoln's determination......................................................... 20

        5.    As part of its review on appeal, Lincoln consulted with two more
            independent board-certified physicians—both of whom found the
            medical evidence not to support Plaintiff's claimed functional
            impairments......................................................................................... 23

        6.    As part of its full and fair review, Lincoln gave Plaintiff an
            opportunity to respond to the new peer review reports, but she
            failed to submit any additional medical evidence that supported
            her claim.............................................................................................. 31

DEFENDANT'S AMENDED RESPONSE      OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
IN OPPOSITION TO PLAINTIFF'S             1201 Third Avenue, Suite 5150 | Seattle, WA 98101
MOTION FOR JUDGMENT AND             Phone: (206) 693-7052 | Fax: (206) 693-7058
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - i
Case No. 3:21-cv-01019-SI

7.     After considering all of the evidence in the record, including the evidence developed during the appeal, Lincoln upheld its prior determination that Plaintiff had failed to meet her burden to prove any continuing disability beyond March 24, 2020................................. 34

B.     The Administrative Record Overwhelmingly Supports Lincoln's Determination. ............................................................................... 35

C.     Plaintiff's Criticisms of Lincoln's Determination Improperly Reverse the Burden and are Otherwise Factually and Legally Erroneous. .......................... 45

1.     A claimant's subjective self-assessment of her own inability to work is insufficient proof to establish a claim, even absent the good reasons that exist here not to accept such self-assessments at face value. ....................................................................... 46

2.     The advocacy opinions offered by just four of Plaintiff's many treating doctors are not reliable because they simply accept Plaintiff's subjective self-reports at face value and make no attempt to reconcile Plaintiff's claims with other evidence in the record. ....................................................................... 47

3.     Plaintiff's criticisms of Lincoln's consulting physicians are misplaced, being based on a variety of fundamental misunderstandings about their proper role........................................... 53

4.     It was Plaintiff's burden to timely provide evidence related to her Social Security claim, if she wanted Lincoln to consider it........... 57

5.     Plaintiff confuses the duties of her specific job with those of her occupation as it exists in the national economy................................... 58

D.     Plaintiff Cannot Obtain "Any Occupation" Benefits in this Lawsuit. ............ 59

III.     CONCLUSION ...................................................................................... 60

CERTIFICATE OF LOCAL RULE COMPLIANCE ........................................................... 62

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - ii
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)................................... 6, 53

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)...................................................... 4

*Alvis v. AT&T Integrated Disability Serv. Ctr.*, 2009 WL 1026030 (E.D. Cal.
      Apr. 15, 2009), *aff'd*, 377 F. App'x 673 (9th Cir. 2010) .................................... 52

*Anderson v. Life Ins. Co. of N. America*, 2017 WL 4326384 (9th Cir. Sept. 18, 2017) ........... 58

*Beltman v. Sun Life Assur. Co.*, 2019 WL 1614584 (W.D. Mich. March 29, 2019) .......... 45, 51

*Biggar v. Prudential Ins. Co.*, 274 F. Supp. 3d 954 (N.D. Cal. 2017)....................................... 36

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)................................. 4, 5, 44, 52

*Boardman v. Prudential Ins. Co.*, 337 F.3d 9 (1st Cir. 2003).................................................... 55

*Bratton v. Metropolitan Life Ins. Co.*, 439 F. Supp. 2d 1039 (C.D. Cal. 2006) ....................... 47

*Brigham v. Sun Life of Canada*, 317 F.3d 72 (1st Cir. 2003) ................................................... 50

*Calcagno v. Unum Life Ins. Co.*, 2019 WL 2488716 (D. Or. Feb. 19, 2019)............................ 6

*Carder-Cowin v. Unum Life Ins. Co.*, 560 F. Supp. 2d 1006 (W.D. Wash. 2008)................... 59

*Carrier v. Aetna Life Ins. Co.*, 116 F. Supp. 3d 1067 (C.D. Cal. 2015) ................................. 60

*Conkright v. Frommert*, 559 U.S. 506 (2010)............................................................................. 5

*Cusson v. Liberty Life Assurance Co.*, 592 F.3d 215 (1st Cir. 2010) ...................................... 55

*Davis v. Unum Life Ins. Co.*, 444 F.3d 569 (7th Cir. 2006)...................................................... 54

*Delaney v. Prudential Ins. Co.*, 68 F. Supp. 3d 1214 (D. Or. 2014)........................................ 6

*Etkin v. Merk & Co., Inc.*, 2001 WL 1246368 (E.D. Pa. Oct. 30, 2001) .................................. 45

*Frost v. Metropolitan Life Ins. Co.*, 320 Fed. App'x 589 (9th Cir. 2009) ................................ 54

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - iii
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

*Gorbacheva v. Abbott Labs. Ext. Disability Plan*, 309 F. Supp. 3d 756
(N.D. Cal. 2018), *aff'd*, 794 F. App'x 590 (9th Cir. 2019)................................................. 40

*Gray v. UNUM Life Ins. Co.*, 2022 U.S. Dist. LEXIS 129121 (C.D. Cal.
July 11, 2022)........................................................................................................ 36, 47

*Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99 (2013)...................................... 4

*Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75 (2nd Cir. 2009) ........................................ 54

*Hocheiser v. Liberty Mutual Ins. Co.*, 2021 WL 672660 (D.N.J. Feb. 22, 2021) .................... 40

*Hornback v. New York Times Co. LTD Plan*, 2006 WL 496050 (N.D. Cal.
March 1, 2006)............................................................................................................ 58

*Hulbert v. Hartford Life & Accident Ins. Co.*, 2021 WL 3291888 (N.D. Cal.
August 2, 2021)...................................................................................................... 40, 41

*Johnson v. Continental Casualty Co.*, 222 F. Supp. 2d 776 (W.D.N.C. 2002) ........................ 48

*Johnson v. Commerce Bancshares, Inc.*, 276 F. Supp. 3d 926 (W.D. Mo. 2017).............. 40, 41

*Jordan v. Northrup Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869
(9th Cir. 2004)..................................................................................................... *passim*

*Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182 (C.D. Cal. 2008)........................... 36, 47

*Langlois v. Metropolitan Life Ins. Co.*, 2012 WL 1910020 (N.D. Cal.
May 24, 2012)............................................................................................................. 47

*Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406 (7th Cir. 2004) ..................................................... 47

*Maniatty v. UnumProvident Corp.*, 218 F. Supp. 2d 500 (S.D.N.Y. 2002), *aff'd*,
62 Fed. App'x 413 (2nd Cir. 2003), *cert. denied*, 540 U.S. 966 (2003)........................... 51

*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)........................................ 5

*Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993)................................................................... 54

*Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121 (1997) .................................................... 6

*Montanile v. Board of Trustees of Nat'l Elevator Indus. Health Benefit Plan*,
577 U.S. 136 (2016)..................................................................................................... 55

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - iv
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

*Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623 (9th Cir. 2009) .................... 56, 58

*Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290 (9th Cir. 2010) ............................... 5, 6, 46

*Ness v. Aetna Life Ins. Co.*, 257 F. Supp. 3d 1280 (M.D. Fla. 2017) ....................................... 40

*Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211
    (9th Cir. 2007)............................................................................................................... 5

*Ovist v. Unum Life Ins. Co.*, 14 F.4th 106 (1st Cir. 2021) ......................................................... 55

*Pannebecker v. Liberty Life Assurance Co.*, 542 F.3d 1213 (9th Cir. 2008)............................ 43

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ...................................................................... 4

*Prince v. Metropolitan Life Ins. Co.*, 2010 WL 988730 (D.N.H. Mar. 16, 2010) .................... 52

*Rose v. Hartford Fin. Servs. Grp., Inc.*, 268 F. App'x 444 (6th Cir. 2008)............................... 46

*Ross v. Prudential Ins. Co.*, 304 Fed. App'x 502 (9th Cir. 2008) ............................................ 35

*Salomaa v. Honda LTD Plan*, 642 F.3d 666 (9th Cir. 2011)................................. 53, 55, 56, 58

*Scherr v. Fleetboston Fin. Corp. Group LTD Plan*, 2008 WL 11438215 (C.D. Cal.
    Feb. 8, 2008), *aff'd*, 331 Fed. App'x 447 (9th Cir. 2009).................................................... 48

*Seleine v. Fluor Corp. LTD Plan*, 598 F. Supp. 2d 1090 (C.D. Cal. 2009), *aff'd*,
    409 Fed. App'x 99 (9th Cir. 2010) ........................................................... *passim*

*Silver v. Executive Car Leasing LTD Plan*, 466 F.3d 727 (9th Cir. 2006) ............................... 5

*Thompson v. Astrue*, 2012 WL 5989199 (W.D. Pa. Nov. 29, 2012) ....................................... 48

*Van Alstine v CIGNA*, 73 Fed. App'x 956 (9th Cir. 2003) ...................................................... 43

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ............................................................................ 5

*Wilkins v. Unum Life Ins. Co. of N. America*, 2013 WL 5340512 (N.D. Cal.
    Sept. 24, 2013)................................................................................................................ 58

*Yancy v. United of Omaha Life Ins. Co.*, 2015 WL 9311729 (C.D. Cal.
    Dec. 18, 2015)................................................................................................................ 40

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - v
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

**Statutes, Rules, and Other Authorities**

**Page**

Employee Retirement Income Security Act of 1974 ("ERISA"),
29 U.S.C. § 1001, *et seq*.............................................................................................. *passim*

29 C.F.R. § 2260.503-1..................................................................................... 34, 58

Federal Rule of Civil Procedure 52 ........................................................................ 57

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - vi
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

## LOCAL RULE 7-1(a) CERTIFICATION

Undersigned counsel for Defendant The Lincoln National Life Insurance Company ("Lincoln") hereby certifies pursuant to Local Rule 7-1(a) that the Parties have made a good faith effort through telephone conferences to resolve their dispute without motion practice, and have been unable to do so.

## I.      INTRODUCTION

This case is a dispute over allegedly-due long-term disability ("LTD") benefits governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Lincoln hereby files its Response in Opposition to Plaintiff's Motion for Judgment (Doc. 17) and Cross-Motion for Judgment in its favor in accordance with this Court's Order of June 3, 2022 (Doc. 23) as modified by its subsequent orders, including its Scheduling Order of September 30, 2022 (Doc. 34).

Plaintiff Tracey Turkoly ("Plaintiff") was a sales account manager for a technology company. Plaintiff scheduled an initial appointment with a psychologist—and first reported being "stressed at work" and having "panic attacks"—only after learning that her job was being eliminated. *See*, *e.g*., LIN1179.[1]

In applying for LTD benefits, Plaintiff initially told Lincoln that she was unable to work due to anxiety arising from her father's health condition, a recent move, and her son's start of kindergarten. In her application packet, Plaintiff also attributed her inability to work to "depression and anxiety," rather than any physical symptoms or cognitive impairment. *See*, *e.g*., LIN1768. But once Lincoln approved her claim and advised that benefits for such conditions

---

[1] Throughout this Motion, Lincoln has cited directly to the Administrative Record, which is bates numbered LIN0001 through LIN2333 and filed with this Court on May 31, 2022. *See* Doc. 19.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 1
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

would be limited to 24 months, Plaintiff began shifting the basis of her alleged disability, variously attributing new and diffuse symptoms to a wide-ranging collection of disorders, including Ehlers-Danlos Syndrome, Gastroesophageal Reflux Syndrome ("GERD"), Immune Deficiency Syndrome, Lyme Disease, and Postural Orthostatic Tachycardia Syndrome ("POTS"), among others.  After repeated physical examinations, mental status examinations, and laboratory testing all failed to uncover any plausible etiology for her subjective complaints, Plaintiff ultimately settled on Chronic Fatigue Syndrome ("CFS") as the purported cause of her alleged disability.

At all times, Plaintiff's evidence was based on her own subjective self-report that she could not work.  Nevertheless, Lincoln paid LTD benefits for some ten months before concluding that the evidence no longer supported ongoing functional limitations that might prevent Plaintiff from performing the duties of her sedentary occupation—assuming it ever did.  In addition to contemporaneous examination notes of her own treating physicians, Lincoln's initial determination to terminate benefits was supported by the peer review reports of two board-certified physicians, video surveillance evidence that showed Plaintiff to be without any apparent limitations (in stark contrast to her statements to Lincoln just a few days prior), and background investigation reports that showed Plaintiff to have embarked on a new career after studying for and passing her real estate broker's exam.

On appeal, Plaintiff submitted certain neuropsychological testing results purportedly showing a "Mild Neurocognitive Disorder" of unknown origin, *see*, *e.g*., LIN0409, but that testing was largely normal and failed to include any validity measures to ensure that she put forth her best efforts.  Plaintiff now contends that Lincoln should have obtained and considered additional, un-specified materials related to her Social Security Disability Insurance ("SSDI") claim.  Although

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 2
Case No. 3:21-cv-01019-SI

she apparently shared some of these materials with her own doctors, Plaintiff never submitted such materials to Lincoln. Based on the entirety of the record before Lincoln, including thorough and detailed peer review reports prepared by two more independent physicians who reviewed all of the medical evidence on appeal, Lincoln upheld its prior determination.

Here, Plaintiff simply failed to meet her burden to prove that she continued to be disabled through and beyond March 24, 2020, as her former employer's group policy ("Group Policy") required. Accordingly, Lincoln's determination was correct, and this Court must uphold that determination.

## A.   Relevant Policy Provisions.

To be entitled to LTD benefits under the Group Policy, a claimant must prove a continuous "Disability" that lasts through the Group Policy's 90-day "Elimination Period" and beyond. *See*, *e.g*., LIN2310. Such "Proof" must show "the character and the extent of the loss for which the claim is made," LIN2297, must be timely and in writing, LIN2325, and "must be given at [the claimant's] expense." LIN2310. Even where, as here, Lincoln makes an initial determination that benefits are supported, such benefits continue month-to-month only so long as the claimant continues to prove that his or her absence from work is due to the same ongoing Disability. *See*, *e.g*., LIN2310; LIN2318.

During the first 24-months of benefits, the Group Policy defines "Disability" to mean that the claimant, "as a result of Injury or Sickness, [is] unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue [the claimant's] Own Occupation in the usual and customary way." LIN2291. For purposes of the Group Policy, a claimant's "Own

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS- MOTION FOR JUDGMENT - 3 Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. 1201 Third Avenue, Suite 5150 | Seattle, WA 98101 Phone: (206) 693-7052 | Fax: (206) 693-7058

Occupation" is separate and distinct from the claimant's "Own Job," and thus is not limited to the specific job requirements of a claimant's particular employer. LIN2295.[2]

Importantly, the Group Policy expressly limits benefits to 24 months where the Disability is "due to Mental Illness," LIN2313, which the Group Policy defines to include any "psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual or Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness." LIN2295.

Absent proof of continuous Disability, a claimant's coverage simply comes to an end once he or she is no longer actively working a regular schedule of at least 20 hours per week. *See* LIN2285 (eligibility requirements); LIN2289 (defining "Active Employment").

**B.      Standard of Review and Burden of Proof.**

ERISA represents "a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). "[E]mployers have large leeway to design disability and other welfare plans as they see fit." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003)). "And once a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written

---

[2] After 24-months of benefits, the definition of "Disability" changes to mean "that as a result of sickness or injury [the claimant] is unable to perform with reasonable continuity in any occupation in which [he or she] could reasonably be expected to perform satisfactorily in light of [his or her] age, education, training, experience, station in life, and physical and mental capacity." LIN2291.

DEFENDANT'S AMENDED RESPONSE          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
IN OPPOSITION TO PLAINTIFF'S                  1201 Third Avenue, Suite 5150 | Seattle, WA 98101
MOTION FOR JUDGMENT AND                     Phone: (206) 693-7052 | Fax: (206) 693-7058
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 4
Case No. 3:21-cv-01019-SI

instrument.'" *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (quoting 29 U.S.C. § 1102(a)(1)). "This focus on the written terms of the plan is the linchpin of a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Id.* (internal quote and alterations omitted); *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)).

Accordingly, because the plan "is at the center of ERISA," both Lincoln and this Court have a duty to strictly enforce the Group Policy's terms (including its explicit proof requirements) which preclude the continued payment of benefits after the medical evidence no longer supports the claim. *Id.* at 108; *see also Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985). This duty is derived from trust law and thus "does not necessarily favor payment over nonpayment." *Varity*, 516 U.S. at 514. "The common law of trusts recognizes the need to preserve assets to satisfy future, as well as present, claims and requires a trustee to take an impartial account of the interests of all beneficiaries." *Id.*; *see also*, *e.g.*, *Conkright v. Frommert*, 559 U.S. 506, 520 (2010) (holding that administrators "have a duty to all beneficiaries to preserve limited plan assets" and should "prevent . . . windfalls for particular employees").

"When conducting a *de novo* review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). Said another way, the Court performs an "independent and thorough inspection of an administrator's decision," in light of the administrative record, in order to determine whether the administrator made the correct decision on that record. *Silver v. Executive Car Leasing LTD Plan*, 466 F.3d 727, 733 (9th Cir. 2006); *see*

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 5
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

*also*, *e.g.*, *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (holding that on *de novo* review, the Court "simply proceeds to evaluate whether the administrator correctly or incorrectly" decided the claim) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (*en banc*)).

In accordance with the Group Policy's express proof requirements, it was at all times Plaintiff's burden to prove entitlement to benefits. Lincoln had no burden to prove that she could work or to otherwise disprove Plaintiff's claim. *See*, *e.g.*, *Muniz*, 623 F.3d at 1296 ("Muniz also contends that the burden of proving a disability should be shifted to the claim administrator when the claim administrator terminates disability benefits without providing any evidence that the claimant's condition has improved or changed since its initial award of benefits. There is no case law supporting this proposition. Rather, district courts within this circuit have consistently held that the burden of proof continues to lie with the plaintiff when disability benefits are terminated after an initial grant. We agree.") (footnote and citations omitted); *see also*, *e.g.*, *Calcagno v. Unum Life Ins. Co.*, 2019 WL 2488716 (D. Or. Feb. 19, 2019) ("Under *de novo* review, the burden of proof is placed on the claimant. To meet this burden, [the claimant] must establish by a preponderance of the evidence that he [or she] was disabled under the terms of the plan during the claim period.") (citations omitted); *Delaney v. Prudential Ins. Co.*, 68 F. Supp. 3d 1214, 1222 (D. Or. 2014) (under the preponderance standard, "where the evidence is evenly balanced, the party with the burden of persuasion must lose.") (quoting *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 at n.9 (1997)).

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 6
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

## II.     LEGAL ARGUMENT

**A.     Lincoln Correctly Determined that Plaintiff Failed to Meet Her Burden to Prove an Ongoing Disability Beyond March 24, 2020.**

**1.     After learning that her job was being eliminated, Plaintiff stopped work and applied for disability claiming that she was unable to work due to anxiety and "panic attacks."**

Prior to stopping work, the medical evidence shows that Plaintiff had no significant illness or symptoms.  For example, she visited Dr. Seth Means, her chiropractor, on January 10, 2019.  LIN1119.  Plaintiff told him that she had been traveling extensively—including to New Zealand and New York—within the last month.  LIN1119.  She self-reported subjective back and neck pain levels of "2/10," but Dr. Means's review of systems was "unremarkable."  LIN1119.  Psychologically, Dr. Means wrote only that Plaintiff's "[s]peech and mentation [were] clear and coherent," and that she was "[a]lert and cooperative."  LIN1119.  Plaintiff also visited Dr. Katherine Walker, a Naturopathic Doctor or "N.D.," for treatment of allergies on January 18, 2019.  LIN1235.  Plaintiff did not report any pain symptoms to Dr. Walker, and Dr. Walker's objective physical examination was also unremarkable.  Dr. Walker wrote that Plaintiff was "[h]ealthy and cooperative," her "mood and affect [were] within normal limits," and her range of motion was "intact" with "[n]o joint erythema or tenderness."  LIN1236.

Similarly, prior to stopping work, the record does not contain any reports of a deterioration in Plaintiff's work performance or that she had been disciplined or placed on probation for failure to meet her sales goals.  To the contrary, Plaintiff's supervisor, Christine Simonini, the Head of Enterprise Marketing, touted Plaintiff's "strong problem-solving and leadership skills" and praised her ability to "strategically plan for the future and then pivot quickly to take action."  *See* LIN0464.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 7
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Similarly, Dinesh Jotwani, her employer's Senior Manager for Customer Success, wrote glowingly of Plaintiff's "business acumen" and "sales savvy." LIN0464.

Then, on February 6, 2019, Plaintiff scheduled an initial visit with psychiatrist Dr. Bowen Parsons. LIN1179. Plaintiff told Dr. Parsons that "[h]er job is being eliminated and she can stay with the same company by taking a non-challenging job or work under a manager in a challenging job." LIN1179. She also discussed working "long hours" and commuting during the week between her office in Olympia, Washington, and her home in Portland, Oregon. LIN1179. Based on Plaintiff's self-report, Dr. Parson wrote: "She is anxious, worries and cannot sleep." LIN1179. "She is stressed at work and has been having frequent panic attacks." LIN1179.

On February 13, 2019, Plaintiff saw Dr. Parsons again and told him that she was having "frequent panic attacks making it impossible for her to work." LIN0395. Plaintiff also told him that she was going to "go on medical disability . . . for 13 weeks." LIN0395. At Plaintiff's request, Dr. Parsons wrote her a work excusal note that said she cannot work due an unspecified "medical condition" and that she would "return to work on 5/14/2019." LIN2038.

Plaintiff stopped work the next day, on February 14, 2019. That same day, Plaintiff returned to Dr. Walker and told her that she was "super stressed" and "taking time off work." LIN1124. Dr. Walker's physical examination was again unremarkable, indicating, *inter alia*, that Plaintiff's range of motion was "intact," she had "[n]o joint erythema or tenderness," and that her "[j]udgment and insight, memory, mood and affect [were] within normal limits." LIN1125. In addition, Plaintiff's "[p]osture, behavior, attention, concentration and thought content" were also "within normal limits." LIN1125.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 8
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Plaintiff visited Dr. Daniel Agosta, another chiropractor, on March 1, 2019. LIN1127.  In his examination, Dr. Agosta noted that Plaintiff was "[p]leasant, cooperative & interactive." LIN1127.  Psychologically, her "[s]peech and mentation" were "clear and coherent."  LIN1128. Plaintiff returned to Dr. Walker on March 14, 2019.  *See* LIN1130.  Plaintiff told Dr. Walker that she was "[s]till experiencing stress," LIN1130, but Dr. Walker's physical examination again showed "intact" range of motion, no joint "tenderness," and memory, mood, and affect to all be "within normal limits."  LIN1131.  On March 25, 2019, Plaintiff visited psychotherapist Jackie Paris who wrote that Plaintiff's anxiety "appears to be secondary to issues at work."  LIN0975. The same day, Plaintiff posted to social media a picture of herself and her husband, smiling, on "Carmel Beach."  LIN00453.

Through April 2019, the collection of contemporaneous medical records now in the record continues in a similar vein.  *See*, *e.g*., LIN1137 (Plaintiff "reports overall she has been feeling much better."); LIN1140 ("Judgement and insight, memory, mood and affect are within normal limits."); LIN0974 (Plaintiff "[v]erbally reported that job functioning would be impaired."); LIN1723 (Plaintiff "appears anxious," but otherwise physical examination is unremarkable.); LIN0396 (Plaintiff "is trying to exercise, meditate and do yoga.").[3]

Near the end of the Group Policy's 90-day Elimination Period (and the exhaustion of her employer's 13-week short-term disability benefit), Plaintiff applied for LTD benefits.  On May 2,

---

[3] The record is also punctuated, from beginning to end, with Plaintiff's multiple complaints to the Washington and California state insurance authorities.  Plaintiff repeatedly accused Lincoln of failing to seek records from her treating doctors, giving her a "runaround," and other alleged misconduct.  *See*, *e.g*., LIN1914-1917; LIN1685-1688.  In all cases, Lincoln denied the allegations and responded appropriately to the regulators.  *See*, *e.g*., LIN1892; LIN1691.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 9
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

2019, Plaintiff called Lincoln and said that "[p]hysically she was fine," but was having a "hard time" with anxiety due to a confluence of recent events, including her father's "severe health issues," a recent move, and her son's start of kindergarten. LIN0036–37. Plaintiff also highlighted recent changes at her workplace, explaining that her employer "went public last year and things got increasing crazier and more stressful." LIN0037.

Separately, as part of the LTD application packet, Plaintiff described how her "family lives 100 miles away" from her workplace so she sees them only on weekends and the "pace and demands" of her job "have become impossible." LIN1767. She continued:

> My managers always have urgent needs while I am on vacation no matter how hard I try to make sure everything is handled before I go. I have not had a totally unplugged vacation in many years.

LIN1767. Plaintiff did not mention that her position was being eliminated.

In connection with her application, Plaintiff also submitted a Restrictions Form, dated May 9, 2019, completed by another naturopath, Dr. Stacy Bzowy. *See* LIN1733. On that form, Dr. Bzowy said that physically Plaintiff could perform "light" work, which includes lifting or carrying up to 20 pounds occasionally and standing and walking frequently during a normal 8-hour workday. LIN1733. Dr. Bzowy did not identify any medical restrictions that might limit Plaintiff's ability to travel. *See* LIN1733. However, Dr. Bzowy did opine that in light of Plaintiff's "anxiety" and "acute stress reaction," she should avoid "high stress, high demand" work through October 2019. LIN1733.

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 10
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

**2.    Lincoln requested medical evidence from Plaintiff's treating physicians and initially approved LTD benefits on the basis of Plaintiff's claimed mental health condition and her expressed intention to return to work.**

After asking Plaintiff's medical providers to furnish copies of her medical records, Lincoln claim specialist Kristie Larocca asked Vocational Case Manager Nicole Hall to evaluate the essential duties of Plaintiff's occupation and two medical consultants—Dr. Peggy Geimer, who is a board-certified internist, and Dr. Andrew Brown, a board-certified psychiatrist—to review the medical evidence then in Lincoln's possession.

As requested, Ms. Hall prepared an Occupational Analysis on May 3, 2019. *See* LIN1751. Based on the job description provided by Plaintiff's employer, *see*, *e.g*., LIN1882, and as required by the language of the Group Policy, *see*, *e.g*., LIN2291, Ms. Hall determined that Plaintiff's former job as a "Global Account Manager" corresponds to the occupation of "Manager, Professional Equipment Sales-and-Service," as that occupation exists in the national economy and is defined in the Department of Labor's Dictionary of Occupational Titles ("DOT"). LIN1751. In her analysis, Ms. Hall observed that Plaintiff's employer did not list any physical requirements for Plaintiff's specific job, but she explained that Plaintiff's own occupation "is most often performed at the Sedentary level in the National Economy per the DOT." LIN1751.

Upon concluding her separate review on May 30, 2019, Dr. Geimer found that the medical evidence did not support "any medical (non-psychiatric) diagnoses" that required functional limitations or restrictions. LIN1695–1696. As Dr. Geimer explained, she had spoken with Dr. Bzowy, Plaintiff's naturopath, who re-iterated that Plaintiff's "problems are primarily psychological." LIN1695–1696; *see also*, *e.g*., LIN1702. Moreover, Dr. Geimer observed that

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 11
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

the records showed, for example, that Plaintiff's various complaints of back and neck pain "responded well and almost completely resolved with chiropractic treatment." LIN1696.

Dr. Brown, after examining the record from a mental health perspective, spoke with Plaintiff's treating psychiatrist, Dr. Parsons, on June 4, 2019. Dr. Parsons said that Plaintiff was not currently able to work even though her psychological symptoms had improved since leaving work. *See* LIN1671–72. However, Dr. Parsons told Dr. Brown that he had "confidence that [Plaintiff] would return to work in July 2019 in accordance with [Plaintiff's] expressed intentions." LIN1672. Apparently swayed by this conversation, Dr. Brown opined that it was reasonable to believe that Plaintiff was functionally impaired by anxiety and depression at least through the date she said she planned to return to work. LIN1666.

On the basis of Dr. Brown's assessment, Ms. Larocca wrote on June 5, 2019, to approve LTD benefits effective upon the close of the Elimination Period on May 17, 2019. *See* LIN1633-1635. Ms. Larocca's letter notified Plaintiff that her disability claim was subject to the Group Policy's 24-month Mental Illness limitation. *See* LIN1634. She also advised that Lincoln would "continue to review [the] claim" and would periodically request "medical documentation to evaluate [Plaintiff's] continued eligibility for benefits." LIN1635.

> **3.  Following surveillance showing that Plaintiff was not as impaired as she claimed, and a review of updated medical evidence by two independent board-certified physicians, Lincoln determined that Plaintiff failed to meet her burden to prove entitlement to benefits beyond March 24, 2020.**

After Lincoln's benefit approval, Plaintiff continued treating with doctors in multiple specialties and underwent a variety of laboratory and diagnostic tests. According to a May 23, 2019 office note by Dr. Walker, Plaintiff was "studying 4–5 hours per day" for her real estate licensing exam. *See* LIN1147. At a visit with Dr. Agosta on June 7, 2019, the chiropractor noted

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 12
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Plaintiff's muscle testing showed "5/5" strength throughout all muscle groups. LIN1150. On June 7, 2019, Plaintiff told Dr. Walker that her "anxiety and depression is better." LIN1152. In June and July 2019, Plaintiff had numerous blood tests with overwhelmingly normal results. *See*, *e.g*., LIN1073; LIN1468; LIN1063. On a test for possible Lyme Disease on June 12, 2019, however, Plaintiff had an inconclusively mixed result—although Plaintiff was IgG positive, the IgM result was negative because it showed only a single band of reactivity. *See* LIN1056–58.

On July 8, 2019, following the Lyme test, Plaintiff complained to Dr. Lonnie Smucker, a family medicine doctor, that "fatigue . . . [was] making it impossible for her to work." LIN1314. During Dr. Smucker's exam, Plaintiff denied "headaches" and other neurologic symptoms, denied "anxiety or depression," and presented with a "[n]ormal range of motion," "[n]ormal strength and sensation," and "[n]ormal mood and affect." LIN1316. But based on the Lyme test results, Dr. Smucker referred Plaintiff to an infectious disease specialist. *See* LIN1316. On July 22, 2019, Plaintiff also complained to her psychiatrist Dr. Parsons about debilitating fatigue. *See*, *e.g*., LIN0398 ("She even has difficulty going out to a restaurant due to fatigue, imbalance, pains in her jaw, hips and knees."). By August 2019, Plaintiff also began reporting "increased fatigue" to her therapist, Ms. Paris, who seems to have attributed such symptoms to Lyme disease on the basis of Plaintiff's self-report despite the lack of any formal diagnosis. *See*, *e.g*., LIN0968; LIN0966; LIN964 ("Was unable to work on job skills due to [Plaintiff's] worsening symptoms of Lyme disease.").

However, at odds with such self-reports of Lyme-induced fatigue, Plaintiff told Dr. Connor Coffin, one of her other naturopaths, on June 12, 2019, that she did not have any history of "tick bites." LIN1047. Moreover, Dr. Walker's physical and psychological exams on July 12 and

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 13
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

August 16, 2019, again showed "intact" range of motion, "[n]o joint erythema or tenderness," and that Plaintiff's mood was "within normal limits." *See*, *e.g.*, LIN1159; LIN1112. Throughout the Summer of 2019, Plaintiff's chiropractor, Dr. Agosta, also repeatedly recorded improvement to Plaintiff's self-reported pain symptoms after each regular monthly visit. *See*, *e.g.*, LIN1161 ("[Plaintiff] reports [her] neck and upper back pain felt better and have continued to feel better since last visit.").[4]

By November 2019, as part of Lincoln's continuing review, Lincoln claim specialist Todd Youngberg asked Plaintiff to complete an Activities Questionnaire describing the extent of her current functional abilities. *See* LIN0888. Plaintiff completed that form on December 2, 2019, and said that she spends "15–17" hours in bed each day and cannot stand for longer than "10–20" minutes. LIN0881. Indeed, she said she could not even shower, and must take baths instead, because she lacks the necessary standing ability. LIN0882.

Four days after completing this form, on December 6, 2019, surveillance video captured Plaintiff as she exited her home, got into the driver's seat of her vehicle, and drove her minor son to an unknown destination. LIN0859; *see also* LIN0863–65. Although she drove out of view while the investigator was delayed in traffic, Plaintiff apparently did not return home within the

---

[4] On October 9, 2019, Ms. Larocca wrote to request these and other updated medical records from all of Plaintiff's treating providers. LIN1325. Plaintiff responded by lodging renewed complaints with the Washington and California insurance authorities and accusing Lincoln of "needlessly harassing" her for records. *See* LIN1305-1308; LIN1013-1016. As Lincoln claim specialist Karen McKenzie explained to Plaintiff, Lincoln's "disability evaluation involves a review of the totality of your medical conditions (physical and psychiatric)." LIN0957. Accordingly, Lincoln's request for such records was necessary "to assist in clarifying your ongoing medical functionality." LIN0957. Ms. McKenzie told Plaintiff that she could withhold records from specific providers if she wanted, but if she did, Lincoln's evaluation would then be based on only those records Lincoln was allowed to request and receive. LIN0957.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 14
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

next four hours.  LIN0865.  On the next day, December 7, 2019, Plaintiff attended her son's basketball game, spending over an hour watching the game and conversing with other people. LIN0859–60; *see also* LIN0865–68.  After the game, Plaintiff walked with her husband and son "for approximately six minutes" before arriving at a pizza restaurant, where they met with other people and ate a meal.  LIN0860.  Plaintiff and her family next made a stop at a local drugstore before returning home.  LIN0860.  Plaintiff "retrieved two [shopping] bags, her purse, and a roll of wrapping paper from the vehicle before ascending the front steps of her home and entering." LIN0860.  On December 8, 2019, Plaintiff drove alone to a coffee shop where she purchased a drink and conversed with other people before walking "approximately three minutes" to a nail salon where she received a manicure and pedicure.  LIN0860; *see also* LIN0869-0872.[5, 6]

Following Lincoln's receipt of the updated medical records discussed above and the video surveillance report, dated December 11, 2019, Mr. Youngberg asked Dr. Evelyn Cumberbatch, a board-certified psychiatrist, to review all of the evidence from a mental health perspective.  *See* LIN0835–43.

As set forth in her report, dated December 31, 2019, Dr. Cumberbatch concluded that the records supported limitations due to depression and anxiety through July 2019, but thereafter the evidence shows that Plaintiff "may not be as functionally impaired due to her psychiatric conditions, as she is claiming to be."  LIN0835-0836.  Dr. Cumberbatch observed that beginning

---

[5]  Video stills from the surveillance can be found at LIN0873–0875.  A live link to the full videos can be found in the Administrative Record at LIN0872.

[6]  When Plaintiff learned that Lincoln had hired an investigator, she again complained to state insurance authorities.  *See*, *e.g*., LIN0811 ("The aggressive tactics of spying on me is evidence as well that they are very motivated to stop paying for my disability.").

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 15
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

in June and July 2019—*i.e.*, after Lincoln informed Plaintiff that her claim was subject to the 24-month Mental Illness limitation on June 5, 2019, *see* LIN1634—the medical records shifted to become more focused on Plaintiff's physical medical conditions, rather than her psychological conditions, as the reason for her claimed impairments. LIN0836. As Dr. Cumberbatch also explained, the frequency of Plaintiff's psychotherapy sessions—approximately once every two weeks—was not consistent with treatment for someone with severe and impairing anxiety. LIN0837; *see also*, *e.g.*, LIN0840. "The available records do not show that [Plaintiff's] mental health providers have considered that she needs a higher level of outpatient care." LIN0837. "In addition," Dr. Cumberbatch continued, while the available mental status exams "sometimes" noted Plaintiff's "depressed and anxious mood, most of the time she has no other objective mental status abnormalities." LIN0839. Dr. Cumberbatch concluded,

> Finally, the available records provide evidence that Ms. Turkoly is functioning at a level that is not impaired; she said in May that she had been studying 4–5 hours a day for a real estate exam and she took the exam; she has also been on a number of trips. In addition, the surveillance done in December 2018 showed her leaving her home, appropriately dressed, operating a car, going to crowded events, cafes and restaurants, and engaging in conversation with a variety of people; the pictures show her appropriately dressed and nicely groomed and she is smiling; she also went to have a manicure and pedicure. This is not the picture of someone [who] has significant depression and/or anxiety and who is impaired and unable to function.

LIN0840.

As part of her review, Dr. Cumberbatch attempted to speak directly with Plaintiff's treating psychiatrist Dr. Parsons, but he told her (on instructions from Plaintiff) that he would not speak with her. LIN0838. Instead, Dr. Cumberbatch sent Dr. Parsons a set of written questions, which he completed and returned. LIN828. In an addendum report dated January 11, 2020, *see* LIN0822–0825, Dr. Cumberbatch noted that Dr. Parson's answers confirmed that "[t]here are no

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 16
Case No. 3:21-cv-01019-SI

objective measures of [Plaintiff's] cognitive status," Plaintiff's treatment "is not commensurate with significant and impairing depression and/or anxiety," and Dr. Parsons's opinion of disability "appears to be based solely upon [Plaintiff's own] subjective reports." LIN0822.

Mr. Youngberg next asked Dr. Jonathan Rosen, a board-certified internist, to review the evidence from a physical health perspective. *See* LIN0702–0743. In his peer review report, dated January 23, 2020, Dr. Rosen opined that the medical evidence did not support Plaintiff's claimed level of physical impairment. In relevant part, Dr. Rosen explained,

> There is no clinical evidence for Immune Deficiency with no history of recurrent serious or even minor infectious diseases that would characterize that disorder. There is no laboratory data to support that diagnosis.
>
> For chronic fatigue syndrome, claimant has not had adequate evaluation to rule out rheumatologic causes for her symptoms with no standard laboratory testing or radiography for those diseases and no referral to a rheumatologist. In addition, this diagnosis is difficult to invoke in the face of depression and anxiety disorder.
>
> In terms of Lyme disease, claimant has no supportive history to suggest a tick bite or acute illness. She lives in an area where Lyme disease is rarely seen . . . Her laboratory data show only one positive band of IGM notable which is very weak . . . Her Naturopathic Doctor has treated claimant with "Natural Antibiotics" and there is no record of treatment with standard Antibiotic regimen. Claimant has not sought Infectious Disease Consultation as recommended by her PCP. In addition, there are no described symptoms or physical findings to support this disease other than generalized pain.
>
> Claimant's physical exams have been repeatedly reported as within normal limits. A surveillance and review of her social media conducted over the past several months reveals her as able to climb up and down bleacher stairs, to sit for a prolonged period of time observing a basketball game, walk on sidewalks and across streets with no difficulty, to shop and load and empty packages from her car and to drive on her own without difficulty.

LIN0703. In conclusion, after reviewing all of the evidence in the file, Dr. Rosen found no support for any restrictions from "light duty work on a full-time basis." LIN0703.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 17
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

In preparing his report, Dr. Rosen also spoke with Dr. Coffin, one of Plaintiff's naturopaths, who told Dr. Rosen that he too believed Plaintiff was physically capable of engaging in "light duty" work. LIN0704. Dr. Coffin confirmed that upon his examinations, Plaintiff "was fully independently ambulatory" and presented with no observed functional deficits. LIN0704.

But upon reviewing Dr. Rosen's report, however, Dr. Coffin changed his position and wrote on January 23, 2020, to deny that Plaintiff could perform light work. *See* LIN0797–0798. Dr. Coffin wrote that Plaintiff's primary impairing diagnoses were Chronic Fatigue Syndrome, Immune Deficiency Syndrome, and Lyme Disease, but he provided no reason for changing his prior assessment of Plaintiff's functional ability.[7] Thereafter, Dr. Coffin also submitted a so-called MRI "quant" report dated December 20, 2019, purportedly showing a diagnosis of Chronic Inflammatory Response Syndrome. *See* LIN0714–0715; LIN0726–0729. Dr. Rosen reviewed these materials, but, as explained in an addendum dated March 5, 2020, his opinion remained unchanged:

> Dr. Coffin's most recent note restates a variety of symptoms that are subjective and relates these to a variety of diagnoses that are unsubstantiated. He has added Chronic Inflammatory Response Syndrome as a diagnosis with [Plaintiff's] MRI quant scan as an indicator. However, there is no support in the medical literature for these assertions.

> Dr. Coffin supplies a letter stating that claimant cannot engage in her job functions due to fatigue, pain and cognitive issues, however there is no documentation of cognitive testing or specific impairments noted.

LIN0707.

---

[7] Two days before Dr. Coffin recanted, Plaintiff again complained to state insurance authorities, alleging that Lincoln "attempted to bully my Doctor." LIN0809. Plaintiff demanded: "Lincoln should take my Doctor's recommendations seriously and understand that I am disabled until I say I am not." LIN0809.

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 18
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Mr. Youngberg next asked Ms. Hall to prepare an Addendum update her prior Occupational Analysis to specifically "address travel requirements within" Plaintiff's occupation. *See*, *e.g*., LIN0018.  In her Addendum, dated February 21, 2020, Ms. Hall again found that that Plaintiff's own occupation was "Sedentary in the National Economy per the DOT," but she also noted that, per other reference materials, Plaintiff's occupation may additionally require "[o]ccasional traveling."  LIN0709.

On March 25, 2020, after a review of the entire record, Mr. Youngberg wrote a long and detailed letter explaining his determination that Plaintiff failed to met her ongoing burden to prove entitlement to LTD benefits.  *See* LIN0681–0688.  In his letter, Mr. Youngberg quoted the applicable Group Policy language, discussed the medical records considered, and recounted the procedural history of Plaintiff's claim.  He also quoted at length from the December 2019 surveillance report, Dr. Cumberbatch's peer review and addendum, and Dr. Rosen's peer review and addendum.  *See* LIN0682–0686.  After noting the physical demands of Plaintiff's own occupation as described by Ms. Hall, Mr. Youngberg concluded "as there is insufficient evidence to support that you have current psychiatric symptoms that would preclude you from working and the physical evidence doesn't preclude you from [performing] full time sedentary work, you do not continue to meet your Policy's Definition of Disability."  LIN0686.

In his letter, Mr. Youngberg also notified Plaintiff of her appeal rights under the Group Policy, and explained that any appeal should include updated "treatment notes, diagnostic tests results, lab results, hospital records and pharmacy records," and "any additional information that you feel will support your claim."  LIN0687.  (For the Court's convenience, the clinical evidence during the last six months leading up to Lincoln's termination of benefits, and for the next three

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 19
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

months thereafter, is summarized in a "Table of Medical Evidence," which is attached to this Memorandum as Exhibit A.)

> **4.    Plaintiff moved to Hawaii, apparently started a new career, and then appealed Lincoln's determination.**

Sometime in the spring of 2020, Plaintiff and her family moved to Hanalei, Hawaii, where she and her husband own a condominium. Background investigation reports obtained by Lincoln showed that Plaintiff acquired a real estate broker's license and became "affiliated with" a company called Tiffany Real Property. *See* LIN2103; LIN2154. According to social media posts, Plaintiff and her husband are also the owners of 360 Tour Designs, a business that assists real estate professionals in "design, staging, organization, and 3D walkthrough technology" for properties on the market. *See* LIN0440; *see also*, *e.g*., LIN0422–0423; LIN0454–0459; LIN2102; LIN2126–2129. Plaintiff is also registered as the business contact for Venus Rising Insights, which apparently specializes in "Numerology, Palmistry, Tarot, Intuitive Art, and Astrology reading." LIN0440; *see also*, *e.g*., LIN0423; LIN0476–0478.

On June 2, 2020, Plaintiff established care with Dr. Steve Rogoff, a family practitioner in Hawaii, whose clinic also provides physical therapy, acupuncture, and other non-traditional medical services. *See*, *e.g*., LIN0511; LIN0507; LIN0504. On June 29, 2020, Plaintiff had a telemedicine visit with Portland-based nephrologist Dr. Michael Feldman. LIN0498. Plaintiff told him that she felt "lightheadedness," that her "[f]atigue persists," and that she has "total body pain." LIN0498. Dr. Feldman wrote,

> Discussed lack of clarity regarding an underlying unifying dx. I doubt lyme is a real dx. She does not meet criteria for pots.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 20
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

LIN0500.  During a telemedicine visit with Dr. Parsons on July 2, 2020, Plaintiff told her therapist that her "mood . . . waxes and wanes with her fatigue syndrome" but reported that her "memory and concentration is marginally better."  LIN0399.

With the assistance of Attorney Scott Sell, Plaintiff appealed Lincoln's determination on September 21, 2020.  *See* LIN0638-0647.  In the appeal letter, Attorney Sell argued that Plaintiff "suffers from major depressive disorder, panic disorder, migraine disorder and chronic fatigue syndrome" and that these conditions "interfere with her concentration, attention to detail, interpersonal communication skills, and her ability to multitask and travel."  LIN0638.

In connection with the appeal, Attorney Sell submitted a declaration of Plaintiff in which she recounted her past employment history, culminating in her alleged success as a "top performer" at her employer.  *See* LIN0651-0653.  Notably, Plaintiff claimed that despite contracting pneumonia in January 2018 and "constantly" being "sick" thereafter, she nevertheless "ended 2018 number one in Enterprise."  LIN0653.  Plaintiff did not mention however that her position was being eliminated.  *See* LIN0651-0653.

Plaintiff asserted that, after leaving work, her husband had to take responsibility for all household responsibilities.  LIN0654.  She said, "Currently, I cannot even do more than an hour of computer work."  LIN0654.

> After about an hour, I must lay down.  I cannot sit at a desk for more than an hour.
> If I get overtired, the result is brain fog so thick, I lose all functioning.

LIN0654.  In an apparent attempt to explain away the earlier surveillance video, Plaintiff said, "If I overdo activities on good days, I am so tired and confused and dizzy the next day and sometimes for days afterwards, that I cannot function at all."  LIN0653.  As she continued:

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 21
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

> I have seen some of the surveillance that [Lincoln] conducted of me and I am aware that [Lincoln] has said the surveillance shows that I am not sick. Frankly, it makes me very sad and a little upset. . . . [T]hey waited until I had a few good days and photographed me eating out with friends and smiling and running some errands.

LIN0655. Plaintiff's declaration made no mention of her having obtained a real estate license or of her other businesses.

Following Attorney Sell's request for more time, which Lincoln allowed, *see* LIN0419; LIN0413, Plaintiff also submitted a "Neuropsychological Evaluation" prepared by Dr. Shelly Ludolph, a clinical psychologist, on November 10, 2020. *See* LIN0400-0410. That report indicates Plaintiff told Dr. Ludolph that she had been experiencing memory problems since 2005 and migraine headaches since she was fifteen years old. *See* LIN0401. According to Dr. Ludolph, Plaintiff presented for testing "as appropriately groomed and casually dressed." LIN0401-0402. The testing showed that Plaintiff's full-scale IQ was 95, placing her "in the Average Range of intellectual abilities," LIN403, and other tests of verbal comprehension, perceptual organization, visual-motor integration, and executive function similarly placed Plaintiff in the "Average" or even "High Average" ranges. *See* LIN0403-0408. However, on certain tests of working memory and processing speed, Plaintiff performed poorly, purportedly achieving scores that would place her only in the bottom one-percent of the population or even lower. *See* LIN0403. Assessing the overall results, Dr. Ludolph diagnosed Plaintiff with a "Mild Neurocognitive Disorder" and suggested that she "[c]onsult with her primary care physician or a psychiatrist for pharmaceutical treatment for Lyme disease, other medical issues, and anxiety." LIN0409.

From Dr. Ludolph's report, it appears that her understanding of the Plaintiff's other medical conditions, including Plaintiff's alleged Lyme infection, was based on little more than Plaintiff's own self report. *See* LIN0401. There is no indication that Dr. Ludolph reviewed the

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 22
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

contemporaneous medical records of Plaintiff's other treating practitioners, reviewed the surveillance, or attempted to reconcile Plaintiff's many previous unremarkable mental status exams—not to mention the fact that despite these alleged deficits, there was no evidence that her job performance declined. Indeed, Plaintiff claimed to be a top performer right up until she left work, nor did Dr. Ludolph attempt to reconcile Plaintiff's passage of her real estate license exam with the cognitive impairments purportedly revealed by the testing. Notably, in her report, Dr. Ludolph did not express any opinion that Plaintiff would be unable to work or travel.

> **5.    As part of its review on appeal, Lincoln consulted with two more independent board-certified physicians—both of whom found the medical evidence not to support Plaintiff's claimed functional impairments.**

Lincoln assigned the appeal to Appeal Consultant Janelle Paine, who initially sought to schedule an independent medical examination of the Plaintiff. However, Lincoln was unable to find any qualified physicians willing to perform one on the island of Kauai, where Plaintiff was then living. *See*, *e.g.*, LIN0128. So, in light of Hawaii's pandemic-related regulations imposed on interisland travel, Ms. Paine instead asked a third-party vendor to provide an independent and qualified physician to evaluate the medical evidence as to Plaintiff's alleged psychological and cognitive symptoms. The vendor selected Dr. Jeremy Hertza, who is board-certified in neuropsychology.

In his peer review report dated December 30, 2020, Dr. Hertza summarized the medical records and other evidence that he found most relevant for the time period under review, including Dr. Ludolph's Neuropsychological Evaluation. *See* LIN0375-0384. Dr. Hertza also attempted to speak with Dr. Parsons and Dr. Ludolph, but neither returned his calls. LIN0376. Dr. Hertza acknowledged Plaintiff's various diagnoses and reported symptoms, but he ultimately concluded

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 23
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

that "the medical evidence does not support any diagnoses causing functional impairment from 03/25/2020 through the present and ongoing." LIN0377. In explaining his opinion, Dr. Hertza observed that Plaintiff's treatment "included medical management" but the record showed "no indication of [ongoing] psychotherapy and no indication of consideration of high-level mental health care, such as IOP or PHP." LIN0377.[8] Dr. Hertza specifically disagreed with Dr. Ludolph's conclusions because the testing appeared to lack the standard "validity measures" which would be necessary to confirm whether Plaintiff actually put forth her best effort during the testing. LIN0378; LIN0379. "[T]herefore," Dr. Hertza continued, "[Dr. Ludolph's] assessment cannot be assumed to [be] accurate and cannot be interpreted for forensic reasons." LIN0378. Dr. Hertza went on to note that the testing was not consistent with the totality of the medical evidence in the file. As such, "in the context of generally unremarkable mental status exams, and no high level mental health treatment," Dr. Hertza concluded, "impairment is not supported from 03/25/2020 to present." LIN0379.

In response to Dr. Hertza's peer review report, Ms. Paine wrote to Plaintiff's attorney to request that Dr. Ludolph provide Dr. Hertza with the "raw data" from Plaintiff' testing. *See* LIN0371; *see also*, *e.g*., LIN0323. Dr. Hertza also made several more unsuccessful attempts to speak directly with Dr. Ludolph. LIN0276. Although she refused to speak with him, Dr. Ludolph did eventually send Dr. Hertza copies of her raw test data. *See* LIN0266-0277. Dr. Hertza prepared an addendum peer review report on February 12, 2021, in which he explained that the raw data "confirmed validity measures were not utilized." LIN0277; LIN0279. Accordingly, Dr.

---

[8] "IOP" and "PHP," respectively, refer to "intensive outpatient programs" and "partial hospitalization programs."

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 24
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Hertza reiterated that Dr. Ludolph's testing "cannot be assumed to be valid and conclusions from [such testing] cannot be made." LIN0279.

Meanwhile, Ms. Paine also asked a different third-party vendor to refer an independent and qualified physician to review the record from a medical (*i.e.*, non-psychological) perspective. The vendor selected Dr. Kevin Trangle, who is board-certified in internal medicine, preventative medicine, and occupational medicine. *See* LIN0291-0319.

Dr. Trangle's peer review report, dated February 8, 2021, begins with a detailed 17-page summary of the medical evidence, which recounts the findings and observations recorded at Plaintiff's many visits to each of at least nine different treating doctors and therapists during the relevant period. *See* LIN0293-0310. The summary discusses Plaintiff's self-reported symptoms at those appointments, as well as the many repeatedly normal and unremarkable physical and mental status examinations routinely documented by Plaintiff's various treating practitioners. *See* LIN0293–310. Dr. Trangle's summary also lists the dozens of test results found in the record, nearly all of which were entirely normal. *See* LIN0293-0310. Dr. Trangle next considered all of the prior peer review reports and reviewed the video surveillance. *See* LIN0307-0309. Before reaching any conclusions, Dr. Trangle also spoke with Dr. Rogoff, who was apparently unaware of Plaintiff's medical history prior to 2018 and did not even know that she was on disability. *See* LIN0310-0311. Nevertheless, Dr. Rogoff told Dr. Trangle that he believed Plaintiff to be disabled due to symptoms secondary to chronic fatigue, fibromyalgia, or some post-viral-infection syndrome. *See* LIN0311.

Dr. Trangle next discussed, in depth, each of the Plaintiff's many purported diagnoses:

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 25
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

The records reviewed revealed a plethora of subjective complaints and many diagnoses reported by [Plaintiff], most of which are not supported by actual clinical findings, including examination findings, laboratory testing, imaging studies and other diagnostic testing.

* * *

The majority of [Plaintiff's] documented symptoms stem from her underlying anxiety disorder with reports of panic attacks, but none which were observed by her treating providers. There are numerous inconsistencies in the records such as reports of depression, anxiety and panic attacks during visits with her psychiatrist with little to no mention of these issues or supporting clinical findings during her visits with her chiropractors, primary care providers and naturopaths. In fact, there were occasions she denied having anxiety and/or depression when seeing one provider, only to report having anxiety and depression when seeing another provider within a short period of time. Furthermore, the majority of her mental status evaluations showed no significant clinical findings to support a severity of anxiety and depression reported by [Plaintiff].

* * *

The records also reflect a multitude of physical complaints including diffuse muscle and joint pain/stiffness, severe fatigue, headaches and irritable bowels, among others. Despite all of these subjective complaints, repeated examinations have demonstrated only some generalized muscle tenderness and muscular hypertonicity.

[Plaintiff] has consistently demonstrated normal neurological findings including gait, strength, sensation and balance. There is no evidence of an underlying peripheral neuropathy, plexopathy, radiculopathy or myelopathy. Her brain MRI showed some nonspecific white matter disease, which is [of] no clinical significance.

There have been no documented joint abnormalities and no imaging of her extremities to support the presence of significant degenerative joint disease. Despite [Plaintiff's] report of having osteoarthritis in her knees, there is no evidence of this condition in the provided records.

Despite [Plaintiff's] subjective complaints of diffuse arthralgia and myalgias including neck and back pain, there is no evidence to support degenerative disc disease and/or spondylosis as there has been no spinal imaging or documentation of findings to support underlying radiculopathy or myelopathy.

[Plaintiff] reported possible Ehlers-Danlos syndrome without any explanation. The records provided contain no evidence of this condition.

* * *

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 26
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

[Plaintiff] also claims to have some type of endocrine dysfunction, possibly related to a pituitary tumor. However, all of her endocrine testing, including thyroid and adrenal function, has been normal. There was also no mention of a pituitary lesion on the brain MRI report provided for this review.

With respect to purported immune deficiency syndrome, the nature of which was never elucidated. Review of extensive immunological testing failed to review any evidence of immunodeficiency and there has been no documentation of frequent severe infections or any other possible manifestations of an underlying immunodeficiency.

There is also mention of migraine headaches. However, the precise nature of these headaches have not been described including the frequency and duration of headache episodes. No headache journal was referenced and there is no evidence that [Plaintiff] has been treating with a neurologist for this condition and the provided records do not reflect an intensity of treatment that would be expected in the case of an individual with intractable migraines of such severity as to interfere with ability to work.

There were also reports of intermittent asthma without any examination findings or abnormal pulmonary function testing. There has also been no emergency department visits or hospitalizations for asthma exacerbations or any visits with a pulmonologist with documentation of a severe respiratory condition including asthma. If present, [there] has been no evidence of any impaired function from this diagnosis.

* * *

There is mere mention of GERD, seasonal allergies and gluten intolerance without any supporting clinical findings. Nevertheless, it would not be unreasonable to believe these conditions are present.

LIN0311-0317.

Dr. Trangle observed that Plaintiff was "diagnosed with a mild cognitive disorder based on neuropsychological testing," but he concluded that this condition, if present at all, "is of such mild severity [that] repeated mental status examinations by numerous providers have failed to demonstrate any evidence of cognitive dysfunction aside from an observation of some diminished concentration." LIN0312. Like Dr. Hertza, Dr. Trangle highlighted the fact that Dr. Ludolph's neuropsychological testing utilized "no validity measures" and thus "could not be assumed to be

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 27
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

accurate." LIN0312. "Of additional interest," Dr. Trangle continued, "[Plaintiff] reported to her chiropractor . . . that she had been studying 4 to 5 hours/day in preparation for taking the real estate broker examination." LIN0312. Such records, reasoned Dr. Trangle, belie Plaintiff's claim of impaired ability to concentrate or engage in other mental activities. *See* LIN0312.

Turning to Dr. Rogoff's suggested diagnoses and etiology, Dr. Trangle explained,

The lack of clinical findings to support an established pathological process has likely led to [Plaintiff's] diagnosis of fibromyalgia syndrome (FMS), which is by definition a diagnosis of exclusion which is based on subjective complaints and findings of diffuse myofascial tenderness. . . .

Similarly, the diagnosis of chronic fatigue syndrome (CFS) is generally based on subjective complaints of debilitating fatigue with no known etiology. These conditions are essentially diagnoses of exclusion in which a unifying scientifically-based medical diagnosis cannot be made that is capable of explaining the extensive list of complaints reported. . . .

None of the testing performed in this case necessarily support either fibromyalgia or CFS. As noted below the diagnoses of FMS and/or CFS, in this instance, even if assumed present, do not show any associated impairment, need for job accommodation or inability to work.

\* \* \*

Patients with CFS are often referred to an infectious disease specialist because of elevated levels of immunoglobulin G (IgG) to the viral capsid antigen (VCA) of EBV. Increased IgG titers to the VCA of EBV are common in the general population, regardless of whether the patient is fatigued. An increased IgG VCA EBV titer indicates past exposure to EBV but does not indicate acute disease or explain the patient's chronic fatigue state.

\* \* \*

The [Plaintiff's] laboratory testing does show evidence of a past EBV infection, but not a current active infection. This is an extremely common finding among normal individuals without any diseases. Similarly, she has evidence of a past Coxsackievirus B infection. Neither of these test results are of any current clinical significance and they do not establish a cause for her [self-reported] symptoms.

\* \* \*

In discussion with Dr. Rogoff, he believes [Plaintiff] has mast cell activation syndrome (MCAS). . . .

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 28
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

> A recent global definition, criteria, and classification [for MCAS] include typical clinical symptoms, a substantial transient increase in serum total tryptase level or an increase in other mast cell derived mediators, such as histamine or PGD2 or their urinary metabolites, and a response of clinical symptoms to agents that attenuate the production or activities of mast cell mediators.
>
> There is no evidence to support the [Plaintiff] meets any of the above described criteria. She has not undergone laboratory testing for the clinically available and validated markers of mast cell activation such as testing for serum tryptase or urinary histamine metabolite levels. Her serum histamine level was essentially normal. Furthermore, there is no evidence that she has responded to treatment with H1 and H2 histamine receptor antagonists, cromolyn sodium or glucocorticoids.
>
> Dr. Rogoff also believes [Plaintiff] has mitochondrial dysfunction related to past fluoroquinolone use for pneumonia in 2017. However, this appears to be nothing more than mere speculation. It is uncertain she was even prescribed a fluoroquinolone. There also is no established means to test for mitochondrial dysfunction related to fluoroquinolones and such a diagnosis in the present case is not based on diagnostic criteria promulgated in the peer-reviewed medical literature for which there is a general consensus within the medical community.

LIN0313-0317.

Lastly, Dr. Trangle explained that the medical evidence also does not support Plaintiff's purported Lyme and chronic Lyme diagnoses:

> With respect the testing for Lyme disease in general and in this case, a two-step process is used. Both tests in this two-step process measure the body's immune system response to an infectious agent and do not test for the infectious agent itself. The first-step uses an ELISA (enzyme-linked immunosorbent assay) test. The ELISA is used to check for past or current infection with the bacteria that cause Lyme disease Borrelia burgdorferi). The ELISA test checks for antibodies made when the body's immune system responds to the bacteria that cause Lyme disease. The ELISA test is designed to be very "sensitive," which means that almost everyone with Lyme disease, and some people who do not have Lyme disease, will have a positive result.
>
> If the test result comes back negative, it is highly unlikely that the person has Lyme disease. Simply put, it is very possible that a positive ELISA test is a false positive and very unlikely that a negative test is false negative. If the ELISA comes back positive or indeterminate (sometimes called "equivocal"), a second-step test should be performed to confirm the positive ELISA result.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 29
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

The second-step uses a western blot test (protein immunoblot test). Western blot testing is performed only if step one test results (ELISA) are positive or equivocal. If signs and symptoms have been present for 30 days or less, both IgM and IgG Western blot testing are performed; if signs and symptoms have been present for more than 30 days, only IgG Western blot testing is performed. According to the CDC criteria, the overall result is positive only when the first test is positive (or equivocal) and the second test is positive (or for some tests equivocal).

In the present case, the [Plaintiff] had an initial Lyme screening ELISA test which was negative, thus a Western blot should not have been obtained. In fact, the laboratory that did the ELISA did not proceed with what is called a "reflex" Western blot based on CDC guidance. The Western blot in this case was obtained on a different date and at a different laboratory. The IgM results were negative and the IgG results were positive.

In the face of a negative ELISA, this positive IgG result is suspect and could be due to cross reactivity with other antigens. The IgG result also does not establish the presence of a recent active infection.

As is the case for most serologic assays, Lyme disease serologic assays are not by themselves diagnostic. . . .

Of particular importance in the present case, the [Plaintiff's] clinical presentation is not consistent with an active Lyme infection. There is no evidence of a tick bite and the [Plaintiff's] lifestyle does not place her at significant risk for tick bites. She also has never developed an erythema migrans rash.

Any allegation of late/chronic Lyme disease is also not supported. Not only has [Plaintiff] likely received sufficient treatment by report, she has no evidence of large joint involvement with severe pain and swelling. She also has had no evidence of cranial nerve palsies, meningoencephalitis, neurocognitive disorder validated by formal neuropsychological testing (unvalidated testing in the present case), cardiac manifestations or any other supporting clinical evidence.

With respect to any purported neurologic involvement related to Lyme disease (neuro-Lyme disease), the [Plaintiff's] clinical picture is inconsistent with this diagnosis. She did not exhibit any of the classic "triad of neurological manifestations of Lyme disease" including meningitis, cranial neuritis, and radiculoneuritis. Since a lumbar puncture was not performed, there was no showing of CSF pleocytosis, intrathecally formed specific antibodies against B. burgdorferi or B. burgdorferi DNA by PCR testing. In addition, [Plaintiff's] brain MRI [is] without evidence of meningeal or nerve root involvement.

An objective analysis of symptoms, clinical findings and laboratory studies do not support she ever had Lyme disease let alone post-Lyme disease encephalopathy.

LIN0314-0316.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 30
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

After his exhaustive analysis, Dr. Trangle ultimately concluded that "[t]he medical evidence fails to support the existence of measurable physical functional impairment, physical limitations or the need for work restrictions with regard to the any of the supported physical conditions outlined above for the period of 03/25/2020 through the present." LIN0318. As he further explained,

> The [Plaintiff's] subjective complaints have been far disproportionate to the measurable clinical findings. This is very typical in patients with fibromyalgia and/or chronic fatigue syndrome. Despite the presence of diffuse physical complaints, patients like the [Plaintiff] lack clinical findings to support any significant functional impairment.

> As noted above, repeated examinations conducted by multiple physicians have failed to reveal any significant abnormal findings to support the presence of physical functional impairment. Also as noted above, the [Plaintiff's] reported increase in symptoms did not correlate with a measurable difference in her subjective findings (*e.g.* tenderness to palpation) or the development of new abnormal findings on exam.

> Furthermore, all diagnostic testing including extensive blood work has failed to establish a pathological process capable of causing the degree of physical impairment claimed by the [Plaintiff].

> Simply stated, there are no supported physical conditions which are responsible for any significant functional impairment.

LIN0317-0318.

**6.      As part of its full and fair review, Lincoln gave Plaintiff an opportunity to respond to the new peer review reports but she failed to submit any additional medical evidence that supported her claim.**

Upon receipt of Dr. Hertza's first addendum and Dr. Trangle's exhaustive report, Ms. Paine sent copies of both to Plaintiff and her legal counsel to provide an opportunity to comment and submit additional medical evidence. *See* LIN0222.

In response, Attorney Sell submitted only a two-page advocacy letter by Dr. Ludolph, dated March 10, 2021. In that letter, Dr. Ludolph acknowledged that she evaluated the Plaintiff "to

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 31
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

establish a cognitive baseline to aid in treatment" and "not to assess [Plaintiff's] ability to work." LIN0219. Nevertheless, she defended her failure to utilize standard validity testing, relying instead on her own subjective observations of Plaintiff's appearance during the test-taking process: "[T]he way [Plaintiff] presented during the evaluation and the way she completed the tasks demonstrate that she understood the tasks and completed them to the best of her ability." LIN0218. In the balance of her letter, Dr. Ludolph proceeded to defend the validity of the tests themselves, calling them "rigorously validated instruments," rather than offering any objective measure of the validity of the Plaintiff's test-taking efforts. LIN0219. In closing, and without offering any additional medical evidence, Dr. Ludolph opined,

> As I understand it, [Plaintiff] worked in a high-level sales position in the technology industry. She is not presently capable of that work given the degree of impairment to her executive functioning and memory.

LIN0219. Dr. Ludolph did not explain what formed the basis for her understanding of the requirements of Plaintiff's occupation, apart from what Plaintiff told her.

Ms. Paine sent Dr. Ludolph's letter to Drs. Hertza and Trangle. Both consulting physicians thereafter prepared addendum reports, and neither changed their opinion. *See* LIN0179–0186; LIN0138–0142. With respect to Dr. Ludolph's contention that no validity testing was necessary, Dr. Hertza specifically noted that a variety of standard validity tests "such as TOMM, WMT, and RDS" exist;[9] that these can be used as either "stand alone or embedded" tests; and that "typically at least 2 should be used." LIN0180. After review of Dr. Ludolph's letter, Dr. Trangle also

---

[9] "TOMM" refers to the Test of Memory Malingering, a test that discriminates between patients with bona fide memory impairment and those who merely feign such symptoms. "WMT" refers to the Word Memory Test, and "RDS" refers to the Reliable Digit Span test, both of which likewise measure the validity of a test taker's effort.

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 32 Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. 1201 Third Avenue, Suite 5150 | Seattle, WA 98101 Phone: (206) 693-7052 | Fax: (206) 693-7058

confirmed, "It remains my opinion that there are no supported physical conditions which are responsible for any significant functional impairment." LIN0141.

Ms. Paine sent both peer review addendum reports to Plaintiff on April 20, 2021, providing yet one more opportunity for Plaintiff to provide additional medical evidence. LIN0177. In her letter, Ms. Paine emphasized that Lincoln needed to receive Plaintiff's response, and any additional information by May 11, 2021, or Lincoln would proceed to make its decision based on the information already in the file. LIN0177. Attorney Sell responded on May 11, 2021, with legal argument, his various criticisms of the peer reviewers' reports, and copies of mainstream press articles about "Long Covid"—apparently an attempt to analogize Plaintiff's alleged chronic Lyme to the effects of Long Covid. *See* LIN0147-0150; *see also*, *e.g.*, LIN0151; LIN0165; LIN0171. Attorney Sell did not send any additional medical evidence.

After Plaintiff's deadline passed, on May 20, 2021, Attorney Sell notified Lincoln, by phone, that the Social Security Administration had awarded Plaintiff Social Security Disability Insurance ("SSDI") benefits on May 3, 2021, but he did not provide any further details about the award or even a copy of the SSDI award letter at that time. *See*, *e.g.*, LIN0004; LIN0072. Lincoln said only that it would consider the award, not that it could further postpone making a final determination. *See* LIN0004-0005.[10]

---

[10] The Department of Labor's regulations impose strict deadlines on ERISA administrators in deciding disability claims. *See*, *e.g.*, 29 C.F.R. § 2560.503-1(i)(3)(i).

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 33
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

**7.    After considering all of the evidence in the record, including the evidence developed during the appeal, Lincoln upheld its prior determination that Plaintiff had failed to meet her burden to prove any continuing disability beyond March 24, 2020.**

After giving due consideration to all of the evidence in the record, Ms. Paine determined that Plaintiff had not met her burden to prove any continuing disability, as defined in the Group Policy, beyond March 25, 2020.  Ms. Paine notified Plaintiff of her appeal decision in a detailed 24-page letter dated May 25, 2021.  *See* LIN0079-0102.

In the uphold letter, Ms. Paine recounted the procedural history of the claim, responded to Attorney Sell's appeal arguments, and explained the grounds for her decision.  She discussed at length the opinions of Plaintiff's treating practitioners and those of the consulting physicians Drs. Cumberbatch, Rosen, Hertza, and Trangle.  *See*, *e.g.*, LIN0082-0086.  Ms. Paine evaluated the extent of the physical, cognitive, and occasional travel demands required by Plaintiff's sedentary occupation, as it exists in the national economy, and considered whether the record supported medically-necessary limitations or restrictions that would preclude Plaintiff's ability to perform her occupational duties.  *See*, *e.g.*, LIN0086-0098.

With respect to Plaintiff's SSDI award, Ms. Paine noted, *inter alia*, that Plaintiff "failed to provide anything beyond verbal notification of the [SSDI] award."  LIN0099.  Plaintiff did not provide, for example, copies of the materials submitted to the Social Security Administration as part of the claim or copies of any Social Security ordered examinations.

While Ms. Paine acknowledged Plaintiff's many subjective complaints, she ultimately concluded that the evidence, taken as a whole, did not support any ongoing occupational impairments:

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 34
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

In summary, we acknowledge that [Plaintiff] may continue to experience some symptoms associated with her condition. However, the available information does not contain physical examinations, mental status examination[s], diagnostic test results, or other forms of medical documentation to support that her symptoms are of such severity, frequency, and duration that they resulted in restrictions or limitations rendering her unable to perform her own occupation beyond March 24, 2020.

Having carefully considered all of the information submitted in support of [Plaintiff'] claim, our position remains that based on the medical information contained in her file she does not meet the definition of total disability under the terms of [the Group Policy] and we are maintaining the decision to deny [Plaintiff's] claim for LTD benefits beyond March 24, 2020.

LIN0099.

## B.    The Administrative Record Overwhelmingly Supports Lincoln's Determination.

The dispositive question in this case is whether Plaintiff proved by a preponderance of the medical evidence that her medical condition precluded her, as of March 24, 2020, and beyond, from performing her own sedentary occupation. Despite the volume of medical records submitted, there is little beyond Plaintiff's own subjective self-report to suggest that she was functionally unable to perform such work. Indeed, the record contains repeatedly normal and unremarkable physical and mental status examinations, a variety of normal test results, as well as surveillance video, all of which confirm that Plaintiff had no significant functional impairment by the time Lincoln terminated benefits, assuming she ever did.

In evaluating Plaintiff's claim, it was entirely appropriate for Lincoln to focus on reliable evidence of Plaintiff's functional capacity, as set forth in her treating physicians' clinical examinations, most of which actually contradict Plaintiff's self-report of subjective symptoms that allegedly impair her ability to work. *See*, *e.g*., *Ross v. Prudential Ins. Co.*, 304 Fed. App'x 502, 503 (9th Cir. 2008) ("Although the severity of pain may not be rejected because of lack of objective

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 35
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

verification, plan administrators are entitled to seek information on how the alleged impairment actually limited the claimant's functional capacity."); *Jordan v. Northrup Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 877–78 (9th Cir. 2004), *overruled on other grounds*, *Abatie*, 458 F.3d at 969-970 (holding that administrator properly rejected treating physicians' conclusory opinions where such opinions depended entirely on claimant's subjective self-report and were contrary to other objective evidence in the record); *Gray v. UNUM Life Ins. Co.*, 2022 U.S. Dist. LEXIS 129121 at *13 (C.D. Cal. July 11, 2022) ("But a [claimant's] subjective interpretation of [her] symptoms cannot, standing alone, establish disability."); *Biggar v. Prudential Ins. Co.*, 274 F. Supp. 3d 954, 968 (N.D. Cal. 2017) (explaining that "subjective evidence of a disabling condition is inherently less reliable than objective evidence . . . particularly . . . when self-reported symptoms are contradicted by testing") (internal quotation omitted); *Seleine v. Fluor Corp. LTD Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009), *aff'd*, 409 Fed. App'x 99 (9th Cir. 2010) ("[The administrator] did not ignore [claimant's] subjective complaints of pain.  Rather, these complaints were subject to verification by objective medical evidence.  [The administrator] was under no obligation to accept them at face value."); *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1191 (C.D. Cal. 2008) ("Plaintiff claims that his subjective complaints should be accepted at face value.  The rule is to the contrary.").

Here, the clinical evidence is inconsistent with any claim that Plaintiff's anxiety or depression symptoms were so severe during the relevant timeframe as to preclude her from working.  *See*, *e.g.*, Exhibit A (summarizing the medical evidence through the date Lincoln terminated benefits).  In September and October of 2019, Ms. Paris, Plaintiff's psychotherapist, twice recorded mental status examinations.  Both times she noted Plaintiff's "moderate"

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 36
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

depression and anxiety, but otherwise wrote that Plaintiff's appearance, orientation, speech, affect, thought process, thought content, perception, judgment, and insight were all "WNL," meaning "within normal limits." *See* LIN0694; LIN0692. Plaintiff thereafter stopped treating with Ms. Paris.

From October 2019 through February 2020, Plaintiff visited her psychiatrist Dr. Parsons monthly. However, Dr. Parsons's session notes contain no physical or mental status examinations, *see* LIN0398-0399, and by November 2019, Plaintiff's complaints were primarily diffuse physical or cognitive symptoms—"fatigue, joint pain, unsteady gait and cognitive difficulties"—rather than any "ongoing depression and anxiety" which Dr. Parsons began characterizing as "secondary to [Plaintiff's] medical condition." *See* LIN0398-0399. By December 2019, Plaintiff's chief complaints, as reported to Dr. Walker, her primary care naturopath, were "confusion" and "achiness," no longer depression or anxiety. *See*, *e.g*., LIN0556. As part of her physical examinations, Dr. Walker observed Plaintiff's psychological condition over multiple visits and repeatedly found that Plaintiff's judgment, insight, memory, mood, affect, behavior, concentration, and thought content were all "within normal limits." *See* LIN0557; LIN0560. Thus, to the extent Plaintiff's psychological condition was ever occupationally impairing, the clinical evidence demonstrates that it was no longer so by March 24, 2020.

The clinical evidence is likewise entirely inconsistent with Plaintiff's claim that during the relevant period she was so fatigued that she was unable to perform even sedentary-level activities. *See*, *e.g*., Exhibit A. According to physical examinations performed by several of Plaintiff's treating practitioners, from December 2019 through March 2020 and beyond, Plaintiff repeatedly presented in no acute distress, without labored breathing, with a normal gait, and with full muscle

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 37
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

strength. *See* Exhibit A; *see also*, *e.g*., LIN0556 (December 12, 2019: "Normal muscular development. Normal gait."); LIN0559 (December 30, 2019: same); LIN0565 (February 4, 2020: documenting "5/5" strength throughout all muscle groups tested); LIN0511 (June 2, 2020: "Normal gait" and muscle strength "5/5"). Such examination evidence, repeatedly recorded by diverse treating physicians, refutes any contention that Plaintiff's ability to sit, stand, or walk was so functionally limited that, as she claimed to Lincoln, she was unable even to stand for long enough to shower herself. *See*, *e.g*., LIN0882. Repeated findings of "5/5" muscle strength, for example, are completely contrary to the findings of weakness and muscle atrophy one would expect to see in a patient who was chronically reduced to sub-sedentary functional levels.

Moreover, Plaintiff's own statements to her treating doctors about her activity levels are also at odds with what she told Lincoln. *See*, *e.g*., Exhibit A. In October 2019, Plaintiff told Dr. Coffin that she had "started walking 3-4 days a week" for exercise, LIN0991, and she told Dr. Agosta that she could "walk a half a mile to a mile . . . before becoming fatigued." LIN1175. In November 2019, Plaintiff told Dr. Coffin that she had traveled to Ohio for a wedding. LIN0719. But then on December 2, 2019, Plaintiff told Lincoln that she spent "15-17" hours a day in bed and that "[t]ravel is very difficult." *See* LIN0881-0883. One week later, on December 9, 2019, Plaintiff told Dr. Agosta that she was "feeling [her] energy return" and was now "able to do longer walks, as well as continuing [her] yoga in the morning[s]." LIN0554.

In June 2020, following Lincoln's termination of benefits and Plaintiff's move to Hawaii, Dr. Rogoff's initial exam showed Plaintiff continued to be "WDWN-NAD," meaning "well-developed, well-nourished, and not in acute distress." LIN0511. At that time, Dr. Rogoff also clinically documented Plaintiff's "[n]ormal gait, "[n]ormal mood and affect," and "5/5" muscle

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 38
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

strength. *See* LIN0511. Dr. Rogoff's clinical observations simply do not support functional limitations, and they certainly do not support such limitations prior to the date he first examined Plaintiff.

On administrative appeal, Plaintiff shifted the focus of her claim to highlight alleged cognitive symptoms and offered Dr. Ludolph's report, which purportedly supports her diagnosis of "Mild Neurocognitve Disorder" due to some other unspecified condition. LIN0409. However, as discussed above, Dr. Ludolph's report does not support Plaintiff's claimed level of impairment. The objective test results showed that Plaintiff was able to achieve at least "Average," and in some cases "High Average," scores across most cognitive domains tested. *See* LIN0403-0408. While the report reflects implausibly low scores on certain memory tests, Dr. Ludolph neglected to include any embedded or stand-alone validity tests as part of her evaluation. *See* LIN0400 (list of tests administered); *see also*, *e.g*., LIN0278 (Dr. Hertza explaining, after his review of the raw test data, that "no validity measures were utilized and therefore [Dr. Ludolph's] assessment cannot be assumed accurate"). In the advocacy letter Dr. Ludolph submitted during the administrative appeal, she said that Plaintiff could not work due to impaired "executive functioning." *See* LIN0219. But that opinion is inconsistent with Dr. Ludolph's own report, which documented Plaintiff's "Average" score on each of the Delis-Kaplan Executive Function System tests administered. *See* LIN0408.

Moreover, Courts have long recognized that in the absence of rigorous validity testing, such reports have little persuasive weight for assessing maximum (as opposed to minimum)

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 39
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

functional abilities because there is nothing to quantify whether the test taker put forth his or her best efforts. *See*, *e.g.*, *Gorbacheva v. Abbott Labs. Ext. Disability Plan*, 309 F. Supp. 3d 756, 771 (N.D. Cal. 2018), *aff'd*, 794 F. App'x 590 (9th Cir. 2019) (affirming administrator's decision to give functional capacity exam little weight because validity testing was insufficient to determine whether claimant was putting forth full effort); *Hulbert v. Hartford Life & Accident Ins. Co.*, 2021 WL 3291888 at \*10 (N.D. Cal. August 2, 2021) (explaining that treating doctor's "failure to use validity testing [was] especially problematic" and that his decision to "ignore embedded validity testing . . . causes the Court to view his report as less credible than the reports from [the administrator's consulting physicians]"); *Hocheiser v. Liberty Mutual Ins. Co.*, 2021 WL 672660 at \*10 (D.N.J. Feb. 22, 2021) ("[U]nless the [examination] contains robust validity testing, the claimant can influence the results based on the amount of effort he [or she] puts forth during the evaluation."); *Johnson v. Commerce Bancshares, Inc.*, 276 F. Supp. 3d 926 (W.D. Mo. 2017) ("The embedded and freestanding validity measures contained in the test indicated Plaintiff was not giving his best effort in the testing. In fact, [claimant's] efforts were consistent with an attempt to feign cognitive problems.") (footnote omitted); *compare*, *e.g.*, *Yancy v. United of Omaha Life Ins. Co.*, 2015 WL 9311729 at \*9 (C.D. Cal. Dec. 18, 2015) (crediting neuropsychological testing where "select measures sensitive to effort during test taking were administered discretely" and suggested that clamant "was exerting her best effort during the evaluation"); *Ness v. Aetna Life Ins. Co.*, 257 F. Supp. 3d 1280, 1285 (M.D. Fla. 2017) (finding that functional capacity exam was entitled to weight because it included "multiple assessments of the degree of effort put forth").

These cases align with Dr. Hertza's and Dr. Trangle's opinions that validity measures are essential in order to assess whether a claimant has put forth his or her best efforts during testing.

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 40
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Because such test results are completely dependent upon a claimant giving full effort, it is especially important to assess validity in all cases, such as this one, were the claimant might be motivated by secondary gain.[11]  It is simply inexplicable why Dr. Ludolph, assuming she wanted accurate test results, would forego the standard practice of including stand-alone and embedded validity measures and choose instead to rely solely on her own subjective observations of Plaintiff's outward appearance.  *See*, *e.g*., LIN0401 (stating that Plaintiff "appeared to put forth great effort attending to each assessment task"); *compare*, *e.g*., *Hurlbert*, 2021 WL 3291888 at *10 (discounting opinion of treating doctor where he "ignored the embedded validity testing on the tests . . . [and] instead relied only on his 'professional judgment'" to assess testing validity); *Johnson*, 276 F. Supp. 3d at 939 (finding "practically unassailable" the conclusion that "without valid test results there was no neuropsychological *evidence* to properly diagnose [the claimant] with either a mild or major cognitive disorder") (emphasis in original).

Apart from her failure to formally assess Plaintiff's test-taking efforts as part of her evaluation, Dr. Ludolph's *post-hoc* opinion also conflicts with the clinical observations of Plaintiff's several other treating professionals during the relevant period.  *See*, *e.g*., Exhibit A (summarizing such evidence).  In October 2019, for example, Plaintiff's psychotherapist, Ms. Paris, conducted a mental status examination and found Plaintiff's "thought process" and "thought

---

[11]  As discussed above, Plaintiff did not claim disability until after her job was about to be eliminated, *see*, *e.g*., LIN1179, she changed the basis of her claim from an alleged psychological condition to an alleged physical condition after being advised of the Group Policy's 24-month Mental Illness limitation, *see*, *e.g*., LIN0836, and she demonstrated abilities on surveillance that are inconsistent with what she told Lincoln, only four days earlier, that she could do.  *Compare*, *e.g*., LIN0881-0882 *with* LIN0859-0860.  There is no evidence that Dr. Ludolph was even aware of such facts.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 41
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

content" to both be within normal limits. LIN0692. On December 13, 2019, and then again on December 30, 2019, Dr. Walker recorded psychological examinations of Plaintiff. During both exams, Dr. Walker found Plaintiff's "memory," "attention," "concentration," and "thought content" to all be "within normal limits." LIN0557; LIN0560. Such observations are further corroborated by the clinical examinations recorded by Plaintiff's chiropractors, Drs. Agosta and Means, approximately every two weeks from October 2019 through March 2020. Their office treatment notes consistently show that Plaintiff presented as "[a]lert" and "cooperative" and that her "[s]peech and mentation [were] clear and coherent." *See*, *e.g.*, LIN1175; LIN0548; LIN0550; LIN0552; LIN0554; LIN0565; LIN0571; LIN0573.

Surely, if Plaintiff was suffering a significant cognitive impairment—*i.e.*, one so profound that it precluded her ability to work—that impairment would have been sufficiently obvious for some of her treating doctors to have mentioned the condition in their contemporaneous clinical examinations (and not just recorded what Plaintiff told them). Likewise, if Plaintiff's job performance was suffering due to some chronic cognitive impairment, one would have expected to see poor performance reviews or other indicia of the alleged impairment in the work setting. Dr. Ludolph made no effort whatsoever to reconcile her opinion with the mountain of contemporaneous medical evidence that refuted it or with Plaintiff's own statements (and those of her work colleagues) touting her successful career. *See*, *e.g.*, LIN652–53 (Plaintiff's narrative description of her own work successes); LIN0464 (endorsements of Plaintiff's superior work skills by her former supervisor Ms. Simonini and her former coworker Mr. Jotwani). Indeed, there is no indication that Dr. Ludolph even reviewed, much less analyzed, any of the contemporaneous medical records or any of Plaintiff's statements to Lincoln.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 42
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

In addition to the reliable clinical evidence which overwhelmingly weighs against Plaintiff's claim, the record also contains other reliable evidence—including background investigations and video surveillance—that further refutes Plaintiff's claim to be impaired from sedentary work activities by her alleged psychological, physical, and cognitive symptoms. Courts and administrators commonly rely on such evidence. *See*, *e.g.*, *Pannebecker v. Liberty Life Assurance Co.*, 542 F.3d 1213, 1218 (9th Cir. 2008) ("The record supports [the administrator's] conclusion that [claimant] was able to perform duties of [sedentary] occupations" where "video surveillance depicted [claimant] shopping, driving, carrying purchased items, walking limited distances, and eating out with friends."); *Van Alstine v CIGNA*, 73 Fed. App'x 956, 958 (9th Cir. 2003) (affirming termination of benefits where administrator "relied on video surveillance that showed [claimant] engaging in significant physical activities in apparently unrestricted fashion").

Here, Plaintiff, on December 2, 2019, claimed to be practically bed-ridden, spending "15–17" hours a day in bed and unable even to stand long enough to shower herself. *See*, *e.g.*, LIN0881; LIN0882. Yet, video surveillance just four days later showed Plaintiff to be physically able to leave her home, drive a car, sit and stand for extended periods, walk extended distances, carry purchased items, and climb stairs. *See* LIN0859–75. In addition, during the relevant time period, Plaintiff was also regularly exercising, *see*, *e.g.*, LIN0991; LIN1175; LIN0554, and was traveling again. *See*, *e.g.*, LIN0719 (wedding in Ohio); LIN0550 ("[Plaintiff] reports having a lot of travel over the past week."). All of this evidence refutes Plaintiff's claim of debilitating fatigue and shows that she had at least sedentary physical capacity leading up to March 24, 2020.

Contrary to Plaintiff's self-reported anxiety and "panic attacks," *see*, *e.g.*, LIN1179, the surveillance also shows that Plaintiff was able to attend crowed events like a basketball game, dine

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 43 Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

in a restaurant, get a manicure and pedicure, and otherwise interact with other people in public without any outward sign of psychological distress. *See* LIN0859-0875 (especially LIN0872, which contains a live link to the full surveillance videos).

Contrary to Plaintiff's claimed cognitive impairment, the record also shows that while purportedly disabled, Plaintiff studied for and passed her real estate broker exam, *see*, *e.g*., LIN1147, obtained her license and became "affiliated with" a real estate brokerage company, *see*, *e.g*., LIN2103; LIN2154, and operated at least two other businesses. *See*, *e.g*., LIN0440.

During the administrative process, all of the evidence in the record was reviewed by no less than four independent board-certified physicians, with specialties relevant to Plaintiff's shifting claims, and all of them unanimously found the evidence not to support the level of functional impairment alleged. *See*, *e.g*., LIN0840; LIN0822; LIN0703; LIN0707; LIN0377; LIN0278; LIN0202; LIN0318; LIN0141. Lincoln properly credited these thorough and well-reasoned reports, and so should this Court. *See*, *e.g*., *Black & Decker Disability Plan v. Nord*, 538 U.S. at 834 (holding that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when the credit reliable evidence that conflicts with a treating physician's evaluation"); *Seleine*, 409 Fed. App'x at 101 (holding that administrator "was not required to credit the opinions of [claimant's] treating physicians or the neurosurgeon hired by her lawyer"); *Jordan*, 370 F.3d at 879 ("[A] treating physician's opinion gets no special weight and can be rejected on the basis of reliable evidence.").

Particularly in light of the number of medical specialists Plaintiff visited, her differing and inconsistent self-reports to each, and the conflicting (and sometimes shifting) opinions on

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 44
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

disability expressed by those practitioners at different times, it is important to recognize that Lincoln's consulting physicians were the only doctors who had the opportunity to review and consider all of the relevant medical evidence before rendering their opinions. *See*, *e.g*., *Beltman v. Sun Life Assur. Co.*, 2019 WL 1614584 at * 8 (W.D. Mich. Mar. 29, 2019) ("The Court also gives greater weight to [the administrator's] experts as they are the only practitioners in the case to have reviewed the whole of [claimant's] medical records before offering their assessments."); *Etkin v. Merk & Co., Inc.*, 2001 WL 1246368 at *6 (E.D. Pa. Oct. 30, 2001) ("[I]t is [proper] to rely on the opinions of non-examining physicians who had before them the entire record of medical evidence, more evidence than was available to any one doctor who saw [claimant] previously.").

On the basis of the record here, Lincoln's determination was correct. It could hardly have made any other decision.

## C.    Plaintiff's Criticisms of Lincoln's Determination Improperly Reverse the Burden and are Otherwise Factually and Legally Erroneous.

Throughout Plaintiff's Motion for Judgment (Doc. 17), she argues from the mistaken position that Lincoln, by virtue of having once approved LTD benefits, became obligated to prove that she could work or that her condition had improved. For example, Plaintiff argues that she told Lincoln and her treating medical practitioners that she could not work and that Lincoln failed to disprove her claim. *See*, *e.g*., Pl.'s Mot. at 21–24. Plaintiff argues that the surveillance cannot support Lincoln's position because the investigators did not observe her on certain days and, as such, Lincoln cannot rule out the possibility that she was actually bed-ridden on those days. *See* Pl.'s Mot. at 29–31, 37. Plaintiff argues that Lincoln could have obtained its own neuropsychological evaluation, rather than criticizing Dr. Ludolph's. *See* Pl.'s Mot. at 55. Such arguments improperly reverse the burden of proof. It was Plaintiff who at all times bore the burden

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 45
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

of proving a functional limitation that precluded sedentary work. *See*, *e.g*., *Muniz*, 623 F.3d at 1296. And to the extent that surveillance contradicted Plaintiff's self-reports of her own abilities (which in this case it did), such evidence is simply one more piece of the puzzle that reveals that Plaintiff did not meet her burden. Surveillance obviously need not actually prove that Plaintiff can work to constitute material, probative evidence. *See Rose v. Hartford Fin. Servs. Grp., Inc.*, 268 F. App'x 444, 451 (6th Cir. 2008) ("While the surveillance video may not, by itself, prove that [claimant] is capable of working forty hours a week, [claimant] fails to appreciate that she bore the burden of producing evidence that she was disabled under the terms of they policy."). The evidence here comes nowhere close to meeting Plaintiff's burden.

**1.      A claimant's subjective self-assessment of her own inability to work is insufficient proof to establish a claim, even absent the good reasons that exist here not to accept such self-assessments at face value.**

Plaintiff primarily relies on her own subjective self-report of symptoms and her own assessment of whether she can work. *See*, *e.g*., Pl.'s Mot. at 21–24. In her motion, Plaintiff says she sleeps "three hours in the afternoon most days" and spends "multiple days in bed each month." Pl.'s Mot. at 28. Similarly, in December 2019, she reported to Lincoln that she spent some "15–17" hours in bed each day and could not even stand long enough to shower. LIN0881-0882. Apart from the extensive evidence which refutes such claims, it was always Plaintiff's obligation to prove functional impairment. Thus, a claimant's mere say-so is not "proof" of disability. *See*, *e.g*., *Seleine*, 598 F. Supp. 2d at 1101–02 ("[The administrator] did not ignore [claimant's] subjective complaints of pain. Rather, these complaints were subject to verification by objective medical evidence. [The administrator] was under no obligation to accept them at face value. . . . The Court finds that the opinions of [claimant] and her treating doctors are insufficient by themselves to

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 46
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

establish disability under the Plan requirements and case law."); *Jordan*, 370 F.3d at 878 ("[W]here the applicant's physicians depend entirely on the patient's pain reports for their diagnosis, their *ipse dixit* cannot be unchallengeable."); *Gray*, 2022 U.S. Dist. LEXIS 129121 at *13 ("But a [claimant's] subjective interpretation of [her] symptoms cannot, standing alone, establish disability."); *Kushner*, 572 F. Supp. 2d at 1191 ("Plaintiff claims that his subjective complaints should be accepted at face value.  The rule is to the contrary.").

If the rule were otherwise, administrators would be forced, contrary to their fiduciary duties to the plan as a whole, to pay virtually all claims.  *See*, *e.g.*, *Langlois v. Metropolitan Life Ins. Co.*, 2012 WL 1910020 at *14 (N.D. Cal. May 24, 2012) ("Physicians accept at face value what patients tell them about their symptoms; but insurers . . . must consider the possibility that applicants are exaggerating in an effort to win benefits (or are sincere hypochondriacs not at serious medical risk).") (quoting *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004)); *Bratton v. Metropolitan Life Ins. Co.*, 439 F. Supp. 2d 1039, 1052 (C.D. Cal. 2006) ("A finding of disability based on mere subjective complaints would open the Plan up to malingering and would greatly hamper [the administrator] from exercising its fiduciary role of scrutinizing requests for benefits.").

> **2.** **The advocacy opinions offered by just four of Plaintiff's many treating doctors are not reliable because they simply accept Plaintiff's subjective self-reports at face value and make no attempt to reconcile Plaintiff's claims with other evidence in the record.**

As an initial matter, with respect to the opinions offered by Plaintiff's treating physicians, it is simply not true, as Plaintiff claims, that "every" physician who treated or examined Plaintiff

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 47
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

found her to be disabled.  *Compare*, *e.g.*, Pl.'s Mot. at 3.[12]  The record here shows numerous

treating specialists who either found no medically-supported explanation for Plaintiff's subjective

complaints, no functional limitations severe enough to preclude work, or both.  For example, Dr.

Feldman found no "underlying unifying" diagnosis for Plaintiff's self-reported fatigue and other

"somatic" symptoms.  LIN0500.  Accordingly, he offered no opinion of functional impairment.  In

July 2019, family practitioner Dr. Smucker noted Plaintiff's self-report that it was "impossible" to

work, but she offered no such opinion herself after finding "[n]ormal range of motion," "[n]ormal

strength and sensation grossly," "[n]ormal mood and affect," and "[j]udgment and thought

content" to be "normal."  LIN1314; LIN1316.  In May 2019, Dr. Bzowy, who at the time was

Plaintiff's primary care physician, certified that Plaintiff was physically capable of performing

"Light" work.  LIN1733.  Dr. Means and Dr. Agosta never offered any opinion that Plaintiff's

condition precluded her from sedentary work, despite their repeatedly treating Plaintiff during the

---

[12] Moreover, it is not the function of doctors to make findings of "disability."  Rather, disability determinations require medical, vocational, and contractual expertise.  This is why, for example, Lincoln's claim specialists consulted with medical and vocational experts.  Without a description of specific restrictions and limitations, a doctor's conclusory assertion that a claimant is "disabled" is not helpful and does not advance the analysis.  *See*, *e.g.*, *Scherr v. Fleetboston Fin. Corp. Group LTD Plan*, 2008 WL 11438215 at *26 (C.D. Cal. Feb. 8, 2008), *aff'd*, 331 Fed. App'x 447 (9th Cir. 2009) (upholding administrator's decision after discussing how it "was based on a comparison of the restrictions and limitations placed upon [claimant] by the various doctors who reviewed [his] case, [and] the findings of the vocational consultant that [his] own occupation . . . could be performed without violating those restrictions"); *see also*, *e.g.*, *Thompson v. Astrue*, 2012 WL 5989199 at *7 (W.D. Pa. Nov. 29, 2012) (treating physician's statement that claimant was "disabled" amounted "to nothing more than a legal conclusion" because "[t]he availability or unavailability of jobs consistent with a claimant's established abilities and limitations raises a *vocational* question rather than a *medical* question.") (emphasis in original); *Johnson v. Continental Casualty Co.*, 222 F. Supp. 2d 776, 779-80 (W.D.N.C. 2002) ("On the ultimate determination of 'disability,' courts, as well as disability adjudicators, give little deference to the opinions of medical doctors absent a showing of their vocational expertise and contemporaneous vocational findings . . . .").

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 48
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

most relevant period and their presumed familiarity with her medical condition. *See*, *e.g.*, LIN1175; LIN0554; LIN0571.

Plaintiff focuses instead on advocacy opinions of Drs. Parsons, Coffin, Walker, and Rogoff. *See*, *e.g.*, Pl.'s Mot. at 16. But their opinions are not reliable evidence of disability through and beyond March 24, 2020. First, Plaintiff relies on a statement found in Dr. Walker's contemporaneous treatment note dated August 8, 2019. *See* Pl.'s Mot. at 16 (citing LIN0579). But as that office note indicates, Dr. Walker's assessment at that time was based on Plaintiff's own self-reported symptoms—rather than upon any objective examination or any comprehensive review of the entire medical record—and Dr. Walker said that Plaintiff's alleged inability to work should be re-evaluated in "4–6 weeks." LIN0579. In her follow-up treatment notes, dated December 13, 2019 and December 30, 2019, Dr. Walker wrote that Plaintiff reported "feeling better in general" and that she had been walking for exercise. *See*, *e.g.*, LIN0556. Dr. Walker's physical examinations in December 2019 repeatedly showed that Plaintiff's "memory," "attention," "concentration," and "thought content" were all normal. *See* LIN0557; LIN0560. Notably, these December 2019 office notes do not contain any statement by Dr. Walker indicating that she continued to believe that Plaintiff was disabled. Nor did Dr. Walker ever expressly offer any opinion of functional impairment to Lincoln, in support of Plaintiff's claim, whether in connection with the initial claim, the appeal, or otherwise. If Dr. Walker supported the claim, presumably, Plaintiff's counsel would have obtained a supportive statement from her. He did not. Accordingly, the reference in one of Dr. Walker's notes that Plaintiff relies upon, does not support Plaintiff's claim that she remained disabled through March 24, 2020, and beyond, which is what Plaintiff here was required to prove.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 49
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Drs. Parsons and Coffin did express opinions as to Plaintiff's alleged impairment in December 2019 and January 2020, *see* Pl.'s Mot. at 16 (citing LIN0828 and LIN0798), but both opinions are mere advocacy and accept Plaintiff's subjective self-reports at face value. For example, Plaintiff relies on Dr. Parsons's responses to Dr. Cumberbatch's questions as expressing an opinion that supports her claim, but in those responses, Dr. Parsons confirmed, *inter alia*, that he had not tested Plaintiff's claimed "cognitive impairments" by "any common scales, such as the MMSE or the MOCA, to assess her cognitive status." LIN0829. Dr. Parsons further confirmed that he never referred Plaintiff to "neuropsychiatric testing," LIN0829, or referred her to any heightened level of care. *See* LIN0829–30. Thus, Dr. Parsons's conclusory opinion is at odds with his own assessment that monthly treatment sessions alone were adequate treatment for Plaintiff's condition. If Plaintiff were truly suffering from a psychological impairment that precluded her from working, the expected standard of care would require more than monthly therapy sessions. *Compare*, *e.g.*, LIN0398-0399 (Dr. Parsons's session notes showing visits once a month) *with* LIN0823-0824 (Dr. Cumberbatch's discussion of the appropriate level of care for persons with "significant and impairing depression and/or anxiety"). Nor is there any evidence that Dr. Parsons reviewed the totality of the medical record or was aware of Plaintiff's demonstrated abilities on surveillance which directly contradict Plaintiff's self-report. It is also telling that Plaintiff told Dr. Parsons not to speak directly with Dr. Cumberbatch. *See* LIN0838.

Dr. Coffin initially told Dr. Rosen that Plaintiff was capable of "light duty" work, *see* LIN0704, before changing his opinion under apparent pressure from the Plaintiff. *See*, *e.g.*, *Brigham v. Sun Life of Canada*, 317 F.3d 72, 84 (1st Cir. 2003) (upholding administrator's determination where treating physician's opinion of disability "contradicted his earlier reports, and

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 50
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

there was no explanation for [the doctor's] new view"); *Beltman*, 2019 WL 1614584 at *9 (upholding administrator's determination where treating physician "never maintained a consistent opinion"); *Maniatty v. UnumProvident Corp.*, 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002), *aff'd*, 62 Fed. App'x 413 (2nd Cir. 2003), *cert. denied*, 540 U.S. 966 (2003) ("In these circumstances, it was not unreasonable for the administrator to conclude that the only material reason the treating physicians were reaching their diagnoses was based on their acceptance of [the claimant's] subjective complaints: an acceptance more or less required of treating physicians, but by no means required of the administrator.).

The opinion Plaintiff now cites is a one-page advocacy letter that contains little more than a statement that Dr. Coffin "hopes" Plaintiff "will be able to return to work [by] May 2020." LIN0798.  Dr. Coffin never reviewed the entirety of the medical evidence from other practitioners, and he never attempted to reconcile his opinion with any of the conflicting evidence in the record. Thus, his opinion is malleable, conclusory, and entitled to little, if any, weight.  Moreover, it appears Dr. Coffin's discussion of Plaintiff's alleged "pain, fatigue and cognition concerns" was solely based on Plaintiff's own self-report and not on any functional testing.  *See* LIN0789; *compare*, *e.g.*, LIN0717-0718 (no objective examination); LIN0714 (same).

Lastly, Plaintiff relies on Dr. Rogoff's opinion, *see* Pl.'s Mot. at 16 (citing LIN0648-0650), but Plaintiff's first visit to Dr. Rogoff post-dates Lincoln's termination of benefits by several months.  *See* LIN0511.  Dr. Rogoff's opinion is also conclusory and supported, if at all, by nothing more than Plaintiff's own self-report which, as explained above, is itself worth very little weight. Dr. Rogoff cites no objective testing of cognitive or physical function, and his statements that Plaintiff "[s]leeps 15 [hours per] day" and "cannot sit," among others, clearly conflict with other

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 51
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

reliable evidence in the record, including his own examination record.  *See* LIN0648-0649; *compare*, *e.g*., LIN0511 (noting Plaintiff's "[n]ormal gait," "5/5" muscle strength, and "[n]ormal mood and affect").

Particularly where, as here, none of the treating practitioners who support the claim reviewed the entire medical record—let alone the surveillance or evidence of Plaintiff's other business activities—their uncritical acceptance of Plaintiff's ever-shifting statements about being too fatigued or cognitively-impaired to work does not lead to accurate disability determinations. As the Supreme Court explained in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, administrators and Courts have no duty to defer to the opinions of treating physicians because they "may favor a finding of disability" in such cases.  *Id.*, 538 U.S. at 834; *see also*, *e.g.*, *Jordan*, 370 F.3d at 377 ("[A] treating physician's opinion gets no special weight and can be rejected on the basis of reliable evidence."); *Seleine*, 598 F. Supp. 2d at 1102 ("Treating physicians are more or less required to accept the representations of their patients, but [the] ERISA administrator[ ] is not obligated to do so."); *Alvis v. AT&T Integrated Disability Serv. Ctr.*, 2009 WL 1026030 at *17 (E.D. Cal. Apr. 15, 2009), *aff'd*, 377 F. App'x 673 (9th Cir. 2010) ("[I]t is of no small import that the records of Plaintiff's treating physician on which Plaintiff would have the [administrator] rely are largely no more than a reiteration of Plaintiff's subjective complaints.") (internal quotations and citations omitted.).  As one court memorably put it, "a patient's subjective claims of disability do not acquire objectivity or independence merely by virtue of being transcribed in a doctor's note." *Prince v. Metropolitan Life Ins. Co.*, 2010 WL 988730 at *12 (D.N.H. Mar. 16, 2010).

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 52
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

**3.      Plaintiff's criticisms of Lincoln's consulting physicians are misplaced, being based on a variety of fundamental misunderstandings about their proper role.**

Plaintiff next criticizes Lincoln's consulting physicians for variously ignoring, dismissing, or misstating the medical evidence in the record. *See*, *e.g*., Pl.'s Mot. at 2, 36. As the consulting physicians' detailed reports show, they did not ignore or overlook the evidence in the file. *See* LIN0835-0843; LIN0822-0825; LIN0702-0707; LIN0375-0384; LIN0276-0284; LIN0201-0208; LIN0291-0319; LIN0138-0142. Rather, they simply reached a different conclusion than Plaintiff wanted.

Plaintiff attacks Lincoln's motives because none of the consulting physicians examined Plaintiff. *See* Pl.'s Mot. at 36, 40, 55. This is yet more misplaced burden shifting. Here, any purported conflict of interest is irrelevant because this case is subject to the *de novo* standard of review, and under that standard, the Court evaluates Lincoln's determination "without reference to whether the administrator operated under a conflict of interest." *Abatie*, 458 F.3d at 963. Plaintiff also overlooks the fact that Lincoln wanted to schedule an independent medical examination but was simply unable to find a qualified and willing physician on the island of Kauai, where Plaintiff was then residing. *See*, *e.g*., LIN0128. Thus, the situation here bears no resemblance to that in *Salomaa v. Honda LTD Plan*, 642 F.3d 666, 676 (9th Cir. 2011), where the administrator was offered the chance to examine the claimant but "did not even respond" out of a fear that its own physicians might "conclude that the claimant [was] entitled to benefits."

Moreover, Plaintiff apparently misunderstands the role of consulting physicians in an ERISA disability case—here, as the burden of proof belonged to the Plaintiff, the consulting physicians were simply engaged to review the evidence offered by the Plaintiff and opine as to whether that evidence supported the claimed emotional, cognitive, and physical impairments. No

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 53
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

further physical examination is required for such purposes where, as here, the record already contained ample evidence of Plaintiff's physical, psychological, and cognitive capacity, and included numerous physical and mental status examinations conducted throughout the relevant period by a variety of medical practitioners. *See*, *e.g.*, *Frost v. Metropolitan Life Ins. Co.*, 320 Fed. App'x 589, 592 (9th Cir. 2009) ("Contrary to [claimant's] arguments, [the administrator] was not required to conduct an independent medical examination or to identify a change in circumstances justifying the termination of benefits."); *see also*, *e.g.*, *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 91 (2nd Cir. 2009) ("We share the Seventh Circuit's concern that requiring a plan administrator to order an [independent medical examination] . . . risks casting doubt upon, and inhibiting, 'the commonplace practice of doctors arriving at professional opinions after reviewing medical files,' which reduces the 'financial burden of conducting repetitive tests and examinations.'") (quoting *Davis v. Unum Life Ins. Co.*, 444 F.3d 569, 577 (7th Cir. 2006)).

Plaintiff similarly misunderstands the role of the consulting physicians when she argues that they misapplied the proper diagnostic criteria for Chronic Fatigue Syndrome. *See*, *e.g*., Pl.'s Mot. at 2–3, 13–18. The question before the administrator was whether Plaintiff proved a functional impairment sufficient to preclude work, not whether she proved any particular diagnosis. *See*, *e.g*., *Jordan*, 370 F.3d 869 at 880 ("That a person has a true medical diagnosis does not by itself establish disability. Medical treatises list medical conditions from amblyopia to zoolognia that do not necessarily prevent people from working. . . . Sometimes [people's] medical conditions are so severe that they cannot work; sometime people are able to work despite their condition; and sometimes people work to distract themselves from their conditions."); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 54
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

proof of disability.  A claimant bears the burden of proving that an impairment is disabling."); *Seleine*, 598 F. Supp. 2d at 1100 ("The focus of the [disability] analysis is on the degree to which the physical impairment has hindered a worker's earning capacity.").

Moreover, and contrary to Plaintiff's arguments, Dr. Rosen did not reject Plaintiff's CFS diagnosis, *see* Pl.'s Mot. at 41, rather, for purposes of his analysis, he assumed that Plaintiff had that medical condition, regardless of diagnostic criteria used, but nevertheless found that the record did not contain proof of impairment.  *See*, *e.g.*, LIN0702 (listing CFS among Plaintiff's diagnoses). Similarly, Dr. Trangle did not demand that CFS be diagnosed through objective tests, *see* Pl.'s Mot. at 51–54, rather he too simply observed that the file contained no objective evidence of the alleged degree of functional limitation.  *See*, *e.g.*, LIN0313 ("[T]he diagnoses of FMS and/or CFS, in this instance, even if assumed present, do not show any associated impairment, need for accommodation, or inability to work.").[13]

---

[13] To be clear, at no point did Lincoln or any of its consulting physicians purport to "condition coverage on proof [of diagnosis] by objective indicators such as blood tests where the condition is recognized yet no such proof is possible." *Salomaa*, 642 F.2d at 678; *see also*, *e.g.*, *Ovist v. Unum Life Ins. Co.*, 14 F.4th 106, 118–19 (1st Cir. 2021) (distinguishing between a CFS "***diagnosis***" and "the ***effect*** of the disease on [a claimant's] ability to work") (quoting *Cusson v. Liberty Life Assurance Co.*, 592 F.3d 215, 227 (1st Cir. 2010), *abrogated on other grounds by Montanile v. Board of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016)) (emphasis in original); *Boardman v. Prudential Ins. Co.*, 337 F.3d 9, 16–17 & n.5 (1st Cir. 2003) ("While the diagnoses of [CFS] and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.").  Plaintiff apparently contends that anyone who has CFS is *per se* disabled.  That is obviously not so.  Apart from being an exercise in misdirection, Plaintiff's arguments about the proper diagnostic criteria for CFS are also legally erroneous.  As the Ninth Circuit held in *Salomaa*, for example, a CFS diagnosis requires, *inter alia*, "excluding other possible disorders" which might cause or contribute to a claimant's self-reported symptoms.  *Id.*, 642 F.2d at 677.

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 55
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Plaintiff's remaining criticisms of Lincoln's consultants are based on mischaracterizations of their reports. For example, Dr. Cumberbatch mentioned the date July 9, 2019, in her report because it was the last day that, in her opinion, the record supported Plaintiff's alleged psychological impairment. Thereafter, she opined, the evidence showed that Plaintiff "may not be as functionally impaired . . . as she is claiming to be." *Compare* LIN0836 *with* Pl.'s Mot. at 36–37. Dr. Cumberbatch did not exclusively rely on the absence of "electroshock therapy," as Plaintiff contends, *see* Pl.'s Mot. at 38–40, but rather, she noted the absence of any escalation in treatment— whether more frequent therapy sessions, referral to an intensive outpatient program, a partial hospitalization, change in medication, or any higher level of care. *See*, *e.g.*, LIN0836–37. Dr. Hertza did not "concede" that Dr. Ludolph's testing was valid for forensic purposes. *See* Pl.'s Mot. at 43–48. Indeed, he specifically found that it was not. *See* LIN0278.

**4.     It was Plaintiff's burden to timely provide evidence related to her Social Security claim, if she wanted Lincoln to consider it.**

Plaintiff attacks Lincoln for not giving sufficient consideration to unspecified Social Security materials that Plaintiff never timely furnished. *See*, *e.g.*, Pl.'s Mot. at 32–34, 56–58. Even now, it is unclear what additional materials Plaintiff wanted Lincoln (and now wants the Court) to consider. In her motion, for example, Plaintiff has not included copies of the allegedly-missing Social Security materials, and she does not make any argument about how they support her LTD claim. Instead, Plaintiff acts as though the simple fact of the Social Security award alone is sufficient grounds for the Court to overturn Lincoln's determination. It is not. *See*, *e.g.*, *Salomaa*, 642 F.3d at 679 (holding that Social Security awards "do not bind plan administrators"); *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 636 (9th Cir. 2009) (same). As the finder of fact under Rule 52, this Court obviously cannot weigh evidence that it does not have.

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 56
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

While the Notice of Award letter was issued near the very end of the administrative process, *see*, *e.g*., LIN0072, it bears repeating that Plaintiff had ample opportunity to submit copies of any potentially relevant Social Security claim materials well in advance of the Social Security Administration's decision.   In her motion, for example, Plaintiff notes that Dr. Parsons, on February 13, 2020, reviewed Plaintiff's "independent medical reports for social security disability."  Pl.'s Mot. at 34 (citing LIN0399).   Thus, while Plaintiff apparently provided such reports to one of her treating doctors, she never provided the reports to Lincoln before its final uphold determination on May 25, 2021, despite repeated warnings that she should promptly "submit any additional information you wish to have considered."  *See*, *e.g*., LIN0486; LIN0413; LIN0222; LIN0177.  Plaintiff now asserts in her Motion that she "requested that Lincoln withhold final decision until it received details of the SSA decision," Pl.'s Mot. at 56, but the record, even as selectively quoted by Plaintiff, simply does not say that.  More to the point, Plaintiff nowhere explains why she would have needed more time to submit to Lincoln relevant medical information that had already been in her possession (and reviewed by her own doctors) for more than a year.

Similarly, even though the Notice of Award letter was issued on May 3, 2021, Plaintiff's counsel waited until May 20, 2021, to first advise Lincoln of the decision, *see* LIN0004, and even then, counsel waited until after Lincoln had issued its final uphold (and after Lincoln had notified him of that decision by voicemail), before first submitting the Notice of Award letter on May 27, 2021.  *See* LIN0003-0004.

Notwithstanding Plaintiff counsel's gamesmanship as the time allowed under the regulations was running out, *see*, *e.g*., 29 C.F.R. § 2560.503-1(i)(3)(i) (imposing a 90-day time limit for disability appeal decisions), Lincoln did in fact consider the award in making its final

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 57 Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

uphold determination. *See*, *e.g.*, LIN0099. However, as Ms. Paine explained in her final uphold letter, Plaintiff failed to "provide anything beyond verbal notification of the SSD award." LIN0099. Absent the independent medical reports and other Social Security claim information that Plaintiff failed to submit, the mere fact of the award, without more, is entitled to little weight. *See*, *e.g.*, *Salomaa*, 642 F.3d at 679; *Montour*, 588 F.3d at 636.

> **5.    Plaintiff confuses the duties of her specific job with those of her occupation as it exists in the national economy.**

Plaintiff alleges that her symptoms of fatigue precluded her from meeting the requirements of her former position as a "Global Account Manager," particularly its travel requirements. *See*, *e.g.*, Pl.'s Mot. at 25–26, 40, 42. The job description provided to Lincoln said that Plaintiff's former employer "[p]referred" job candidates with the "[w]illingness and ability to travel 25%–35%" of the time, *see* LIN1883, but imposes no such requirement. Moreover, the Group Policy clearly and specifically distinguishes between a claimant's "Job" and a claimant's "Occupation." *See*, *e.g.*, LIN2295. Plaintiff misleadingly combines and confuses the two.

Only the duties of Plaintiff's "Own Occupation" as performed in the "usual and customary way," are relevant for purposes of determining entitlement to LTD benefits. *See*, *e.g.*, LIN2291; *see also*, *e.g.*, *Anderson v. Life Ins. Co. of N. America*, 2017 WL 4326384 at *1 (9th Cir. Sept. 18, 2017) (holding that the district court properly "considered the duties of the occupation as it is normally performed in the general labor market"); *Wilkins v. Unum Life Ins. Co. of N. America*, 2013 WL 5340512 at *5 (N.D. Cal. Sept. 24, 2013) (holding that the test is the insured's "occupation in the national economy"); *Carder-Cowin v. Unum Life Ins. Co.*, 560 F. Supp. 2d 1006, 1018 (W.D. Wash. 2008) (administrator correctly applied duties of occupation as performed in the national economy, not claimant's specific job duties); *Hornback v. New York Times Co. LTD*

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 58
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

*Plan*, 2006 WL 496050 at *7 (N.D. Cal. Mar. 1, 2006) (permissible to "define occupation generally, and not to limit it to the position [claimant] had with her employer").

Here, the duties of Plaintiff's occupation as a "Manager, Professional Equipment Sales-and-Service" were set out in Ms. Hall's report and addendum, *see* LIN1751; LIN0709, and duly considered by both Mr. Youngberg and Ms. Paine. *See*, *e.g*., LIN0686; LIN0087. Even to the limited extent that Plaintiff's own occupation may have required occasional travel, Ms. Paine specifically considered that requirement. *See* LIN0087. Moreover, as the record elsewhere makes clear, throughout the last six months that Lincoln was paying LTD benefits, Plaintiff was traveling between Oregon and Ohio—contrary to any claim that her medical condition precluded occasional travel. *See*, *e.g*., LIN0719; LIN0550. She then moved to Hawaii and only stopped traveling thereafter due to pandemic-related travel restrictions.

## D.     Plaintiff Cannot Obtain "Any Occupation" Benefits in This Lawsuit.

Even if the Court were to conclude, contrary to the record, that Plaintiff met her burden to prove entitlement to LTD benefits under the Group Policy through and beyond March 24, 2020, the Court cannot award LTD benefits beyond the end of the Group Policy's 24-month Own Occupation and Mental Illness limitation periods—both of which closed on May 17, 2021.

To the extent Plaintiff seeks benefits beyond May 17, 2021, which would be governed by the Group Policy's "Any Occupation" standard if not barred by the Mental Illness limitation, her claim is premature and must fail for a number of reasons. Most notably, Plaintiff has not yet submitted medical evidence as to her medical condition beyond the date of Lincoln's uphold decision. Lincoln has not yet considered Plaintiff's alleged entitlement to benefits under the "Any Occupation" standard or considered whether, at the time of the change-over to that standard,

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 59
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

Plaintiff's continuing impairments, if any, fall within the Group Policy's Mental Illness limitation. And as there has yet been no Lincoln determination on such issues, Plaintiff has not exhausted her administrative remedies with respect to such decisions.

Thus, even if this Court were to find, on the evidence presented in the existing record, that Plaintiff met her burden to prove entitlement to LTD benefits beyond March 24, 2020, this Court must nevertheless remand for an initial factual determination by Lincoln, under the "Any Occupation" standard and the Mental Illness limitation, with respect to any claim for LTD benefits beyond May 17, 2021. *See*, *e.g.*, *Carrier v. Aetna Life Ins. Co.*, 116 F. Supp. 3d 1067, 1084 (C.D. Cal. 2015) (explaining that while a disability claimant had met her burden of showing eligibility for benefits under the "own occupation" definition applicable during part of the timeframe under review, neither party had presented any evidence regarding the "any occupation" definition applicable after a certain date, and remanding to the administrator for a determination on that issue since the court had no expertise or evidence on which to make such a determination itself).

## IV.   CONCLUSION

For the foregoing reasons, the Court should uphold Lincoln's determination and dismiss Plaintiff's claims with prejudice.

Respectfully submitted this 14th day of December, 2022.

> OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
>
> By: */s/ Russell S. Buhite*
> Russell S. Buhite, OSB #142529
> 1201 Third Avenue, Suite 5150
> Seattle, WA  98101
> Telephone:  (206) 693-7052
> Facsimile:  (206) 693-7058
> Email:  russell.buhite@ogletree.com

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT - 60
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

By: */s/ Scott K. Pomeroy*
    Scott K. Pomeroy, MA Bar #665110
    (admitted *pro hac vice*)
    One Boston Place, Suite 3500
    Boston, MA 02108
    Telephone:  (207) 387-2961
    Facsimile:  (207) 387-2986
    Email:  scott.pomeroy@ogletree.com

*Attorneys for Defendant The Lincoln National*
*Life Insurance Company*

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 61
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

**CERTIFICATE OF LOCAL RULE COMPLIANCE**

This brief complies with this Court's Order of June 3, 2022 (Doc. 23), which enlarged the otherwise applicable word-count limitation under Local Rules 7-2(b), 26-3(b), 54-1(c), and/or 54-3(e), because it contains 60 pages and 17,466 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

By: */s/ Russell S. Buhite*
     Russell S. Buhite, OSB #142529

By: */s/ Scott K. Pomeroy*
     Scott K. Pomeroy, MA Bar #665110
     (admitted *pro hac vice*)

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 62
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of December, 2022, I filed the foregoing

DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR

JUDGMENT AND DEFENDANT'S RULE 52 CROSS-MOTION FOR JUDGMENT with the

Clerk of the Court via CM/ECF, who sent notification to the following:

Scott A. Sell, OSB #144297
THOMAS, COON, NEWTON & FROST
The Thomas Mann Building
820 SW 2nd Avenue, Suite 200
Portland, OR  97204
Telephone:  (503) 228-5222
Facsimile:  (503) 273-9175
Email:  ssell@tcnf.legal

*Attorneys for Plaintiff Tracey K. Turkoly*

SIGNED THIS 14th day of December, 2022 at Seattle, Washington.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

By: */s/ Cheryl L. Kelley*
    Cheryl L. Kelley, Practice Assistant
    cheryl.kelley@ogletree.com

DEFENDANT'S AMENDED RESPONSE
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT AND
DEFENDANT'S RULE 52 CROSS-
MOTION FOR JUDGMENT - 63
Case No. 3:21-cv-01019-SI

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: (206) 693-7052 | Fax: (206) 693-7058